JAMES T. IRVIN, JR. (SBN 2921)
IRVIN LAW FIRM
1101 3rd Avenue South
Myrtle Beach, SC 29577
Office: (843) 445-6200
jimirvinjr@gmail.com

Attorney for Plaintiff

## UNITED STATES DISTRICT COURT

## DISTRICT OF THE STATE OF SOUTH CAROLINA,

## FLORENCE DIVISION

|  |  |
|---|---|
| **JAMES ROE,** | ) |
| **Plaintiff,** | ) |
| **v.** | ) |
|  | ) |
| **CVS CAREMARK CORPORATION;** | ) |
| **SOUTH CAROLINA CVS PHARMACY, LLC;** | ) |
| **CVS PHARMACY, INC.;** | ) |
| **MARK COSBY; DARREN TWEDELL; RENEE** | ) Civil Action No. _____ |
| **EDGE; DAVID PURDY; BILL POLAND;** | ) |
| **XIO SOSA; GINNY McCLURE;** | ) |
| **JIM KEELER; HARRIS CHISHOLM;** | ) |
| **SUSAN WEBB; JOSEPH CESSNA;** | ) |
| **TRAVIS COMBS; JOHN BRESCIA;** | ) |
| **NATASHA PENDERGRASS;** | ) **JURY TRIAL DEMANDED** |
| **ASHLEY GATES; PAUL ANDERSON;** | ) |
| **KEVIN ELLIOTT; JOHN ROBINSON;** | ) |
| **MATT LESNIAK;** | ) |
| **JOHN DOES 1-80,  and** | ) |
| **JANE DOES 1-50,** | ) |
| **Defendants** | ) |
|  | ) |

**VERIFIED COMPLAINT FOR DAMAGES AND DECLARATORY and INJUNCTIVE RELIEF for: VIOLATIONS OF THE AMERICANS WITH DISABILITIES ACT of 1990 [42 U.S.C. § 12101, *et seq.*].; DISCRIMINATION IN VIOLATION OF THE CIVIL RIGHTS ACT of 1964 [42 U.S.C. § 1981 (equal rights); § 1985 (conspiracy to interfere with civil rights); § 1986 (neglect to prevent deprivation of rights); 42 U.S.C. § 2000d, *et seq.*].; DISCRIMINATION IN VIOLATION OF THE AFFORDABLE CARE ACT [42 U.S.C. § 18116]; ASSAULT; BATTERY; FALSE IMPRISONMENT; INTENTIONAL**

**INFLICTION OF EMOTIONAL DISTRESS; CIVIL CONSPIRACY; NEGLIGENCE; NEGLIGENT SUPERVISION &/or RETENTION; INTERFERENCE WITH CONTRACT &/or PROSPECTIVE CONTRACTUAL RELATIONS; UNFAIR TRADE PRACTICES**

This lawsuit is brought due to violations by Defendants of, *inter alia*, public access laws under the ADA, not because of any structural physical barriers to access by a disabled person, but because of a pattern and practice of intentional exclusion of a disabled Marine Veteran due to protected characteristics of race, gender and disability in direct violation of provisions of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101, et seq., the Civil Rights Act of 1964, 42 U.S.C. §§ 1981, 1985, 1986 and 2000d, and the Affordable Care Act ("ACA"), 42 U.S.C. § 18116, and the egregious actions undertaken by Defendants and/or those acting under their association or affiliation with Defendants against a Marine veteran suffering from a service-connected disability.

Defendants on several occasions intentionally discriminated against Plaintiff JAMES ROE, an African-American United States Marine Corps veteran with service-connected disabilities, every time he attempted to request a reasonable public accommodation. Defendants have welcomed similarly situated white female patrons who alleged similar disability.

Congress enacted the Civil Rights Act of 1964 to stop discrimination against minorities including people of African-American descent. The ADA was enacted because of pervasive discrimination against disabled persons and because discrimination is "a serious and pervasive social problem . . . [that includes] various forms of discrimination, including outright intentional exclusion." 42 U.S.C. § 12101(a)(7). Congress explained, "individuals with disabilities are a discrete and insular minority who have been . . . relegated to a position of political powerlessness in our society. "42 U.S.C. § 12101. Despite the political powerlessness disabled people have in our society when bringing civil rights suits against corporations, Plaintiff

Verified Complaint for Damages and Injunctive Relief for Violations of the Americans With Disabilities Act of 1990 [42 U.S.C. § 12101, *et seq.*]; Violations of the Civil Rights Act of 1964 [42 U.S.C. §§ 1981, 1985, 1986 and 2000d, *et seq.*]; Violations of the Affordable Care Act [42 U.S.C. § 18116]; Assault; Battery; False Imprisonment; Intentional Infliction of Emotional Distress; Negligence; Civil Conspiracy; Negligent Supervision &/or Retention; Unfair Trade Practices; and Interference with Contract
Page 2 of 101

1    ROE is determined to stop Defendants' discriminatory actions and omissions.

2          Plaintiff JAMES ROE, an individual, by and through his attorney(s) and based upon

3    his information and belief and as a result of his investigation to date, now hereby brings his

4    Complaint against the Defendants enumerated above and others whose names are presently

5    unknown for declaratory, injunctive, monetary, exemplary and other relief under federal and state

6    laws that guarantee a disabled African-American United States Marine Corps Veteran equal rights

7    to contract, access to and enjoyment of places of public accommodation, and rights to be free

8    from, or otherwise hold those accountable for, tortious conduct, and hereby alleges as follows:

9

10    **THE PARTIES**

11          1.     Plaintiff, under the pseudonym JAMES ROE (hereinafter "JAMES ROE" and/or

12    singly addressed as "ROE," and/or singly addressed as "Plaintiff") is, and at all times relevant

13    hereto was, an African-American male individual over the age of 18 and a resident of South

14    Carolina. Plaintiff sues under a fictitious name in order to protect his privacy, prevent further

15    injury to his safety and reputation, and prevent reprisal and/or repeated acts of intimidation or

16    coercion at the hands of the Defendants and/or those acting in concert with the Defendants or at

17    the Defendants' behest.

18          2.     Upon information and belief and thereon alleged, Defendant CVS CAREMARK

19    CORPORATION (hereinafter "CVS CAREMARK CORPORATION" and/or singly addressed as

20    "CVS," and/or singly addressed as "CVS Defendant(s) and/or singly addressed as "Defendant(s)")

21    is a Delaware Corporation with its Corporate Headquarters located at One CVS Drive,

22    Woonsocket, Rhode Island 02895, IRS Taxpayer ID Number 05-0494040.  On information and

23    belief, from its Woonsocket, Rhode Island headquarters CVS CAREMARK CORPORATION

24    manages and oversees 7,615 CVS/pharmacy retail stores including, though not limited to, most if

25    not all of the CVS/pharmacy defendants named herein. (CVS Caremark Corporation, *Form 10-Q*

26

27

28    Verified Complaint for Damages and Injunctive Relief for Violations of the Americans With Disabilities Act of 1990 [42 U.S.C. § 12101, *et seq.*]; Violations of the Civil Rights Act of 1964 [42 U.S.C. §§ 1981, 1985, 1986 and 2000d, *et seq.*]; Violations of the Affordable Care Act [42 U.S.C. § 18116]; Assault; Battery; False Imprisonment; Intentional Infliction of Emotional Distress; Negligence; Civil Conspiracy; Negligent Supervision &/or Retention; Unfair Trade Practices; and Interference with Contract
Page 3 of 101

*Quarterly Report Pursuant to Section 13 or 15(d) of the Securities Exchange Act of 1934*, Filed: May 02, 2014 (period: March 31, 2014), p. 12).    CVS/pharmacy is the retail division of CVS Caremark Corporation.

3.    Upon information and belief and thereon alleged, Defendant SOUTH CAROLINA CVS PHARMACY, LLC, (hereinafter "SOUTH CAROLINA CVS PHARMACY, LLC," and/or singly addressed as "CVS Defendant(s) and/or singly addressed as "Defendant(s)") is a South Carolina organized Limited Liability Corporation and is the business entity which holds, governs or similarly controls and/or manages and oversees at least some of the South Carolina-based CVS/pharmacy defendants named herein.

4.    On information and belief, Defendant CVS PHARMACY, INC., (hereinafter "CVS PHARMACY, INC.," and/or singly addressed as "CVS Defendant(s) and/or singly addressed as "Defendant(s)") is a wholly owned subsidiary of Defendant CVS CAREMARK CORPORATION.  On information and belief, CVS PHARMACY, INC. is a Rhode Island corporation with corporate headquarters at 1 CVS Drive, Woonsocket, Rhode Island, the same location as its parent, CVS CAREMARK CORPORATION, and is the business entity which holds, governs or similarly controls and/or manages and oversees at least some of the South Carolina-based CVS/pharmacy defendants named herein.

5.    On information and belief and thereon alleged, the CVS/pharmacy retail locations at issue in this case are either an independent pharmacy, a chain pharmacy, a supermarket pharmacy, or a mass merchandiser pharmacy that is licensed as a pharmacy by the State and that dispenses medications to the general public at retail prices.

6.    CVS/pharmacy retail establishments "participate in the administration of the drug benefit added to the Medicare program under Part D of the Medicare Prescription Drug, Improvement, and Modernization Act of 2003 ("Medicare Part D") through the provision of

Verified Complaint for Damages and Injunctive Relief for Violations of the Americans With Disabilities Act of 1990 [42 U.S.C. § 12101, *et seq.*]; Violations of the Civil Rights Act of 1964 [42 U.S.C. §§ 1981, 1985, 1986 and 2000d, *et seq.*]; Violations of the Affordable Care Act [42 U.S.C. § 18116]; Assault; Battery; False Imprisonment; Intentional Infliction of Emotional Distress; Negligence; Civil Conspiracy; Negligent Supervision &/or Retention; Unfair Trade Practices; and Interference with Contract
Page 4 of 101

services to (CVS) health plan clients and other clients that have qualified as Medicare Part D prescription drug plans." CVS Caremark Corp., *Form 10-K, Filed 02/11/14 for the Period Ending 12/31/13*, p. 4. CVS CAREMARK CORPORATION also owns ten distribution centers located in Alabama, California, Hawaii, New York, Rhode Island, South Carolina, Tennessee and Texas. *Id.*, at 21.

7.    Upon information and belief and thereon alleged, MARK COSBY (hereinafter "MARK COSBY," and/or "COSBY," and/or singly addressed as "CVS" and/or singly addressed as "CVS Defendant(s) and/or singly addressed as "Defendant(s)") is sued both individually and in his capacity during all times relevant hereto as President of CVS/pharmacy, the retail division of CVS Caremark, who during all times relevant to the facts as alleged herein managed and/or oversaw the activities of the defendants and/or CVS/pharmacy retail stores including, though not limited to, most if not all of the CVS/pharmacy defendants named herein. By engaging in the conduct described in this Complaint, COSBY acted under the course and scope of his employment for CVS. By engaging in at least some of the conduct described in this Complaint, COSBY exceeded the authority vested in him as an employee of CVS and committed acts of a personal nature and/or for personal and financial interest or gain.

8.    Upon information and belief and thereon alleged, DARREN TWEDELL (hereinafter "DARREN TWEDELL," and/or "TWEDELL," and/or singly addressed as "CVS" and/or singly addressed as "CVS Defendant(s) and/or singly addressed as "Defendant(s)") is sued both individually and in his capacity as Regional Manager for CVS/pharmacy and/or CVS Caremark Corporation and/or South Carolina CVS Pharmacy, LLC, and/or CVS Pharmacy, Inc., for at least one or more of the South Carolina CVS/pharmacy locations at or through which the relevant allegations occurred, during all times relevant to the facts as alleged herein. By engaging in the conduct described in this Complaint, TWEDELL acted under the course and scope of his

Verified Complaint for Damages and Injunctive Relief for Violations of the Americans With Disabilities Act of 1990 [42 U.S.C. § 12101, *et seq.*]; Violations of the Civil Rights Act of 1964 [42 U.S.C. §§ 1981, 1985, 1986 and 2000d, *et seq.*]; Violations of the Affordable Care Act [42 U.S.C. § 18116]; Assault; Battery; False Imprisonment; Intentional Infliction of Emotional Distress; Negligence; Civil Conspiracy; Negligent Supervision &/or Retention; Unfair Trade Practices; and Interference with Contract
Page 5 of 101

employment for CVS. By engaging in at least some of the conduct described in this Complaint, TWEDELL exceeded the authority vested in him as an employee of CVS and committed acts of a personal nature and/or for personal and financial interest or gain.

9.      Upon information and belief and thereon alleged, RENEE EDGE (hereinafter "RENEE EDGE," and/or "EDGE," and/or singly addressed as "CVS" and/or singly addressed as "CVS Defendant(s) and/or singly addressed as "Defendant(s)") is sued both individually and in her capacity as Regional Manager for CVS/pharmacy and/or CVS Caremark Corporation and/or South Carolina CVS Pharmacy, LLC, and/or CVS Pharmacy, Inc., for at least one or more of the South Carolina CVS/pharmacy locations at or through which the relevant allegations occurred, during all times relevant to the facts as alleged herein. By engaging in the conduct described in this Complaint, EDGE acted under the course and scope of her employment for CVS. By engaging in at least some of the conduct described in this Complaint, EDGE exceeded the authority vested in her as an employee of CVS and committed acts of a personal nature and/or for personal and financial interest or gain.

10.     Upon information and belief and thereon alleged, DAVID PURDY (hereinafter "DAVID PURDY," and/or "PURDY," and/or singly addressed as "CVS" and/or singly addressed as "CVS Defendant(s) and/or singly addressed as "Defendant(s)") is sued both individually and in his capacity as Vice President for CVS/pharmacy and/or CVS Caremark Corporation and/or South Carolina CVS Pharmacy, LLC, and/or CVS Pharmacy, Inc., and who oversaw at least one or more of the South Carolina CVS/pharmacy locations at or through which the relevant allegations occurred, during all times relevant to the facts as alleged herein. By engaging in the conduct described in this Complaint, PURDY acted under the course and scope of his employment for CVS. By engaging in at least some of the conduct described in this Complaint, PURDY exceeded

Verified Complaint for Damages and Injunctive Relief for Violations of the Americans With Disabilities Act of 1990 [42 U.S.C. § 12101, *et seq.*]; Violations of the Civil Rights Act of 1964 [42 U.S.C. §§ 1981, 1985, 1986 and 2000d, *et seq.*]; Violations of the Affordable Care Act [42 U.S.C. § 18116]; Assault; Battery; False Imprisonment; Intentional Infliction of Emotional Distress; Negligence; Civil Conspiracy; Negligent Supervision &/or Retention; Unfair Trade Practices; and Interference with Contract
Page 6 of 101

the authority vested in him as an employee of CVS and committed acts of a personal nature and/or for personal and financial interest or gain.

11.     Upon information and belief and thereon alleged, BILL POLAND (hereinafter "BILL POLAND," and/or "POLAND," and/or singly addressed as "CVS" and/or singly addressed as "CVS Defendant(s) and/or singly addressed as "Defendant(s)") is sued both individually and in his capacity as Manager &/or Assistant Manager &/or Supervisor of CVS/PHARMACY # 7159, located at 2884 Highway 17 North, Mount Pleasant, South Carolina, during all times relevant to the facts as alleged herein.  By engaging in the conduct described in this Complaint, POLAND acted under the course and scope of his employment for CVS.  By engaging in at least some of the conduct described in this Complaint, POLAND exceeded the authority vested in him as an employee of CVS and committed acts of a personal nature and/or for personal and financial interest or gain.

12.     Upon information and belief and thereon alleged, XIO SOSA, *a.k.a.* XIOMARA SOSA, (hereinafter "XIO SOSA," and/or "SOSA," and/or singly addressed as "CVS" and/or singly addressed as "CVS Defendant(s) and/or singly addressed as "Defendant(s)") is sued both individually and in her capacity as Manager &/or Assistant Manager &/or Supervisor of CVS/PHARMACY # 563, located at 1515 Old Trolley Road, Summerville, South Carolina, during all times relevant to the facts as alleged herein.  By engaging in the conduct described in this Complaint, SOSA acted under the course and scope of her employment for CVS.  By engaging in at least some of the conduct described in this Complaint, SOSA exceeded the authority vested in her as an employee of CVS and committed acts of a personal nature and/or for personal and financial interest or gain.

13.     Upon information and belief and thereon alleged, GINNY McCLURE (hereinafter "GINNY McCLURE," and/or "McCLURE," and/or singly addressed as "CVS" and/or singly

Verified Complaint for Damages and Injunctive Relief for Violations of the Americans With Disabilities Act of 1990 [42 U.S.C. § 12101, *et seq.*]; Violations of the Civil Rights Act of 1964 [42 U.S.C. §§ 1981, 1985, 1986 and 2000d, *et seq.*]; Violations of the Affordable Care Act [42 U.S.C. § 18116]; Assault; Battery; False Imprisonment; Intentional Infliction of Emotional Distress; Negligence; Civil Conspiracy; Negligent Supervision &/or Retention; Unfair Trade Practices; and Interference with Contract
Page 7 of 101

addressed as "CVS Defendant(s) and/or singly addressed as "Defendant(s)") is sued both

individually and in her capacity Manager &/or Assistant Manager &/or Supervisor of

CVS/PHARMACY # 563, located at 1515 Old Trolley Road, Summerville, South Carolina,

during all times relevant to the facts as alleged herein. By engaging in the conduct described in

this Complaint, McCLURE acted under the course and scope of her employment for CVS. By

engaging in at least some of the conduct described in this Complaint, McCLURE exceeded the

authority vested in her as an employee of CVS and committed acts of a personal nature and/or for

personal and financial interest or gain.

14.    Upon information and belief and thereon alleged, JIM KEELER (hereinafter "JIM

KEELER," and/or "KEELER," and/or singly addressed as "CVS" and/or singly addressed as

"CVS Defendant(s) and/or singly addressed as "Defendant(s)") is sued both individually and in

his capacity as Manager &/or Assistant Manager &/or Supervisor of CVS/PHARMACY # 7386,

located at 512 South Kings Highway, Myrtle Beach, South Carolina, during all times relevant to

the facts as alleged herein. By engaging in the conduct described in this Complaint, KEELER

acted under the course and scope of his employment for CVS. By engaging in at least some of the

conduct described in this Complaint, KEELER exceeded the authority vested in him as an

employee of CVS and committed acts of a personal nature and/or for personal and financial

interest or gain.

15.    Upon information and belief and thereon alleged, HARRIS CHISHOLM

(hereinafter "HARRIS CHISHOLM," and/or "CHISHOLM," and/or singly addressed as "CVS"

and/or singly addressed as "CVS Defendant(s) and/or singly addressed as "Defendant(s)") is sued

both individually and in his capacity as Manager &/or Assistant Manager &/or Supervisor of

CVS/PHARMACY # 4114, located at 3700 Two-Notch Road, Columbia, South Carolina, during

all times relevant to the facts as alleged herein. By engaging in the conduct described in this

Verified Complaint for Damages and Injunctive Relief for Violations of the Americans With Disabilities Act of 1990 [42 U.S.C. § 12101, et seq.]; Violations of the Civil Rights Act of 1964 [42 U.S.C. §§ 1981, 1985, 1986 and 2000d, et seq.]; Violations of the Affordable Care Act [42 U.S.C. § 18116]; Assault; Battery; False Imprisonment; Intentional Infliction of Emotional Distress; Negligence; Civil Conspiracy; Negligent Supervision &/or Retention; Unfair Trade Practices; and Interference with Contract
Page 8 of 101

Complaint, CHISHOLM acted under the course and scope of his employment for CVS. By engaging in at least some of the conduct described in this Complaint, CHISHOLM exceeded the authority vested in him as an employee of CVS and committed acts of a personal nature and/or for personal and financial interest or gain.

16.    Upon information and belief and thereon alleged, ASHLEY GATES (hereinafter "ASHLEY GATES," and/or "GATES," and/or singly addressed as "CVS" and/or singly addressed as "CVS Defendant(s) and/or singly addressed as "Defendant(s)") is sued both individually and in her capacity as Manager &/or Assistant Manager &/or Supervisor of CVS/PHARMACY # 7305, located at 65 Sycamore Avenue, Charleston, South Carolina, during all times relevant to the facts as alleged herein. By engaging in the conduct described in this Complaint, GATES acted under the course and scope of her employment for CVS. By engaging in at least some of the conduct described in this Complaint, GATES exceeded the authority vested in her as an employee of CVS and committed acts of a personal nature and/or for personal and financial interest or gain.

17.    Upon information and belief and thereon alleged, SUSAN WEBB (hereinafter "SUSAN WEBB," and/or "WEBB," and/or singly addressed as "CVS" and/or singly addressed as "CVS Defendant(s) and/or singly addressed as "Defendant(s)") is sued both individually and in her capacity as Manager &/or Assistant Manager &/or Supervisor of CVS/PHARMACY # 7697, located at 415 Brooks Road, Andrews. South Carolina, during all times relevant to the facts as alleged herein. By engaging in the conduct described in this Complaint, WEBB acted under the course and scope of her employment for CVS. By engaging in at least some of the conduct described in this Complaint, WEBB exceeded the authority vested in her as an employee of CVS and committed acts of a personal nature and/or for personal and financial interest or gain.

18.    Upon information and belief and thereon alleged, JOSEPH CESSNA, *a.k.a.* JOEY CESSNA, (hereinafter "JOSEPH CESSNA," and/or "CESSNA," and/or singly addressed as

Verified Complaint for Damages and Injunctive Relief for Violations of the Americans With Disabilities Act of 1990 [42 U.S.C. § 12101, *et seq.*]; Violations of the Civil Rights Act of 1964 [42 U.S.C. §§ 1981, 1985, 1986 and 2000d, *et seq.*]; Violations of the Affordable Care Act [42 U.S.C. § 18116]; Assault; Battery; False Imprisonment; Intentional Infliction of Emotional Distress; Negligence; Civil Conspiracy; Negligent Supervision &/or Retention; Unfair Trade Practices; and Interference with Contract
Page 9 of 101

"CVS" and/or singly addressed as "CVS Defendant(s) and/or singly addressed as "Defendant(s)")

is sued both individually and in his capacity as Manager &/or Assistant Manager &/or Supervisor

of CVS/PHARMACY # 8492, located at 930 82nd Parkway, Myrtle Beach, South Carolina, during

all times relevant to the facts as alleged herein. By engaging in the conduct described in this

Complaint, CESSNA acted under the course and scope of his employment for CVS. By engaging

in at least some of the conduct described in this Complaint, CESSNA exceeded the authority

vested in him as an employee of CVS and committed acts of a personal nature and/or for personal

and financial interest or gain.

19.    Upon information and belief and thereon alleged, TRAVIS COMBS (hereinafter

"TRAVIS COMBS," and/or "COMBS," and/or singly addressed as "CVS" and/or singly

addressed as "CVS Defendant(s) and/or singly addressed as "Defendant(s)") is sued both

individually and in his capacity as Manager &/or Assistant Manager &/or Supervisor of the

CVS/PHARMACY #7568, once located at 1316 Red Bank Road, Goose Creek, South Carolina,

during all times relevant to the facts as alleged herein. By engaging in the conduct described in

this Complaint, COMBS acted under the course and scope of his employment for CVS. By

engaging in at least some of the conduct described in this Complaint, COMBS exceeded the

authority vested in him as an employee of CVS and committed acts of a personal nature and/or for

personal and financial interest or gain.

20.    Upon information and belief and thereon alleged, JOHN BRESCIA (hereinafter

"JOHN BRESCIA," and/or "BRESCIA," and/or singly addressed as "CVS" and/or singly

addressed as "CVS Defendant(s) and/or singly addressed as "Defendant(s)") is sued both

individually and in his capacity as Manager &/or Assistant Manager &/or Supervisor of the

CVS/PHARMACY #7568, once located at 1316 Red Bank Road, Goose Creek, South Carolina,

during all times relevant to the facts as alleged herein. By engaging in the conduct described in

Verified Complaint for Damages and Injunctive Relief for Violations of the Americans With Disabilities Act of 1990 [42 U.S.C. § 12101, *et seq.*]; Violations of the Civil Rights Act of 1964 [42 U.S.C. §§ 1981, 1985, 1986 and 2000d, *et seq.*]; Violations of the Affordable Care Act [42 U.S.C. § 18116]; Assault; Battery; False Imprisonment; Intentional Infliction of Emotional Distress; Negligence; Civil Conspiracy; Negligent Supervision &/or Retention; Unfair Trade Practices; and Interference with Contract
Page 10 of 101

this Complaint, BRESCIA acted under the course and scope of his employment for CVS.  By

engaging in at least some of the conduct described in this Complaint, BRESCIA exceeded the

authority vested in him as an employee of CVS and committed acts of a personal nature and/or for

personal and financial interest or gain.

21.    Upon information and belief and thereon alleged, NATASHA PENDERGRASS

(hereinafter "NATASHA PENDERGRASS," and/or "PENDERGRASS," and/or singly addressed

as "CVS" and/or singly addressed as "CVS Defendant(s) and/or singly addressed as

"Defendant(s)") is sued both individually and in her capacity as Manager &/or Assistant Manager

&/or Supervisor of the CVS/PHARMACY # 3199, once located at 1013 Broad River Rd,

Columbia, South Carolina, during all times relevant to the facts as alleged herein.  By engaging in

the conduct described in this Complaint, PENDERGRASS acted under the course and scope of

her employment for CVS.  By engaging in at least some of the conduct described in this

Complaint, PENDERGRASS exceeded the authority vested in her as an employee of CVS and

committed acts of a personal nature and/or for personal and financial interest or gain.

22.    Upon information and belief and thereon alleged, PAUL ANDERSON (hereinafter

"PAUL ANDERSON," and/or "ANDERSON," and/or singly addressed as "CVS" and/or singly

addressed as "CVS Defendant(s) and/or singly addressed as "Defendant(s)") is sued both

individually and in his capacity as District Manager for CVS/pharmacy and/or CVS Caremark

Corporation and/or South Carolina CVS Pharmacy, LLC, and/or CVS Pharmacy, Inc., for at least

one or more of the CVS/pharmacy locations at or through which the relevant allegations occurred,

during all times relevant to the facts as alleged herein.  By engaging in the conduct described in

this Complaint, ANDERSON acted under the course and scope of his employment for CVS.  By

engaging in at least some of the conduct described in this Complaint, ANDERSON exceeded the

Verified Complaint for Damages and Injunctive Relief for Violations of the Americans With Disabilities Act of 1990 [42 U.S.C. § 12101, *et seq.*]; Violations of the Civil Rights Act of 1964 [42 U.S.C. §§ 1981, 1985, 1986 and 2000d, *et seq.*]; Violations of the Affordable Care Act [42 U.S.C. § 18116]; Assault; Battery; False Imprisonment; Intentional Infliction of Emotional Distress; Negligence; Civil Conspiracy; Negligent Supervision &/or Retention; Unfair Trade Practices; and Interference with Contract
Page 11 of 101

authority vested in him as an employee of CVS and committed acts of a personal nature and/or for personal and financial interest or gain.

23.    Upon information and belief and thereon alleged, KEVIN ELLIOTT (hereinafter "KEVIN ELLIOTT," and/or "ELLIOTT," and/or singly addressed as "CVS" and/or singly addressed as "CVS Defendant(s) and/or singly addressed as "Defendant(s)") is sued both individually and in his capacity as District Manager for CVS/pharmacy and/or CVS Caremark Corporation and/or South Carolina CVS Pharmacy, LLC, and/or CVS Pharmacy, Inc., for at least one or more of the CVS/pharmacy locations at or through which the relevant allegations occurred, during all times relevant to the facts as alleged herein.  By engaging in the conduct described in this Complaint, ELLIOTT acted under the course and scope of his employment for CVS.  By engaging in at least some of the conduct described in this Complaint, ELLIOTT exceeded the authority vested in him as an employee of CVS and committed acts of a personal nature and/or for personal and financial interest or gain.

24.    Upon information and belief and thereon alleged, JOHN ROBINSON (hereinafter "JOHN ROBINSON," and/or "ROBINSON," and/or singly addressed as "CVS" and/or singly addressed as "CVS Defendant(s) and/or singly addressed as "Defendant(s)") is sued both individually and in his capacity as District Manager for CVS/pharmacy and/or CVS Caremark Corporation and/or South Carolina CVS Pharmacy, LLC, and/or CVS Pharmacy, Inc., for at least one or more of the CVS/pharmacy locations at or through which the relevant allegations occurred, during all times relevant to the facts as alleged herein.  By engaging in the conduct described in this Complaint, ROBINSON acted under the course and scope of his employment for CVS.  By engaging in at least some of the conduct described in this Complaint, ROBINSON exceeded the authority vested in him as an employee of CVS and committed acts of a personal nature and/or for personal and financial interest or gain.

Verified Complaint for Damages and Injunctive Relief for Violations of the Americans With Disabilities Act of 1990 [42 U.S.C. § 12101, et seq.]; Violations of the Civil Rights Act of 1964 [42 U.S.C. §§ 1981, 1985, 1986 and 2000d, et seq.]; Violations of the Affordable Care Act [42 U.S.C. § 18116]; Assault; Battery; False Imprisonment; Intentional Infliction of Emotional Distress; Negligence; Civil Conspiracy; Negligent Supervision &/or Retention; Unfair Trade Practices; and Interference with Contract
Page 12 of 101

25.    Upon information and belief and thereon alleged, MATT LESNIAK (hereinafter "MATT LESNIAK," and/or "LESNIAK," and/or singly addressed as "CVS" and/or singly addressed as "CVS Defendant(s) and/or singly addressed as "Defendant(s)") is sued both individually and in his capacity as District Manager for CVS/pharmacy and/or CVS Caremark Corporation and/or South Carolina CVS Pharmacy, LLC, and/or CVS Pharmacy, Inc., for at least one or more of the CVS/pharmacy locations at or through which the relevant allegations occurred, during all times relevant to the facts as alleged herein. By engaging in the conduct described in this Complaint, LESNIAK acted under the course and scope of his employment for CVS. By engaging in at least some of the conduct described in this Complaint, LESNIAK exceeded the authority vested in him as an employee of CVS and committed acts of a personal nature and/or for personal and financial interest or gain.

26.    Upon information and belief and thereon alleged, JOHN DOE # 1, who Plaintiff believes goes by the name of Josh, (hereinafter "JOHN DOE," "JOHN DOE # 1 (Josh),"and/or singly addressed as "CVS" and/or singly addressed as "CVS Defendant(s) and/or singly addressed as "Defendant(s)") is sued both individually and in his capacity as Manager &/or Assistant Manager &/or Supervisor and/or employee of the CVS/PHARMACY # 7159, located at 2884 Highway 17 North, Mount Pleasant, South Carolina, during all times relevant to the facts as alleged herein. By engaging in the conduct described in this Complaint, JOHN DOE # 1 (Josh) acted under the course and scope of his employment for CVS. By engaging in at least some of the conduct described in this Complaint, JOHN DOE #1 (Josh) exceeded the authority vested in him as an employee of CVS and committed acts of a personal nature and/or for personal and financial interest or gain.

27.    Upon information and belief and thereon alleged, JANE DOE # 1, who Plaintiff believes goes by the name of Allison, (hereinafter "JANE DOE," "JANE DOE # 1

Verified Complaint for Damages and Injunctive Relief for Violations of the Americans With Disabilities Act of 1990 [42 U.S.C. § 12101, *et seq.*]; Violations of the Civil Rights Act of 1964 [42 U.S.C. §§ 1981, 1985, 1986 and 2000d, *et seq.*]; Violations of the Affordable Care Act [42 U.S.C. § 18116]; Assault; Battery; False Imprisonment; Intentional Infliction of Emotional Distress; Negligence; Civil Conspiracy; Negligent Supervision &/or Retention; Unfair Trade Practices; and Interference with Contract
Page 13 of 101

(Allison),"and/or singly addressed as "CVS" and/or singly addressed as "CVS Defendant(s) and/or singly addressed as "Defendant(s)") is sued both individually and in her capacity as Manager &/or Assistant Manager &/or Supervisor of the CVS/PHARMACY # 4399, located at 2571 Forest Drive, Columbia, South Carolina, during all times relevant to the facts as alleged herein.  By engaging in the conduct described in this Complaint, JANE DOE # 1 (Allison) acted under the course and scope of her employment for CVS.  By engaging in at least some of the conduct described in this Complaint, JANE DOE #1 (Allison) exceeded the authority vested in her as an employee of CVS and committed acts of a personal nature and/or for personal and financial interest or gain.

28.    Upon information and belief and thereon alleged, JANE DOE # 2, who Plaintiff believes goes by the name of either Tonia or Tonya, (hereinafter "JANE DOE," "JANE DOE # 2 (Tonia or Tonya)," and/or singly addressed as "CVS" and/or singly addressed as "CVS Defendant(s) and/or singly addressed as "Defendant(s)") is sued both individually and in her capacity as Manager &/or Assistant Manager &/or Supervisor of the CVS/PHARMACY # 7697, located at 415 Brooks Road, Andrews, South Carolina, during all times relevant to the facts as alleged herein.  By engaging in the conduct described in this Complaint, JANE DOE # 2 (Tonia or Tonya) acted under the course and scope of her employment for CVS.  By engaging in at least some of the conduct described in this Complaint, JANE DOE #2 (Tonia or Tonya) exceeded the authority vested in her as an employee of CVS and committed acts of a personal nature and/or for personal and financial interest or gain.

29.    On information and belief, Defendant CVS CAREMARK CORPORATION and/or SOUTH CAROLINA CVS PHARMACY, LLC, and/or CVS PHARMACY, INC., individually and/or jointly, is the parent company of each of the CVS/pharmacy establishments at the South Carolina locations identified herein. On information and belief, all operations and all employees of

Verified Complaint for Damages and Injunctive Relief for Violations of the Americans With Disabilities Act of 1990 [42 U.S.C. § 12101, *et seq.*]; Violations of the Civil Rights Act of 1964 [42 U.S.C. §§ 1981, 1985, 1986 and 2000d, *et seq.*]; Violations of the Affordable Care Act [42 U.S.C. § 18116]; Assault; Battery; False Imprisonment; Intentional Infliction of Emotional Distress; Negligence; Civil Conspiracy; Negligent Supervision &/or Retention; Unfair Trade Practices; and Interference with Contract
Page 14 of 101

each of the CVS/pharmacy establishments at the locations identified herein have been controlled, directed, and supervised by either and/or both Defendants CVS CAREMARK CORPORATION and/or SOUTH CAROLINA CVS PHARMACY, LLC, and/or CVS PHARMACY, INC. On information and belief, Defendants CVS CAREMARK CORPORATION and/or SOUTH CAROLINA CVS PHARMACY, LLC, and/or CVS PHARMACY, INC., have knowledge of and approved of all the conduct of each of the CVS/pharmacy retail establishments at the locations identified herein and its employees, agents and/or representatives.

30.     On information and belief, each of the CVS/pharmacy establishments at the locations identified herein is a place of public accommodation principally engaged in the retail sale of prescription pharmaceuticals and provision of health care and/or medical- and health-related supplies and/or products.

31.     On information and belief, each of the CVS/pharmacy establishments at the locations identified herein is, or at all times relevant hereto was, open to, and serves, the public.

32.     On information and belief, as President of CVS/pharmacy COSBY was responsible for all aspects of the CVS Retail business (CVS/pharmacy), including operations and strategic planning; developed overall corporate strategy and enterprise communications for the company; developed strategies, policies, and procedures for retail operations; set the expectation, standard and example for customer service within all CVS/pharmacy locations; and was responsible for selection, guidance, training, performance management and accountability of all CVS/pharmacy associates

33.     On information and belief, as Vice President of CVS/pharmacy, PURDY is and was responsible for total profit and loss (P&L), market operations, human resources; corporate-wide pharmacy operations, staffing, quality, and regulatory matters; leadership and oversight of all CVS/pharmacy locations; develops strategies and implements programs that enhance

Verified Complaint for Damages and Injunctive Relief for Violations of the Americans With Disabilities Act of 1990 [42 U.S.C. § 12101, *et seq.*]; Violations of the Civil Rights Act of 1964 [42 U.S.C. §§ 1981, 1985, 1986 and 2000d, *et seq.*]; Violations of the Affordable Care Act [42 U.S.C. § 18116]; Assault; Battery; False Imprisonment; Intentional Infliction of Emotional Distress; Negligence; Civil Conspiracy; Negligent Supervision &/or Retention; Unfair Trade Practices; and Interference with Contract
Page 15 of 101

CVS/pharmacy operations and effectiveness, including, but not limited to, process improvements and staff training.

34.    On information and belief, TWEDELL's and EDGE's responsibilities as Regional Manager of CVS/pharmacy include: supervision of all District Managers, Pharmacy Supervisors, and HR Mangers, along with other support positions as determined by the Area Vice President; utilizing staff from the CVS organization to achieve the region's objectives; setting the standard for customer service within the region; setting the expectations of all programs in order to drive sales and improve the profitability of the region; selecting, promoting, succession planning, separation as needed, of all District Store Manager, Pharmacy Supervisors, and other support positions within the region; exemplifying expected levels of customer service; managing the total store operation of the defined region, including selection, guidance and performance review of staff; and training and developing personnel to ensure a working environment for success.

35.    On information and belief, ANDERSON's, ELLIOTT's, ROBINSON's, and LESNIAK's responsibilities as District Managers of CVS/pharmacy include: managing the total store operations of the district; supporting, training and innovative thinking to successfully lead an average of 20 or more stores; accountability for the operational performance and management of store teams, including people development, sales and sales building programs, service, execution of company-wide programs and initiatives; supervising support staff to drive results in the district; conducting store visits to motivate and energize store personnel; teaching store teams how to be successful, how to impact service and ultimately deliver for customers; making adjustments or taking risks to provide a great customer experience that delivers results; had the autonomy to make decisions, from coaching a store colleagues in real-time to coaching Store Managers on effective strategies with the customer in mind; and responsibility for selection, guidance, training, performance management and accountability of all associates in the district (Store Managers,

Verified Complaint for Damages and Injunctive Relief for Violations of the Americans With Disabilities Act of 1990 [42 U.S.C. § 12101, *et seq.*]; Violations of the Civil Rights Act of 1964 [42 U.S.C. §§ 1981, 1985, 1986 and 2000d, *et seq.*]; Violations of the Affordable Care Act [42 U.S.C. § 18116]; Assault; Battery; False Imprisonment; Intentional Infliction of Emotional Distress; Negligence; Civil Conspiracy; Negligent Supervision &/or Retention; Unfair Trade Practices; and Interference with Contract
Page 16 of 101

1  Assistant Managers and Pharmacists), including acclimating new field management staff to the

2  company and or new positions.

3      36.    On information and belief, POLAND's, SOSA's, McCLURE's, KELLER's,

4  CHISHOLM's, WEBB's, CESSNA's, COMBS', BRESCIA's, GATES' and PENDERGRASS'

5  responsibilities as Store, or Assistant Store, Managers included building consumer loyalty to

6  CVS/pharmacy through a focus on excellent customer service; maintaining an engaged store team

7  through demonstrating initiative and leading by example; operations and management skills

8  training and learning about key aspects of the business and CVS/pharmacy culture; and total

9  leadership and strategic operation of a CVS/pharmacy store including, though not limited to,

10  overall store management, supervision, and policy implementation; sales and inventory

11  management; employee staffing, training, and development; and customer service leadership.

12

13      37.    The true names and capacities, whether individual, corporate, associate,

14  governmental, or otherwise, of Defendants JOHN DOES 1 through 80 and JANE DOES 1 through

15  50, are unknown to ROE at this time, who therefore Plaintiff sues said DOE Defendants by such

16  fictitious names (hereinafter "JOHN DOE," "JOHN DOES," "JANE DOE," "JANE DOES,"

17  and/or singly addressed as "CVS" and/or singly addressed as "CVS Defendant(s) and/or singly

18  addressed as "Defendant(s)"). Plaintiff is informed and believes and thereon alleges that each of

19  the defendants designated as a DOE is responsible in some manner for the events and happenings

20  herein referred to, and that Plaintiff's injuries and damages as hereinafter set forth were

21  proximately caused by said Defendants.  When the true names and capacities of said DOE

22  Defendants have been ascertained, ROE will amend this Complaint accordingly.  ROE is informed

23  and believes, and thereon alleges, that each Defendant designated herein as a JOHN DOE or as a

24  JANE DOE is responsible, directly or in concert with others, or negligently or in some other

25  actionable manner, for the events and happenings hereinafter referred to, and caused damages

26

27

28

Verified Complaint for Damages and Injunctive Relief for Violations of the Americans With Disabilities Act of 1990 [42 U.S.C. § 12101, et seq.]; Violations of the Civil Rights Act of 1964 [42 U.S.C. §§ 1981, 1985, 1986 and 2000d, et seq.]; Violations of the Affordable Care Act [42 U.S.C. § 18116]; Assault; Battery; False Imprisonment; Intentional Infliction of Emotional Distress; Negligence; Civil Conspiracy; Negligent Supervision &/or Retention; Unfair Trade Practices; and Interference with Contract
Page 17 of 101

thereby to ROE, as hereinafter alleged. For those unidentified JOHN DOES and/or JANE DOES who were employees or agents of CVS, by engaging in the conduct described in this Complaint, those JOHN DOES and/or JANE DOES acted under the course and scope of their employment for CVS. For those unidentified JOHN DOES and/or JANE DOES who were employees or agents of CVS, by engaging in at least some of the conduct described in this Complaint, those JOHN DOES and/or JANE DOES exceeded the authority vested in them as an employee of CVS and committed acts of a personal nature and/or for personal and financial interest or gain.

38.     ROE is informed and believes, and thereon alleges that at all times herein mentioned, Defendants JOHN DOES 1 through 80, inclusive, and JANE DOES 1 through 50, inclusive, at all times relevant hereto, were and are individuals, corporations, partnerships, unincorporated associations, sole proprietorships and/or other business entities organized and existing under and by virtue of the laws of the State of South Carolina, or the laws of some other state or foreign jurisdiction, and that said Defendants, and each of them, have regularly conducted business in the State of South Carolina or have similarly availed themselves of the laws of the State of South Carolina.

39.     Plaintiff is informed and believed and thereon alleges that at all times herein mentioned, each of the Defendants sued herein was the agent and/or partner and/or joint venturer and/or employee of each of the remaining defendants, and each of them were acting within the course and scope of such agency and/or employment during at least some of the events giving rise to Plaintiff's harm as alleged herein. Plaintiff is further informed and believes, and thereon alleges, that each of the Defendants herein gave consent to, ratified, and/or authorized the acts alleged herein to each of the remaining Defendants.

Verified Complaint for Damages and Injunctive Relief for Violations of the Americans With Disabilities Act of 1990 [42 U.S.C. § 12101, et seq.]; Violations of the Civil Rights Act of 1964 [42 U.S.C. §§ 1981, 1985, 1986 and 2000d, et seq.]; Violations of the Affordable Care Act [42 U.S.C. § 18116]; Assault; Battery; False Imprisonment; Intentional Infliction of Emotional Distress; Negligence; Civil Conspiracy; Negligent Supervision &/or Retention; Unfair Trade Practices; and Interference with Contract
Page 18 of 101

**JURISDICTION AND VENUE**

40.     This action arises from a violation, *inter alia*, of Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181, *et seq*., discrimination in violation of the Civil Rights Act of 1964, 42 U.S.C. §§ 1981, § 1985, 1986 and 42 U.S.C. § 2000d, *et seq*., and discrimination in violation of the Affordable Care Act, 42 U.S.C. § 18116.  Plaintiff also seeks redress of violations of state law rights and/or federal law rights via the supplemental jurisdiction of this Court.

41.     This Court has original jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343 and supplemental jurisdiction under 28 U.S.C. § 1367(a).  Declaratory and injunctive relief are authorized by 28 U.S.C. §§ 2201, 2202, and 1343.

42.     Venue is proper pursuant to 28 U.S.C. § 1391 because at least one of the defendants resides within this District and because all the acts for which Plaintiff complains occurred in several municipalities within the State of South Carolina.

43.     Personal jurisdiction is proper over each of the defendants because they are either domiciled in the State of South Carolina and/or have regularly transacted business in the State.

44.     In order to maintain an action under 42 U.S.C. § 1985, ROE need not first exhaust administrative or state remedies.  Neither does the availability of a state remedy preclude ROE from seeking relief under the Civil Rights Act, when the Complaint otherwise states a claim. (*Hazzard v. Weinberger*, 382 F.Supp. 255 (1974), affirmed 512 F.2d 1397 (2nd Cir. 1975) or state court remedies (*Burt v. City of New York*, 156 F.2d 791 (1946)).

**GENERAL ALLEGATIONS**

45.     The national tragedy of September 11, 2001, shook this Nation to its core and inspired many patriots to enlist in the United States Armed Forces, which launched Operation Enduring Freedom (originally called Operation Infinite Justice) on or around October 7, 2001.

Verified Complaint for Damages and Injunctive Relief for Violations of the Americans With Disabilities Act of 1990 [42 U.S.C. § 12101, *et seq*.]; Violations of the Civil Rights Act of 1964 [42 U.S.C. §§ 1981, 1985, 1986 and 2000d, *et seq*.]; Violations of the Affordable Care Act [42 U.S.C. § 18116]; Assault; Battery; False Imprisonment; Intentional Infliction of Emotional Distress; Negligence; Civil Conspiracy; Negligent Supervision &/or Retention; Unfair Trade Practices; and Interference with Contract
Page 19 of 101

One such patriot is Plaintiff James ROE, who enlisted in the United States Marine Corps during 2001.

46.    During the years prior to enlisting in the United States Marine Corps, ROE (and/or his family on his behalf during the time he was a minor) regularly shopped at various Defendant CVS/pharmacy locations within the State of South Carolina, which included, *inter alia*, receiving and/or purchasing prescription pharmaceuticals and health care-related products and/or services.

47.    ROE's career in the Marine Corps was short-lived. During 2002, due to circumstances which resulted in ROE's diagnosis with Post-Traumatic Stress Disorder (PTSD) and other, occasionally severe, symptoms associated with PTSD, including extreme agoraphobia, the Marine Corps discharged ROE with a service connected disability.

48.    A short time after his PTSD diagnosis, ROE began to (and still does) wear a sports towel draped over his head (similar to the sports towels used by many National Football League players while on the sidelines – like Carolina Panthers' quarterback Cam Newton, or even basketball player Michael Jordon) as a psychological coping mechanism. ROE's doctors consent to ROE wearing a sports towel, as it grounds him and helps him maintain a sense of calm.

49.    Despite that initial diagnosis, ROE attempted to remain a functioning member of society through at-home employment. Unfortunately, ROE's condition insidiously pervaded his life, and by 2010 circumstances required ROE to accept Veteran's Administration benefits for a 100% disability determination.

50.    As a result of the facts as alleged herein, ROE has been diagnosed as additionally suffering major depression, severe anxiety, and suicidal ideation, among other symptoms.

51.    As required by his condition, ROE received treatment from various medical and mental health service providers. By 2010, however, ROE's doctors insisted he drop plans to

Verified Complaint for Damages and Injunctive Relief for Violations of the Americans With Disabilities Act of 1990 [42 U.S.C. § 12101, *et seq.*]; Violations of the Civil Rights Act of 1964 [42 U.S.C. §§ 1981, 1985, 1986 and 2000d, *et seq.*]; Violations of the Affordable Care Act [42 U.S.C. § 18116]; Assault; Battery; False Imprisonment; Intentional Infliction of Emotional Distress; Negligence; Civil Conspiracy; Negligent Supervision &/or Retention; Unfair Trade Practices; and Interference with Contract
Page 20 of 101

remain employed and place all his focus and effort into overcoming PTSD, agoraphobia and other PTSD-related symptoms.

52.     It was only the beginning of 2012 when doctors felt comfortable to suggest ROE venture out to try and gradually regain his place in society. ROE's doctors felt that, as a step towards continued improvement, ROE begin with small steps and start by requesting modest accommodation. ROE's doctors chose this course of treatment at least in part due to the Americans with Disabilities Act (ADA) prohibition against discrimination against those with disabilities and the ADA's guarantees that people with disabilities have the same opportunities as everyone else to participate in the mainstream of American life, including enjoyment of employment opportunities, participation in State and local government programs and services, and purchase goods and services.

53.     Based upon the suggestion of doctors, and with knowledge of the support provided under and by the ADA, ROE agreed to a course of treatment that might slowly, though effectively, help reacquaint him with social interaction and/or improve his social skills. Since ADA § 12181(7)(E) states that grocery stores, clothing stores, hardware stores, shopping centers, or other sales or rental establishments are private entities considered public accommodations under the ADA, coupled with the § 12182(a) prohibition that "no individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases, or operates a place of public accommodation," ROE and his doctors agreed on a plan for ROE to request modest accommodation in incremental amounts.

54.     On or around February, 2012, though not a requirement under the ADA, ROE's psychologist wrote a generic letter for ROE to use whenever he would request places of public accommodation make reasonable accommodations based on ROE's service-connected disability.

Verified Complaint for Damages and Injunctive Relief for Violations of the Americans With Disabilities Act of 1990 [42 U.S.C. § 12101, et seq.]; Violations of the Civil Rights Act of 1964 [42 U.S.C. §§ 1981, 1985, 1986 and 2000d, et seq.]; Violations of the Affordable Care Act [42 U.S.C. § 18116]; Assault; Battery; False Imprisonment; Intentional Infliction of Emotional Distress; Negligence; Civil Conspiracy; Negligent Supervision &/or Retention; Unfair Trade Practices; and Interference with Contract
Page 21 of 101

55.     ROE's disability is such that anxiety and panic attacks overtake and adversely affect him when he encounters multiple unknown persons.  ROE's doctors believed that places of public accommodation would allow ROE to enter the establishment during typically non-business hours, either shortly before opening the place of public accommodation to others or near the establishment's closing time.  ROE's doctors believed this request to be reasonable based upon ROE's disability because the mere thought that other patrons may enter the establishment could be sufficient circumstance that could adversely affect ROE. ROE's knowledge and awareness that no other patrons could come into the place of public accommodation while the entry doors remained locked after ROE was inside minimize ROE's anxiety and adverse response to panic and/or excessive stimuli.

56.     On or around February, 2012, ROE's course of treatment began with his request to the South Carolina Department of Motor Vehicles (DMV).   ROE spoke with Branch Manager Mrs. Ivvy for the branch located at 785 Eastland Avenue, Kingstree, South Carolina. ROE informed Ivvy that he needed to renew his driver's license and requested reasonable accommodation based on the Veterans Administration's diagnosis of PTSD with accompanying extreme agoraphobia.

57.     Upon hearing about ROE's condition and his request, Ivvy first contacted Mrs. Phelps, DMV Driver Services Director, who contacted ROE personally to discuss his accommodation request.  The DMV willingly agreed to ROE's request, in part because the DMV believed it to be reasonable and not an undue burden.  Ivvy assured ROE the DMV would be flexible by allowing ROE to arrive either before or after normal business hours.  Ivvy suggested it would be better for ROE to park in the back of the building where employees park because when it was time for ROE to leave, the number of customers at the front entrance may cause ROE distress. Unknown to ROE at the time and outside the scope of his accommodation, prior to

Verified Complaint for Damages and Injunctive Relief for Violations of the Americans With Disabilities Act of 1990 [42 U.S.C. § 12101, *et seq.*]; Violations of the Civil Rights Act of 1964 [42 U.S.C. §§ 1981, 1985, 1986 and 2000d, *et seq.*]; Violations of the Affordable Care Act [42 U.S.C. § 18116]; Assault; Battery; False Imprisonment; Intentional Infliction of Emotional Distress; Negligence; Civil Conspiracy; Negligent Supervision &/or Retention; Unfair Trade Practices; and Interference with Contract
Page 22 of 101

ROE's arrival Ivvy unilaterally requested all DMV personnel vacate the office so that ROE would only interact with Ivvy.   ROE stayed for about 30 minutes, during which time his application was processed and he received a driver's license.

58.    ROE was ecstatic that the DMV treated him like a "normal" person and as if there was absolutely nothing out of the ordinary with his request or how the DMV worked to accommodate his disability.  ROE's doctors believed ROE's DMV experience would serve as a catalyst for working to improve both how ROE worked with or through his condition as well as minimize his hostility levels and/or social withdrawal.

59.    Based upon the warm reception provided by the DMV, ROE and his doctors agreed that ROE should contact a "grocery store, clothing store, hardware store, or other sales or rental establishment" (each considered public accommodations under the ADA) that might offer a similar level of experience in response to requests for accommodation.   It took ROE and his doctors several months of working together to ensure ROE was both mentally and emotionally receptive to forge a path to regaining his place in society.

60.    ROE's first contact with a non-government public accommodation was Best Buy, an electronics "superstore," located at 7612 Rivers Avenue, North Charleston, South Carolina. ROE chose Best Buy because it was a store he had wanted to shop for some time.

61.    On, around and between August and September, 2013, the Best Buy Store Manager, Jay Hicks, came out of the store and met with ROE while ROE remained in his vehicle. ROE told Hicks that he was a Marine veteran who received a 100% disability diagnosis of PTSD and PTSD-associated agoraphobia, and asked Hicks if, as a reasonable accommodation under the ADA, he could shop after hours due to his disability. Hicks stated that he personally had no problem accommodating ROE but wanted to confirm his decision with Corporate. ROE does not recall the name of the Corporate person to whom they spoke though believes the man's name was

Verified Complaint for Damages and Injunctive Relief for Violations of the Americans With Disabilities Act of 1990 [42 U.S.C. § 12101, *et seq.*]; Violations of the Civil Rights Act of 1964 [42 U.S.C. §§ 1981, 1985, 1986 and 2000d, *et seq.*]; Violations of the Affordable Care Act [42 U.S.C. § 18116]; Assault; Battery; False Imprisonment; Intentional Infliction of Emotional Distress; Negligence; Civil Conspiracy; Negligent Supervision &/or Retention; Unfair Trade Practices; and Interference with Contract
Page 23 of 101

either Brett or Brad. Due to issues of scheduling and availability, ROE later contacted a woman named Rhonda, who stated that she would be the one ROE needed to work with to coordinate his accommodation request. Rhonda not only contacted the North Charleston Best Buy location, but informed managers at other South Carolina Best Buy stores as to ROE's request and the need for each store to make reasonable accommodation. Rhonda informed ROE that his request to shop after scheduled closing time was reasonable under the circumstances and not what Best Buy would ever consider to be an undue burden on any of their hundreds of stores. Further, Best Buy placed no restriction on the amount of time it would allow ROE to shop, though did request ROE provide the specific store with a day's notice to ensure personnel would be available for his accommodation.

62.    In addition to South Carolina DMV and Best Buy, ROE requested and received accommodation at the following public accommodations:

 a. Publix Food & Pharmacy, a grocery store and pharmacy, located at 2800 Rosewood Drive, Columbia, South Carolina, whose store manager Jeffery Thompson stated that ROE's request was certainly reasonable and that it would not be a problem at all;

 b. Publix Food & Pharmacy, a grocery store and pharmacy, located at 1401 Sam Rittenberg Boulevard, Charleston, South Carolina; whose store manager, Steve, assured ROE that allowing ROE to shop after hours is reasonable and not an undue burden on them and that he absolutely has no problem whatsoever allowing ROE that accommodation;

 c. Food Lion, a grocery store, located at 1009 Highway 501, Myrtle Beach, South Carolina, whose store manager Anthony stated that he understands the ADA and that ROE's request is a reasonable request, but that if Anthony were not

Verified Complaint for Damages and Injunctive Relief for Violations of the Americans With Disabilities Act of 1990 [42 U.S.C. § 12101, et seq.]; Violations of the Civil Rights Act of 1964 [42 U.S.C. §§ 1981, 1985, 1986 and 2000d, et seq.]; Violations of the Affordable Care Act [42 U.S.C. § 18116]; Assault; Battery; False Imprisonment; Intentional Infliction of Emotional Distress; Negligence; Civil Conspiracy; Negligent Supervision &/or Retention; Unfair Trade Practices; and Interference with Contract
Page 24 of 101

working on the night ROE needed accommodation, that ROE should ask to speak with the assistant manager Tim, and concluded by saying "so, no worries."

d.  Delta Pharmacy, a retail pharmacy, with locations at 162 Seven Farms Drive, Daniel Island, and its East Bay Street location in Charleston, both in South Carolina, whose Regional Manager, John Joe clearly understood that ROE needed to shop after hours when the store was locked and limited to customers because this could help with ROE's exposure therapy, and the East Bay Street store manager, Joey, on the day ROE requested accommodation stated that they "wanted to work around" ROE and what was easiest for ROE;

e.  Costco, a club/membership warehouse outlet located at 1021 Oak Forest Lane, Myrtle Beach, South Carolina, whose assistant general manager Andrew stated that he fully understand the ADA, that all Costco employed participate in annual training for it, and that ROE's request absolutely falls within what Costco believes is a reasonable accommodation request;

f.  Sam's Club, a club/membership warehouse store, located at 4900 Centre Point Drive, North Charleston, South Carolina, whose store manager James stated that he, too, is an ex-Marine and military police, that he understands PTSD, and that he and all South Carolina Sam's Club managers will do whatever they can to help ROE, as neither he nor Sam's Club view ROE's request as an undue burden and that the request is clearly reasonable;

g.  Family Dollar, a discount retail store, located at 208 North Main Street, Summerville, South Carolina, whose store manager Andre stated that all ROE

Verified Complaint for Damages and Injunctive Relief for Violations of the Americans With Disabilities Act of 1990 [42 U.S.C. § 12101, *et seq.*]; Violations of the Civil Rights Act of 1964 [42 U.S.C. §§ 1981, 1985, 1986 and 2000d, *et seq.*]; Violations of the Affordable Care Act [42 U.S.C. § 18116]; Assault; Battery; False Imprisonment; Intentional Infliction of Emotional Distress; Negligence; Civil Conspiracy; Negligent Supervision &/or Retention; Unfair Trade Practices; and Interference with Contract
Page 25 of 101

had to do was to contact any employee prior to closing and Family Dollar would grant ROE's request to shop after hours; and

h.  Family Dollar, a discount retail store, located at 4391 Dorchester Road, Charleston, South Carolina, whose store manager Mike stated that Family Dollar will work with ROE to accommodate ROE's disability, but suggested that it would probably be better for ROE's disability if ROE's accommodation could occur in the morning at least half an hour before the store opened, as Mike was concerned that the hectic pace of employees after closing time might adversely effect ROE.

63.    ROE contacted and/or approached each of the aforementioned public accommodations in the same or similar manner as he did each of the CVS Defendants' stores.

64.    ROE chose CVS for three reasons. First, among the many commercial retail stores in the area, ROE chose to patronize CVS because of its reputation as a nationally-advertised large chain drug store and, as such, had the expectation of nationally recognized quality and customer service. Second, since the time of ROE's disability diagnosis, ROE avoided going to public places/public accommodations and ROE's mother had shopped for him on numerous occasions because both ROE and his mother appreciate the quality of the goods available through the CVS/pharmacy retail chain.  Third, while trying to locate any publicly available policy published by the CVS Defendants, ROE read CVS CAREMARK CORPORATION's 2012 annual report in which store management stated "Helping people on their path to better health," and elsewhere "(w)e are focused on enhancing access to care . . . and improving health outcomes."  ROE believed the tenor of those messages at least implied that CVS/pharmacy retail community pharmacies would accommodate a request that many other public accommodations, both government and private, agreed were both reasonable and not an undue burden.

Verified Complaint for Damages and Injunctive Relief for Violations of the Americans With Disabilities Act of 1990 [42 U.S.C. § 12101, et seq.]; Violations of the Civil Rights Act of 1964 [42 U.S.C. §§ 1981, 1985, 1986 and 2000d, et seq.]; Violations of the Affordable Care Act [42 U.S.C. § 18116]; Assault; Battery; False Imprisonment; Intentional Infliction of Emotional Distress; Negligence; Civil Conspiracy; Negligent Supervision &/or Retention; Unfair Trade Practices; and Interference with Contract
Page 26 of 101

65.    On or around August 27, 2013, ROE contacted CVS/pharmacy # 7159 and spoke with Defendant BILL POLAND, who identified himself as the store manager.  ROE described and explained his disability and the reason he needed a special but yet reasonable accommodation. Though not required under the ADA, ROE offered to show proof of his disability diagnosis along with a letter written by ROE's doctor which further explained why ROE needed reasonable accommodation. POLAND stated it was against CVS/pharmacy policy to make accommodations for anyone to shop after hours.  ROE requested POLAND allow ROE to walk up to the door when ROE saw staff coming to lock it at closing time. Again, POLAND denied ROE an accommodation.  ROE continued, asking POLAND if POLAND and CVS could work with ROE to somehow to allow ROE to shop during open hours without triggering panic or other PTSD and/or PTSD-associated agoraphobia symptoms due to store being open for other, potentially numerous, customers. POLAND stated that he could not and would not make any guarantees to ROE which would interfere with the shopping experience of any other customer.  ROE persisted, asking POLAND if there was a way either CVS or POLAND would work with ROE to provide him reasonable accommodation, such as by letting ROE come in at a time when only a few customers were inside while POLAND or another staff member kept an eye out on the door entry to inform ROE if or when too many additional customers came into the store so that ROE could rely on store personnel to divert customers to a portion of the store while allowing ROE time to exit and escape the situation of being around too many customers. POLAND became agitated and stated that their customers should not have to delay their shopping because of ROE, as he doubted ROE suffered any form of disability and thereafter refused ROE any form of accommodation.

66.    On or around August 28, 2013, ROE again contacted CVS/pharmacy #7159 in order to speak with a manager other than POLAND.  ROE spoke with Defendant JOHN DOE # 1, a man who identified himself as Josh.  ROE explained to JOHN DOE # 1 (Josh) that ROE was

Verified Complaint for Damages and Injunctive Relief for Violations of the Americans With Disabilities Act of 1990 [42 U.S.C. § 12101, et seq.]; Violations of the Civil Rights Act of 1964 [42 U.S.C. §§ 1981, 1985, 1986 and 2000d, et seq.]; Violations of the Affordable Care Act [42 U.S.C. § 18116]; Assault; Battery; False Imprisonment; Intentional Infliction of Emotional Distress; Negligence; Civil Conspiracy; Negligent Supervision &/or Retention; Unfair Trade Practices; and Interference with Contract
Page 27 of 101

disabled due to diagnosis with PTSD and PTSD-associated agoraphobia and requested reasonable accommodation to shop for a short time after or before normal store hours. JOHN DOE # 1 (Josh) stated it was against CVS policies to let customers shop after closing time and that all staff members are out of the store immediately at closing time.  ROE asked JOHN DOE # 1 (Josh) if there was anything he or CVS could do to help or work with ROE, but JOHN DOE # 1 (Josh) giggled and initially said "no," but then went on to inform ROE that JOHN DOE # 1 (Josh) was informed by Josh's store manager, POLAND, to deny ROE any accommodation, and that JOHN DOE # 1 (Josh) "had to follow (POLAND's) orders." JOHN DOE # 1 (Josh) went on to say, "We're suppose to tell people that all staff members exit the store at the same time exactly at closing time, so I'm sticking with that" and concluded, "so despite your disability, our store can't help you."  ROE began to further question JOHN DOE # 1 (Josh) about other possible reasonable accommodation, but JOHN DOE # 1 (Josh) ignored ROE.  ROE has since obtained video evidence that contradicts the claims made by JOHN DOE # 1 (Josh) – and other CVS Defendants – as the videos show both customers continuing to shop after store hours and managers present in the stores for over 20 minutes after closing time.

67.     On or around August 28, 2013, ROE contacted CVS/pharmacy # 7568, located at 1316 Red Bank Road, Goose Creek, South Carolina (a location that has since closed), and spoke with Defendant TRAVIS COMBS, who identified himself as the store manager. ROE informed COMBS that ROE was a Marine veteran diagnosed with PTSD and PTSD-associated agoraphobia and that ROE's disability prevented ROE from shopping during times when numbers, or the possibility of numbers, of other customers might be present.  COMBS stated that ROE's request was unusual and it was doubtful he or anyone at any CVS would take ROE's request seriously and therefore it would be unlikely ROE could be accommodated, whether at COMBS' or any CVS location.  ROE stated that ROE not only wanted to shop but that ROE also wanted to use CVS to

Verified Complaint for Damages and Injunctive Relief for Violations of the Americans With Disabilities Act of 1990 [42 U.S.C. § 12101, et seq.]; Violations of the Civil Rights Act of 1964 [42 U.S.C. §§ 1981, 1985, 1986 and 2000d, et seq.]; Violations of the Affordable Care Act [42 U.S.C. § 18116]; Assault; Battery; False Imprisonment; Intentional Infliction of Emotional Distress; Negligence; Civil Conspiracy; Negligent Supervision &/or Retention; Unfair Trade Practices; and Interference with Contract
Page 28 of 101

start filling ROE's prescriptions again and that ROE needed a special and reasonable accommodation in order for ROE to pick it up. COMBS again said "I can't help, as the store has no drive thru." COMBS further claimed that CVS policy prevents all CVS/pharmacy locations from remaining open after closing time, citing loss prevention and safety concerns for the employees if COMBS were to even let one person shop after hours. COMBS stated that other people will be allowed to come through the door if CVS were to allow ROE to shop after hours. ROE asked if COMBS could lock the door after letting ROE in to shop, to which COMBS replied that he would "never do that."

68.    On or around August 29, 2014, ROE contacted – via an 800 telephone number – a CVS Customer Care representative by the name of Abby.  ROE explained his disability as PTSD with PTSD-associated agoraphobia, a condition that prevents ROE from being around too many people.  ROE asked Abby if CVS policy would allow CVS/pharmacy locations in South Carolina to provide him the reasonable accommodation of allowing him to shop for ten minutes or so after the store closes and after the front doors are locked, thus barring other customers from entering. Abby stated that ROE needed to contact each store manager. ROE informed Abby that he had contacted a few store managers who had denied him reasonable accommodation. Abby reiterated that she believed each store manager has that authority to give ROE permission to shop after hours and, therefore, ROE would need to talk with the store manager. ROE thanked Abby for her time and information.

69.    On or around September 4, 2013, ROE contacted CVS/pharmacy #563 and spoke to Defendant GINNY McCLURE, who identified herself as the store manager. ROE explained his disability and made a request for accommodation but McCLURE refused, initially citing "safety reasons." Although ROE explained his disability, McCLURE rudely stated that "CVS is open from 8 in the morning until 10 at night and that gives people plenty of time to shop." ROE further

Verified Complaint for Damages and Injunctive Relief for Violations of the Americans With Disabilities Act of 1990 [42 U.S.C. § 12101, et seq.]; Violations of the Civil Rights Act of 1964 [42 U.S.C. §§ 1981, 1985, 1986 and 2000d, et seq.]; Violations of the Affordable Care Act [42 U.S.C. § 18116]; Assault; Battery; False Imprisonment; Intentional Infliction of Emotional Distress; Negligence; Civil Conspiracy; Negligent Supervision &/or Retention; Unfair Trade Practices; and Interference with Contract
Page 29 of 101

explained that unless McCLURE can assure ROE that a crowd of people would not surround or be near ROE during open hours, ROE's disability would cause him to become panicky and dizzy due to the mere feeling of vulnerability that a crowd of people may surround ROE at any given moment. ROE explained that if the doors were at least locked there would be little to no chance of that occurring. McCLURE stated that neither she nor CVS would provide ROE with assurance of anything and refused ROE any form of reasonable accommodation.

70.    On or around September 4, 2013, ROE contacted CVS/pharmacy #7305 and spoke to ASHLEY GATES, who identified herself as the store manager. ROE explained his disability and requested reasonable accommodation to allow ROE to shop in Store # 7305, to include allowing ROE to obtain prescriptions ROE needed CVS to start filling for ROE. GATES stated that, citing "safety reasons," GATES would not be able to accommodate ROE. ROE attempted to show GATES proof of ROE's disability via medical documents and reiterated that ROE did not and would not do anything to put the safety of CVS personnel or customers in jeopardy. GATES stated that GATES "doesn't know that because (ROE) could tell (her) anything." ROE asked whether there was anything GATES or CVS/pharmacy could do to help him, to which GATES replied that GATES was "sorry, but I can't help."

71.    On or around September 4, 2013, ROE again contacted CVS/pharmacy #563 and this time spoke with Defendant XIO SOSA, who identified herself as the manager. ROE explained his disability and again requested reasonable accommodation. SOSA stated that she cannot and will not help ROE, and added "plus they are not going to pay me to stay here after 10 o'clock". SOSA then questioned ROE, asking "are you the same black guy that contacted us before?" ROE responded affirmatively, but stated that he had not ever spoken to SOSA before. SOSA replied that she will not accommodate ROE because "I don't trust you and your request seems suspicious." ROE asked "why would you say that's suspicious right after asking if I was black?"

Verified Complaint for Damages and Injunctive Relief for Violations of the Americans With Disabilities Act of 1990 [42 U.S.C. § 12101, *et seq.*]; Violations of the Civil Rights Act of 1964 [42 U.S.C. §§ 1981, 1985, 1986 and 2000d, *et seq.*]; Violations of the Affordable Care Act [42 U.S.C. § 18116]; Assault; Battery; False Imprisonment; Intentional Infliction of Emotional Distress; Negligence; Civil Conspiracy; Negligent Supervision &/or Retention; Unfair Trade Practices; and Interference with Contract
Page 30 of 101

SOSA failed to respond. ROE then stated, "after all I have been through, serving this country for you and developing my disability because I served for you, you treat me this way, as though I'm a threat?" SOSA stated that she was sorry but that no one with CVS will help ROE achieve reasonable accommodation.

72.     On or around September 5, 2013, ROE, accompanied by an acquaintance, went to CVS/pharmacy #7697. The acquaintance and ROE met with JANE DOE # 1, a woman who identified herself as Tonia (or Tonya), stating that she is a shift supervisor.  ROE's acquaintance explained to JANE DOE # 1 (Tonia or Tonya) that ROE had a disability recognized under the ADA and asked that CVS and/or JANE DOE # 1 (Tonia or Tonya) accommodate ROE as required under the ADA by modifying policy to allow him to shop and pick up prescriptions that ROE needed to have filled.  JANE DOE # 1 (Tonia or Tonya) stated that she cannot accommodate ROE because of CVS policies.  ROE and his acquaintance later spoke with the store manager Defendant SUSAN WEBB, who stated no CVS will accommodate ROE's request. When asked why, WEBB had no reply.

73.     On or around September 5, 2013, ROE contacted CVS/pharmacy # 8492 and spoke with Defendant JOE CESSNA, who identified himself as the manager.  ROE explained his disability and made a reasonable accommodation request, to which CESSNA stated that when the door closes and locks, the alarm goes on and CESSNA is not to allow ROE to shop after hours. ROE informed CESSNA that CESSNA is allowed to accommodate ROE because CESSNA is the manager and that other, non-CVS stores have provided ROE the accommodation ROE requests. CESSNA retorted, "Why do so many blacks think they are entitled to special treatment so often?" ROE responded that CESSNA should not make this an issue about ROE's African-American heritage. ROE continued, "Yeah, I'm black, but I'm also a disabled veteran and I was just trying to

Verified Complaint for Damages and Injunctive Relief for Violations of the Americans With Disabilities Act of 1990 [42 U.S.C. § 12101, *et seq.*]; Violations of the Civil Rights Act of 1964 [42 U.S.C. §§ 1981, 1985, 1986 and 2000d, *et seq.*]; Violations of the Affordable Care Act [42 U.S.C. § 18116]; Assault; Battery; False Imprisonment; Intentional Infliction of Emotional Distress; Negligence; Civil Conspiracy; Negligent Supervision &/or Retention; Unfair Trade Practices; and Interference with Contract
Page 31 of 101

find a CVS store to show some compassion towards me by helping me out a little and working with me because of my disability." CESSNA then stated that CESSNA cannot help ROE.

74.    On or around September 5, 2013, ROE contacted CVS/pharmacy #7386 and spoke with Defendant JIM KEELER, who identified himself as the manager. ROE explained his disability and made a request for reasonable accommodation. While laughing, KEELER stated, "I am not allowed to break CVS policies because of your PTSD, regardless if you're a Marine or not, and our whole district and other districts know some black guy wearing a towel was trying to get a special accommodation but none of them are going to help you" and "you should choose a different chain store." ROE informed KEELER that it was very hurtful and humiliating that the whole district was talking about ROE and that ROE was seeking reasonable accommodation only to "try to feel normal like other customers." ROE informed KEELER that CVS allows managers such as KEELER to grant ROE's accommodation request because it's the law, ROE is disabled and CVS store personnel are supposed to comply with the law and help people like ROE. ROE further informed KEELER that ROE had witnessed or otherwise has evidence of other customers shopping for up to 20 minutes after hours. KEELER then became agitated and started talking loud and in an aggressive manner, saying KEELER will not grant ROE's accommodation request because it against all CVS policies. ROE countered by informing KEELER that in his position as manager KEELER has authority to grant ROE's reasonable accommodation request. KEELER then admitted the existence of a conspiracy to discriminate against ROE, stating that "our whole district and other districts know about (ROE's) accommodation request" and went on to state: "listen here, nigger, you don't know what authorities I have. You should focus on overcoming your condition and come in the store during business hours once your condition gets better and allows you to do that." Despite feeling offended and intimidated, ROE informed KEELER that ROE's doctors prescribed exposure therapy as a way for ROE to get better and that, hopefully,

Verified Complaint for Damages and Injunctive Relief for Violations of the Americans With Disabilities Act of 1990 [42 U.S.C. § 12101, *et seq.*]; Violations of the Civil Rights Act of 1964 [42 U.S.C. §§ 1981, 1985, 1986 and 2000d, *et seq.*]; Violations of the Affordable Care Act [42 U.S.C. § 18116]; Assault; Battery; False Imprisonment; Intentional Infliction of Emotional Distress; Negligence; Civil Conspiracy; Negligent Supervision &/or Retention; Unfair Trade Practices; and Interference with Contract
Page 32 of 101

stores that provide him reasonable accommodation will eventually lead to ROE's being able to come during regular business hours around many other customers. KEELER then yelled, "I'd advice you to take your black ass on your way because I'm about to call the police and the police are going to make you be around a lot of people."

75.     On or around September 12, 2013, ROE contacted CVS/pharmacy #4399 and spoke to JANE DOE # 2, a woman who called herself Allison and who stated she is the store manager.  ROE explained his disability and requested reasonable accommodation under and according to the ADA.  JANE DOE # 2 (Allison) said, "because of the area the store is in, I won't accommodate you." JANE DOE # 2 (Allison) went on to state that it is not a safe area and they lock the doors at 9 pm.  ROE told JANE DOE # 2 (Allison) that he could be at the door just before she locks it, but JANE DOE # 2 (Allison) cited CVS policies as prohibiting any customer from remaining in the store past this store's 9 pm closing time.

76.     On or around September 12, 2013, ROE contacted CVS/pharmacy #4114 and spoke with Defendant HARRIS CHISHOLM, who identified himself as the store manager. ROE explained his disability and made a request for reasonable accommodation. CHISHOLM stated that because of safety reasons, CVS will not allow ROE to shop after closing time.

77.     On or around September 30, 2013, ROE contacted CVS/pharmacy #3199, located at 1013 Broad River Road, Columbia, South Carolina (a location that has since closed).  ROE first asked a pedestrian/customer walking towards CVS if that person would ask the manager in that CVS/pharmacy to come outside, citing ROE's disability and need for a manager's assistance. ROE then spoke directly with Defendant NATASHA PENDERGRASS, who identified herself as the store manager when she came out of the store and met ROE at ROE's vehicle.

78.     ROE explained his disability and offered PENDERGRASS medical documents as proof of ROE's disability. ROE requested an accommodation to shop after hours for about 10

Verified Complaint for Damages and Injunctive Relief for Violations of the Americans With Disabilities Act of 1990 [42 U.S.C. § 12101, et seq.]; Violations of the Civil Rights Act of 1964 [42 U.S.C. §§ 1981, 1985, 1986 and 2000d, et seq.]; Violations of the Affordable Care Act [42 U.S.C. § 18116]; Assault; Battery; False Imprisonment; Intentional Infliction of Emotional Distress; Negligence; Civil Conspiracy; Negligent Supervision &/or Retention; Unfair Trade Practices; and Interference with Contract
Page 33 of 101

minutes or so while there are only a few last minute shoppers in the store. ROE explained his

accommodation request in detail, explaining certain logistical aspects that would be most suitable

for his disability. PENDERGRASS asked what ROE would do when there might have been too

many last minute shoppers for ROE's comfort level.  ROE explained that either he would not

enter the store or, if he had entered, would have to leave and reschedule the accommodation for

another time. PENDERGRASS stated that neither she nor anyone with CVS could help ROE with

his request, citing "CVS policy."  When informed by ROE that CVS Corporate informed ROE

that store managers have the authority to let ROE shop after hours, PENDERGRASS stated that

while she may have the authority, she does not feel comfortable or safe allowing Roe to shop with

a sports towel on Roe's head, but especially not after hours with the doors locked.  ROE told

PENDERGRASS that he would never do anything to make PENDERGRASS or any CVS

employee or customer feel unsafe.  ROE went on to explain the difficulties he has encountered in

his life since the diagnosis of PTSD and PTSD-associated agoraphobia.  ROE offered examples,

such as watching classmates get married, raise families and participate in numerous fun activities

while ROE feels left behind.  ROE further explained to PENDERGRASS how hard living in

confinement has been, but that now he and his doctors hope emersion therapy offers ROE a

chance to at least attempt to get out in a more public way, which may help him to feel more

normal. ROE then expressed his frustration with the fact that it appeared nobody with CVS was

willing to help him, and that he felt as though anyone affiliated with CVS just simply did not care

whether they complied with the law or not.

79.    PENDERGRASS then began questioning ROE's disability. PENDERGRASS

stated that she never saw or knew of "anybody who couldn't go in a store because they are scared

to be around people."  PENDERGRASS asked, "Why does that scare you? People won't attack

you."  ROE stated that while it may be difficult for PENDERGRASS to understand, PTSD is a

Verified Complaint for Damages and Injunctive Relief for Violations of the Americans With Disabilities Act of 1990 [42 U.S.C. § 12101, et seq.]; Violations of the Civil Rights Act of 1964 [42 U.S.C. §§ 1981, 1985, 1986 and 2000d, et seq.]; Violations of the Affordable Care Act [42 U.S.C. § 18116]; Assault; Battery; False Imprisonment; Intentional Infliction of Emotional Distress; Negligence; Civil Conspiracy; Negligent Supervision &/or Retention; Unfair Trade Practices; and Interference with Contract
Page 34 of 101

recognized disability under the ADA and went on cite an example, where if a group of people surround ROE, ROE would become panicky and dizzy. PENDERGRASS then referenced and reached for the sports towel ROE always wears, and asked, "What's up with the towel? It's kinda scaring me." ROE jumped back, but then apologized though mentioned he thought PENDERGRASS' comment was hurtful to him, and then proceeded to explain why and how he wears the sports towel with full knowledge and consent of his doctors. PENDERGRASS expressed skepticism and stated that she did not believe ROE, asking "How can that help with PTSD?" PENDERGRASS again reached for the sports towel, as if to remove it from ROE's head, and stated, "You expect me to let some muscled black guy with a hand towel on his head to shop here after hours?"

80.    PENDERGRASS then stated "toughen up, boy, you have all those big muscles" and grabbed ROE by the shoulder and shook him. Then PENDERGRASS challenged ROE by saying, "Let's see how you handle this." PENDERGRASS called over to a group of at least four, though possibly more, persons as those persons approached the CVS/pharmacy. PENDERGRASS asked those persons to come to PENDERGRASS outside ROE's vehicle. ROE begged PENDERGRASS not to engage those persons, informing PENDERGRASS that it was very likely ROE will suffer an anxiety attack, or worse, due to PTSD, and that he is embarrassed by his reactions to crowds. PENDERGRASS said, "Listen here, boy, you need to toughen up. Why are you so nervous?" In an attempt to stop PENDERGRASS engaging the other persons to congregate around ROE, ROE said "I don't think your boss would like what you're doing." PENDERGRASS replied, "Well, our district manager already knows about your contact with other stores and we already discussed what I was going to do if you came to my store." ROE again pleaded with PENDERGRASS to not engage the group of people in congregating around ROE. PENDERGRASS ignored ROE's pleas and again requested the group of people meet her at

Verified Complaint for Damages and Injunctive Relief for Violations of the Americans With Disabilities Act of 1990 [42 U.S.C. § 12101, *et seq.*]; Violations of the Civil Rights Act of 1964 [42 U.S.C. §§ 1981, 1985, 1986 and 2000d, *et seq.*]; Violations of the Affordable Care Act [42 U.S.C. § 18116]; Assault; Battery; False Imprisonment; Intentional Infliction of Emotional Distress; Negligence; Civil Conspiracy; Negligent Supervision &/or Retention; Unfair Trade Practices; and Interference with Contract
Page 35 of 101

ROE's vehicle. ROE and PENDERGRASS were both standing outside ROE's vehicle at the time. As the group of people responded to PENDERGRASS' request to approach ROE, ROE quickly tried to get inside his vehicle and leave. PENDERGRASS, however, stood on the inside of the driver's side door, thereby preventing ROE from closing it and leaving. ROE began to suffer a severe panic attack, but also felt extremely humiliated. PENDERGRASS disclosed ROE's medical condition to the group and explained why she called them over. ROE recalls PENDERGRASS stating "nigga wants to shop . . ." but is unable to recall the complete statements PENDERGRASS told the group of people. ROE does recall that everyone in the group appeared to be smiling and laughing, though one stated "I won't hurt you," to ROE in a manner which ROE believed to be snide and devoid of sincerity. After some time, another of the persons appeared to realize the gravity of the situation, expressed what ROE hoped was empathy, and stated that the group of persons should leave ROE alone because "he appears to be pretty shaken up." It was only then when PENDERGRASS retreated from her position inside ROE's car door, thereby allowing ROE to close the door and drive off.

81.    For some time after that incident, ROE felt a multitude of feelings, ranging from humility to anger, and increased traumatic stress manifesting in or as flashbacks of these experiences that have since contributed to anger outbursts. The experiences ROE suffered at the hands of the CVS Defendants, their agents, employees, or others affiliated or associated with the aforementioned CVS-based incidents are directly responsible for major setbacks to ROE's progress with managing PTSD and PTSD-associated agoraphobia. The traumatic stress, flashbacks and depression ROE has suffered since these incidents cause ROE to experience tension headaches, insomnia, panic attacks, and nervousness, nausea and dizziness, as well as anger outbursts that resulted in physical injury to ROE's back and shoulder. Since the aforementioned incidents, ROE has been prescribed strong opioids, prazosin, sertraline and other

Verified Complaint for Damages and Injunctive Relief for Violations of the Americans With Disabilities Act of 1990 [42 U.S.C. § 12101, et seq.]; Violations of the Civil Rights Act of 1964 [42 U.S.C. §§ 1981, 1985, 1986 and 2000d, et seq.]; Violations of the Affordable Care Act [42 U.S.C. § 18116]; Assault; Battery; False Imprisonment; Intentional Infliction of Emotional Distress; Negligence; Civil Conspiracy; Negligent Supervision &/or Retention; Unfair Trade Practices; and Interference with Contract
Page 36 of 101

pharmaceuticals. ROE is prevented, however, from obtaining those pharmaceuticals from any South Carolina-based CVS due to its refusal to reasonably accommodate ROE.

82.    A white female friend of ROE's, outraged by the treatment ROE suffered at the hands of the Defendants, decided to help ROE by testing the veracity of the CVS claims -- and those its agents, employees, personnel, or others affiliated or associated with CVS – regarding inability to make reasonable accommodation.

83.    On or around October 2, 2013, ROE's white female friend contacted CVS/pharmacy #7305 and spoke to the store manager ASHLEY GATES. ROE's white female friend did not mention she was a Marine Veteran or had PTSD, but instead informed GATES that she (ROE's friend) had been diagnosed with agoraphobia, has anxiety issues, and that her boyfriend usually does her shopping, but that the boyfriend was out of town. ROE's white female friend further informed GATES that she (ROE's friend) finds it difficult to shop in stores because of her anxiety. ROE's white female friend requested accommodation, specifically asking if she would be allowed to shop for about 15 minutes after hours so she could do some shopping until her boyfriend got back. GATES allowed ROE's white female friend to enter the store after it was closed and locked.

84.    On or around October 10, 2013, ROE's white female friend called the CVS/pharmacy located at 1013 Broad River Road, Columbia, South Carolina and spoke with NATASHA PENDERGRASS, who again identified herself as the store manager. Before ROE's friend made an accommodation request, she asked PENDERGRASS whether the store ever allowed customers inside as the store closed and to continue with their shopping even though the doors were locked. PENDERGRASS answered in the affirmative. ROE's white female friend then informed PENDERGRASS that she (ROE's friend) had a severe case of anxiety and agoraphobia and that if there are only a few customers in the store she would be able to shop but with the store

Verified Complaint for Damages and Injunctive Relief for Violations of the Americans With Disabilities Act of 1990 [42 U.S.C. § 12101, et seq.]; Violations of the Civil Rights Act of 1964 [42 U.S.C. §§ 1981, 1985, 1986 and 2000d, et seq.]; Violations of the Affordable Care Act [42 U.S.C. § 18116]; Assault; Battery; False Imprisonment; Intentional Infliction of Emotional Distress; Negligence; Civil Conspiracy; Negligent Supervision &/or Retention; Unfair Trade Practices; and Interference with Contract
Page 37 of 101

being unlocked she would have too much anxiety because of the mental condition she's being treated for. ROE's friend then asked PENDERGRASS whether PENDERGRASS would consider it reasonable for ROE's white female friend to shop for ten to thirty minutes after hours, stating that she (ROE's friend) would come to the door just as a manager was about to lock the door. ROE's friend went on to explain that the person who does her shopping for her was out of town. PENDERGRASS stated, "Yes, you sound like a sweet girl so, yes, that's not a problem; we will gladly accommodate you. Just call before you come so that I could inform other staff members, and be here right at closing time."

85.     On or around October 10, 2013, ROE's white female friend called CVS/pharmacy #563, and spoke to XIO SOSA, who identified herself as the store manager. ROE's friend stated, "I may have spoken to another employee but I'm the white girl that called earlier to ask what time you all closed. I wanted to ask though, when your store closes, a lot of times there are last minute shoppers that are allowed to stay inside with the doors locked once the store is closed to do last minute shopping, right?" SOSA replied in the affirmative. ROE's white female friend then informed SOSA that she (ROE's friend) suffered from the same or similar condition as explained to SOSA by ROE. ROE's white female friend asked SOSA if she and/or CVS would be willing to accommodate her by allowing her (ROE's friend) to arrive at the store at closing time to allow her to shop with few to no other customers once the store was closed and the doors locked. ROE's friend stated that she had seen some customers shopping for at least fifteen minutes after store hours, and that therefore ROE's friend felt the accommodation request was reasonable because it would cause no additional burden. SOSA told ROE's friend that the accommodation request "was fine" and asked ROE's friend to call the store at which she intended to shop earlier in the day to let the manager on duty know. SOSA further stated that if SOSA was not working on the day

Verified Complaint for Damages and Injunctive Relief for Violations of the Americans With Disabilities Act of 1990 [42 U.S.C. § 12101, *et seq.*]; Violations of the Civil Rights Act of 1964 [42 U.S.C. §§ 1981, 1985, 1986 and 2000d, *et seq.*]; Violations of the Affordable Care Act [42 U.S.C. § 18116]; Assault; Battery; False Imprisonment; Intentional Infliction of Emotional Distress; Negligence; Civil Conspiracy; Negligent Supervision &/or Retention; Unfair Trade Practices; and Interference with Contract
Page 38 of 101

ROE's friend decided to shop, any other manager who was closing that night would also not have a problem assisting ROE's friend with that accommodation.

86.    On or around October 10, 2013, ROE's white female friend called CVS/pharmacy #7386 and spoke to JIM KEELER, who again identified himself as the store manager. ROE's friend began the call by saying, "I may have spoken to another employee but I'm the white girl that called earlier to ask what time you closed." ROE's friend had not called earlier but wanted to make certain that KEELER knew he was speaking with a white female. ROE's friend stated that she was diagnosed with agoraphobia, that she needed special accommodation arranged because of her condition, that she needed some help from a few stores in the area because of her medical condition, and wondered whether CVS would be able to accommodate her. KEELER asked ROE's friend about the type of accommodation she needed. ROE's friend stated that she was open to suggestions but with the severity of her anxiety and panic attacks, there probably were not many suggestions that would be helpful to her.  KEELER then said, "Well what do you believe is something we could do for you to help you shop that would cause the least amount of anxiety for you?" ROE's friend replied, "If there's a way for me to shop with only a few customers inside while you prevented lots of others customers from coming in, I could manage to shop."  KEELER then replied, "We do have slow times with only a few customers inside but we can't stop other customers from coming in during open hours if they wanted to come in." KEELER then proposed an alternative, stating that "the only option I can think of is for you to come in right before the store is closed and I'll allow you to shop after the store is closed and locked, because the majority of the time there are no more than a few shoppers doing last minute shopping after hours."  ROE's friend then asked if there was any way KEELER could allow her to enter the store after it was closed. KEELER stated that as long as ROE's friend arrived no more than a minute or two after they closed, KEELER would let her in to shop for up to fifteen minutes. ROE's friend thanked

Verified Complaint for Damages and Injunctive Relief for Violations of the Americans With Disabilities Act of 1990 [42 U.S.C. § 12101, *et seq.*]; Violations of the Civil Rights Act of 1964 [42 U.S.C. §§ 1981, 1985, 1986 and 2000d, *et seq.*]; Violations of the Affordable Care Act [42 U.S.C. § 18116]; Assault; Battery; False Imprisonment; Intentional Infliction of Emotional Distress; Negligence; Civil Conspiracy; Negligent Supervision &/or Retention; Unfair Trade Practices; and Interference with Contract
Page 39 of 101

KEELER for his willingness to accommodate her and stated that she would call before she came to the store.

87.    On or around April 9, 2014, ROE sent a letter to Thomas M. Moriarty, General Counsel, CVS CAREMARK CORPORATION and BILL POLAND, Manager of CVS/PHARMACY # 7159, in which he discussed his request for accommodation, the repeat denials of accommodation by CVS personnel and/or agents, the actions of some of the named Defendants, an interest in reaching mutual settlement, and a reminder of the adverse publicity ROE's filing this case may cause to or for CVS.

88.    On or around April 30, 2014, ROE received a response from CVS in the form of a letter presumably written and signed by Defendant JOHN ROBINSON, who therein identifies himself as a District Manager.  In that letter, ROBINSON states, *inter alia*, that CVS "managers and staff receive regularly mandatory training on ADA and accessibility issues," and that ROE's request that the store remain open so that ROE can shop without other customers present "is not a necessary or reasonable accommodation, would impose an undue hardship on employees, and is a fundamental alteration of the goods and services CVS provides."

89.    ROBINSON's letter was <u>sent approximately six (6) months</u> **after four (4) CVS stores**, with no hesitation or concerns that the accommodation request was unreasonable or an undue burden or as a fundamental alteration of CVS' goods and services, **willingly accommodated a white woman who offered no medical proof of disability** and who had not served in any branch of the United States Military.

90.    ROE avers ROBINSON's statements are insincere and without merit, and the only reason CVS denied ROE's accommodation requests were due to disability, race and gender discrimination.

Verified Complaint for Damages and Injunctive Relief for Violations of the Americans With Disabilities Act of 1990 [42 U.S.C. § 12101, *et seq.*]; Violations of the Civil Rights Act of 1964 [42 U.S.C. §§ 1981, 1985, 1986 and 2000d, *et seq.*]; Violations of the Affordable Care Act [42 U.S.C. § 18116]; Assault; Battery; False Imprisonment; Intentional Infliction of Emotional Distress; Negligence; Civil Conspiracy; Negligent Supervision &/or Retention; Unfair Trade Practices; and Interference with Contract
Page 40 of 101

91.    Within approximately two weeks of having received ROBINSON's letter, on or around May 19, 2014, in a scene reminiscent of the film "Mississippi Burning," while ROE was driving not far from his home a gray truck with flashing headlights pulled up behind ROE's vehicle, then passed ROE's vehicle as the driver, a white male who ROE believes to be approximately 40 years of age, frantically pointed to the rear of ROE's vehicle. ROE thought something may have been wrong with the vehicle, so ROE moved his vehicle off the roadway. The gray truck in pursuit of ROE maneuvered into a position behind ROE's vehicle. The driver of the gray truck got out of the gray truck and approached the driver's side of ROE's vehicle and, once at the driver's side door, asked ROE if he was "Jimmie." ROE replied affirmatively, to which the white male driver of the gray truck stated, "Let me tell you something. I will hurt you so bad if you file a lawsuit against my friend. You wanna act like a pussy, I'll treat you like a pussy." ROE was dumbfounded, but asked, "What are you talking about?" The white male driver of the gray truck stated, "You know what the fuck I'm talking about. The manager you made a complaint about last month." ROE was scared, but stated that the white male must be talking about a "different Jimmie." The white male driver of the gray truck then yelled, "Don't play dumb!" and reached out and with his one hand stroked ROE's face, then followed with, "what kind of pussy Marine are you?" ROE naturally felt threatened and intimidated, so ROE put his vehicle in gear and sped away. As ROE was leaving, the white male driver of the gray truck repeatedly yelled, stating that "I promise you **will** get hurt if you file a lawsuit," among other statements for which ROE was unable to determine the actual wording (emphasis added in indicate volume).

92.    On or around May 19, 2014, ROE filed a police report in which he described the events mentioned in paragraph 91, above. In the police report, ROE described the truck as either a

Verified Complaint for Damages and Injunctive Relief for Violations of the Americans With Disabilities Act of 1990 [42 U.S.C. § 12101, *et seq.*]; Violations of the Civil Rights Act of 1964 [42 U.S.C. §§ 1981, 1985, 1986 and 2000d, *et seq.*]; Violations of the Affordable Care Act [42 U.S.C. § 18116]; Assault; Battery; False Imprisonment; Intentional Infliction of Emotional Distress; Negligence; Civil Conspiracy; Negligent Supervision &/or Retention; Unfair Trade Practices; and Interference with Contract Page 41 of 101

Ford F-150 or a Chevrolet Silverado. ROE also described the white male as approximately 6 feet in height, weighing perhaps 230 pounds.

93. ROE names the male who accosted and intimidated him, with the intention of preventing him from filing this lawsuit and vindicating ROE's civil rights, as one of the JOHN DOE defendants.

94. On information and belief and upon thereon ROE avers that, whether by intention or neglect, each of the higher-level managerial Defendants (President COSBY, Vice President PURDY, Regional Managers TWEDELL and EDGE, and District Managers ANDERSON, ELLIOTT, ROBINSON, and LESNIAK) were and are each responsible for cultivating a climate of hostility towards and discrimination directed against a disabled African-American male seeking reasonable accommodation.

95. On information and belief and upon thereon ROE avers that Defendants' discriminatory conduct and practices described above were carried out (a) at the direction of and with the consent, encouragement, knowledge, and ratification of Defendants; (b) under Defendants' authority, control, and supervision; and/or (c) within the scope of Defendants' and their employees' employment.

96. ROE avers that the actions of Defendants, whether undertaken personally or through their employees, agents and/or representatives, were undertaken with racially discriminatory animus for the purpose of denying ROE access to a place of public accommodation and/or that Defendants' actions, whether undertaken personally or through their employees, agents, and/or representatives, had the effect of denying a male African-American disabled Marine veteran access to a public accommodation on the basis of disability and race.

97. On information and belief and upon thereon ROE avers that Defendants' actions, whether undertaken personally or through their employees, agents, and/or representatives,

Verified Complaint for Damages and Injunctive Relief for Violations of the Americans With Disabilities Act of 1990 [42 U.S.C. § 12101, et seq.]; Violations of the Civil Rights Act of 1964 [42 U.S.C. §§ 1981, 1985, 1986 and 2000d, et seq.]; Violations of the Affordable Care Act [42 U.S.C. § 18116]; Assault; Battery; False Imprisonment; Intentional Infliction of Emotional Distress; Negligence; Civil Conspiracy; Negligent Supervision &/or Retention; Unfair Trade Practices; and Interference with Contract
Page 42 of 101

constitute a pattern and practice of discrimination against a male African-American disabled Marine veteran.

98.     On information and belief and upon thereon ROE avers that Defendants personally and through the actions of their employees, agents, and/or representatives, acted intentionally, maliciously, and with willful, callous, wanton and in reckless disregard for Plaintiff's protected rights.

99.     ROE avers that as a proximate result of unlawful conduct by Defendants and their agents, employees, and/or representatives, Plaintiff ROE has suffered and is now suffering irreparable loss, injury, emotional harm, mental anguish, embarrassment, humiliation, and degradation, including, though not limited to, outpatient, residential and in-patient psychiatric and psychotherapeutic treatment for suicidal thoughts.

100.     While ROE intends to patronize the establishments and the properties that are the subject of this Complaint in the immediate future, provided the discriminatory action as alleged against the Defendants ceases, ROE avers that he is likely to suffer irreparable loss and injury in the future, as ROE is likely to need prescription pharmaceuticals and other health and/or medical care and may attempt to shop at Defendants' CVS/pharmacy retail community pharmacies, at which time he may again face the discriminatory conduct of the Defendants and their agents, employees, and/or representatives.

101.     On information and belief and upon thereon ROE avers that Defendants CVS CAREMARK CORPORATION, SOUTH CAROLINA CVS PHARMACY, LLC, and CVS PHARMACY, INC., as well as Defendants COSBY, PURDY, TWEDELL, EDGE ANDERSON, ELLIOTT, ROBINSON, and LESNIAK had and/or have the authority to create and implement a policy to prevent and stop such racial and other discrimination by their employees, and implement a zero tolerance policy.

Verified Complaint for Damages and Injunctive Relief for Violations of the Americans With Disabilities Act of 1990 [42 U.S.C. § 12101, *et seq.*]; Violations of the Civil Rights Act of 1964 [42 U.S.C. §§ 1981, 1985, 1986 and 2000d, *et seq.*]; Violations of the Affordable Care Act [42 U.S.C. § 18116]; Assault; Battery; False Imprisonment; Intentional Infliction of Emotional Distress; Negligence; Civil Conspiracy; Negligent Supervision &/or Retention; Unfair Trade Practices; and Interference with Contract
Page 43 of 101

102.    On information and belief, ROE avers that the discriminatory experiences the Defendants' inflicted upon ROE are a nationwide pattern of discriminatory behavior, policies and practices pervasive throughout CVS/pharmacy locations nationwide, as evidenced by other lawsuits for discriminatory action taken by CVS personnel against members of various racial minorities including, though not limited to, the cases of *Hyun Jin Lee v. CVS CAREMARK CORP*, Case Number 13-cv-02432-RBK-AMD (D. NJ 2013) and *Early v. CVS Caremark Corp*, Case Number RIC1308906 (CA Superior Ct., Riverside County, CA 2013).

103.    As a matter of law, an officer, employee, or agent of a corporation maybe held liable in his or her individual capacity for commission of a tort, even if that tort was committed in furtherance of the corporation's business.

104.    ROE avers that the actions by CVS and it's agents and/or partners and/or joint venturers and/or employees, acting under the authority and direction of the CVS Defendants and/or their Vice President, Regional Directors, Regional Managers, District Managers and/or others in position of authority and with the right and duty to act on behalf of the CVS Defendants are contrary to the requirements of the Americans with Disabilities Act, the Civil Rights Act, and the Affordable Care Act when the Defendants denied ROE reasonable accommodation on basis of his race, disability, and gender.

105.    ROE avers this shocking discrimination aimed at ROE, as described herein, is unacceptable in any place of public accommodation, and a civilized society cannot tolerate such behavior. Rather than operate within the requirements of the law and within social boundaries of common decency, the CVS Defendants created and maintained an objectively abusive and hostile environment for ROE based solely on his race, disability, and gender, and continues to do so, which essentially ratifies forcibly removing ROE from the aforementioned CVS/pharmacy retail community pharmacies because of his race, disability, and/or gender.

Verified Complaint for Damages and Injunctive Relief for Violations of the Americans With Disabilities Act of 1990 [42 U.S.C. § 12101, *et seq.*]; Violations of the Civil Rights Act of 1964 [42 U.S.C. §§ 1981, 1985, 1986 and 2000d, *et seq.*]; Violations of the Affordable Care Act [42 U.S.C. § 18116]; Assault; Battery; False Imprisonment; Intentional Infliction of Emotional Distress; Negligence; Civil Conspiracy; Negligent Supervision &/or Retention; Unfair Trade Practices; and Interference with Contract
Page 44 of 101

106.    ROE avers that the acts of ratifying the bias were deliberately calculated to make ROE's experience so intolerable and unequal as to bar ROE and others similarly situated from the premises in the future in the same manner as if ROE had been forcibly removed.

107.    ROE avers that by failing to adequately intervene after receiving ROE's written notice of the unlawful conduct, Defendants ratified the conduct alleged herein, which constitutes evidence of a policy, practice, custom or procedure to deprive individuals of their constitutional rights.

108.    On information and belief, CVS is "the third largest provider of drug benefits to eligible beneficiaries under the Federal Government's Medicare Part D program."   H.R. Committee on Oversight and Government Reform, *Ahead of Postal Reform: Hearing from USPS Business Partners*, 113th Cong. 1, April 10, 2013 (Testimony of Mr. Carl Janssens, Vice President, Logistics and Facility Engineering, CVS Caremark Corporation).

109.    ROE requests this Court allow him to proceed in pseudonym, based in part upon the May 19, 2014, incident and in part on the fact that public disclosure of his mental illnesses would affect him in the future and because the stigma associated with mental illness will negatively influence continued emersion therapy and potential future employment. Additionally, PTSD is misunderstood by many in society, in part due to the media's insistence on associating PTSD as a root condition affecting several former military personnel who have since engaged in various forms of shooting incidents.  Further, public disclosure of ROE's identity and mental illness would cause additional anxiety and stress and would aggravate his illness, especially in light of threats made against him by others now that he chose to file this Complaint.

110.    ROE avers that his interest in proceeding anonymously outweighs the public's right to access judicial proceedings that require plaintiffs to identify themselves. Additionally, ROE has kept his history of disability confidential from all but his mother and father, two acquaintances,

Verified Complaint for Damages and Injunctive Relief for Violations of the Americans With Disabilities Act of 1990 [42 U.S.C. § 12101, *et seq.*]; Violations of the Civil Rights Act of 1964 [42 U.S.C. §§ 1981, 1985, 1986 and 2000d, *et seq.*]; Violations of the Affordable Care Act [42 U.S.C. § 18116]; Assault; Battery; False Imprisonment; Intentional Infliction of Emotional Distress; Negligence; Civil Conspiracy; Negligent Supervision &/or Retention; Unfair Trade Practices; and Interference with Contract
Page 45 of 101

the Veterans Administration, his medical and mental health treatment professionals, and his attorneys, with the latter three each having a duty to protect ROE's confidentiality.

111.    ROE avers that, in all probability, he would refuse to pursue this litigation if he is required to publicly identify himself and that he has advised his attorneys of this limitation. Forcing ROE to withdraw this lawsuit simply out of fear of public reprisal and/or reproach would unfortunately, allow the Defendants and their associates to continue to engage in the activity as alleged herein against other, potentially more vulnerable, persons similarly situated to ROE.

112.    ROE avers that the facts sufficiently demonstrate that his interests in privacy or security justify pseudonymity.

## FIRST CAUSE OF ACTION

### VIOLATIONS OF THE AMERICANS WITH DISABILITIES ACT of 1990

### [42 U.S.C. § 12101, *et seq.*]

113.    Plaintiff hereby incorporates by reference each of the allegations set forth in the preceding paragraphs as if realleged fully herein.

114.    The Americans with Disabilities Act of 1990 is a sweeping civil rights law designed to "provide a clear and comprehensive national mandate for the elimination of discrimination against persons with disabilities." 42 U.S.C. § 12101 (b)(1).  In passing the ADA, Congress expressly found:

> unlike individuals who have experienced discrimination on the basis of race, color, sex, national origin, religion, or age, individuals who have experienced discrimination on the basis of disability have often had no legal recourse to redress such discrimination.

42 U.S.C. § 12101 (a)(4).  Congress enacted the ADA in light of its findings that "individuals with disabilities continually encounter various forms of discrimination, including outright intentional exclusion, the discriminatory effects of architectural, transportation, and communication barriers, overprotective rules and policies, failure to make modifications to existing facilities and practices,

Verified Complaint for Damages and Injunctive Relief for Violations of the Americans With Disabilities Act of 1990 [42 U.S.C. § 12101, *et seq.*]; Violations of the Civil Rights Act of 1964 [42 U.S.C. §§ 1981, 1985, 1986 and 2000d, *et seq.*]; Violations of the Affordable Care Act [42 U.S.C. § 18116]; Assault; Battery; False Imprisonment; Intentional Infliction of Emotional Distress; Negligence; Civil Conspiracy; Negligent Supervision &/or Retention; Unfair Trade Practices; and Interference with Contract
Page 46 of 101

exclusionary qualification standards and criteria, segregation, and relegation to lesser services, programs, activities, benefits, jobs, or other opportunities." 42 U.S.C. § 12101(a)(5).  Further, Congress stated that a primary purpose of the ADA is "to provide clear, strong, consistent, enforceable standards addressing discrimination against individuals with disabilities." 42 U.S.C. § 12101 (b)(2).

115.    A key enforcement mechanism is the statute's private right of action allowing individuals to sue for injunctive and declaratory relief. For private suits, title III of the ADA adopts the "remedies and procedures" set forth in title II of the 1964 Civil Rights Act, 42 U.S.C. § 2000a-3(a). Title II provides: "[w]henever any person has engaged or there are reasonable grounds to believe that any person is about to engage in any act or practice prohibited by section 2000a-2 of this title, a civil action for preventive relief, including an application for a[n] . . injunction . . . may be instituted by the person aggrieved[.]" 42 U.S.C. § 2000a-3(a).

116.    To succeed as a matter of law under title III of the ADA, ROE must prove that:

        a.    Defendant owns or operates a place of public accommodation;

        b.    ROE, the aggrieved individual, is an individual with a disability; and

        c.    Defendants discriminated against ROE on the basis of his disability.

42 U.S.C. § 12182(a) & 42 U.S.C. § 12182(b).

117.    Each of the CVS/pharmacy retail community pharmacies at which ROE attempted to gain reasonable accommodation and which are the subject of this lawsuit are public accommodations as the operations of such entities affects commerce and because each of the CVS/pharmacy retail community pharmacies is a "pharmacy, professional office of a health care provider, hospital, or other service establishment." 42 U.S.C. § 12181(7)(F).

118.    To address this broad range of discrimination in the context of public accommodations, Congress enacted Title III, which provides in part:

Verified Complaint for Damages and Injunctive Relief for Violations of the Americans With Disabilities Act of 1990 [42 U.S.C. § 12101, *et seq.*]; Violations of the Civil Rights Act of 1964 [42 U.S.C. §§ 1981, 1985, 1986 and 2000d, *et seq.*]; Violations of the Affordable Care Act [42 U.S.C. § 18116]; Assault; Battery; False Imprisonment; Intentional Infliction of Emotional Distress; Negligence; Civil Conspiracy; Negligent Supervision &/or Retention; Unfair Trade Practices; and Interference with Contract
Page 47 of 101

> No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation.

42 U.S.C. § 12182. By its clear text, Title III requires a public accommodation to provide individuals with disabilities more than simple physical access to the accommodation's facilities. Congress recognized that "individuals with disabilities continually encounter various forms of discrimination" including not only barriers to physical access, but also other forms of exclusion and "relegation to lesser services, programs, activities, benefits, jobs, or other opportunities." 42 U.S.C. § 12101(a)(5) (emphasis added); *see also* H.R. Rep. No. 485, Pt. 2, 101st Cong., 2d Sess. 35-36 (1990) ("lack of physical access to facilities" was only one of several "major areas of discrimination that need to be addressed"); H.R. Rep. No. 485, Pt. 3, 101st Cong., 2d Sess. 54 (1990) ("It is not sufficient to only make facilities accessible and usable; this title prohibits, as well, discrimination in the provision of programs and activities conducted by the public accommodation.").

119.    For that reason, the Act applies not only to barriers to physical access to business locations, but also to any policy, practice, or procedure that operates to deprive or diminish disabled individuals' full and equal enjoyment of the privileges and services offered by the public accommodation to the public at large. 42 U.S.C. § 12182. Thus, a public accommodation may not have a policy that specifically excludes individuals with disabilities from services. 42 U.S.C. § 12182(b)(1)(A)(i). The statute also defines "discrimination" as including:

> the imposition or application of eligibility criteria that screen out or tend to screen out an individual with a disability . . . from fully and equally enjoying any goods, services, facilities, privileges, advantages, or accommodations, unless such criteria can be shown to be necessary for the provision of the goods, services, facilities, privileges, advantages, or accommodations being offered.

Verified Complaint for Damages and Injunctive Relief for Violations of the Americans With Disabilities Act of 1990 [42 U.S.C. § 12101, *et seq.*]; Violations of the Civil Rights Act of 1964 [42 U.S.C. §§ 1981, 1985, 1986 and 2000d, *et seq.*]; Violations of the Affordable Care Act [42 U.S.C. § 18116]; Assault; Battery; False Imprisonment; Intentional Infliction of Emotional Distress; Negligence; Civil Conspiracy; Negligent Supervision &/or Retention; Unfair Trade Practices; and Interference with Contract
Page 48 of 101

42 U.S.C. § 12182(b)(2)(A)(i). The commentary to the implementing regulations explains that this provision "makes it discriminatory to impose policies or criteria that, while not creating a direct bar to individuals with disabilities, indirectly prevent or limit their ability to participate." 28 C.F.R. Pt. 36, App. B, p. 641 (commentary to 28 C.F.R. 36.301).

120.    A public accommodation also may not refuse to make reasonable modifications to a policy or practice that has the consequence of denying such individuals access to its services unless making a reasonable modification to that policy would fundamentally alter the nature of the services. 42 U.S.C. § 12182(b)(2)(A)(ii).

121.    Because Defendants operate a place of public accommodation, they may not discriminate against individuals with disabilities "in the full and equal enjoyment" of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation as Defendants own, lease, lease to, or operate a place of public accommodation in violation of the ADA. This means, among other things, that Defendants generally may not impose or apply unnecessary "eligibility criteria that screen out or tend to screen out an individual with a disability" from shopping or filling prescriptions for pharmaceuticals. 42 U.S.C. § 12182(b)(2)(A)(i). Defendants must make "reasonable modification in policies, practices, or procedures, when such modifications are necessary to afford such services [or] privileges . . . to individuals with disabilities" unless doing so would fundamentally alter the nature of the goods, services, facilities, privileges, advantages, or accommodations, which ROE believes Defendants cannot do since they provided virtually identical accommodation to others who alleged similar disability as ROE. 42 U.S.C. §12182(b)(2)(A)(ii).

122.    For an aspect of a defendant's operation to be subject to Title III, there must be a connection between the service Plaintiff seeks and the place of public accommodation. In the

Verified Complaint for Damages and Injunctive Relief for Violations of the Americans With Disabilities Act of 1990 [42 U.S.C. § 12101, et seq.]; Violations of the Civil Rights Act of 1964 [42 U.S.C. §§ 1981, 1985, 1986 and 2000d, et seq.]; Violations of the Affordable Care Act [42 U.S.C. § 18116]; Assault; Battery; False Imprisonment; Intentional Infliction of Emotional Distress; Negligence; Civil Conspiracy; Negligent Supervision &/or Retention; Unfair Trade Practices; and Interference with Contract
Page 49 of 101

words of the statute, the Act covers discrimination "in the full and equal enjoyment of the . . .

services [or] privileges . . . of any place of public accommodation." 42 U.S.C. § 12182(a).

123.    To be protected by the ADA one must have a disability, defined by the ADA as "(a)

a physical or mental impairment that substantially limits one or more of the major life activities of

[an] individual; (b) a record of such an impairment; or (c) being  regarded as having such an

impairment." 42 U.S.C. § 12102(2) (1994); 29 C.F.R. § 1630.2(g) (1996).  The ADA rule defines

"mental impairment" to include "any mental or psychological disorder, such as . . . emotional or

mental illness." 29 C.F.R. § 1630.2(h)(2) (1996).

124.    Examples of "emotional or mental illnesses" include major depression, anxiety

disorders, including panic disorder, obsessive compulsive disorder, personality disorders, and

post-traumatic stress disorder.  The fourth edition of the American Psychiatric Association's

Diagnostic and Statistical Manual of Mental Disorders is relevant for identifying these disorders.

The DSM-IV has been recognized as an important reference by courts and is widely used by

American mental health professionals for diagnostic and insurance reimbursement purposes. *See,

e.g.*, *Boldini v. Postmaster Gen*., 928 F. Supp. 125, 130 (1995), where the court held, "in

circumstances of mental impairment, a court may give weight to a diagnosis of mental impairment

which is described in the Diagnostic and Statistical Manual of Mental Disorders of the American

Psychiatric Association."   Post Traumatic Stress Disorder, and accompanying anxiety disorders

like agoraphobia, is a bona fide medical and/or mental disorder as classified in the American

Psychiatric Association's Diagnostic and Statistics Manual (DSM-IV).  The Americans with

Disabilities Act also recognizes PTSD as a mental disability whose victims are protected.

Additionally, under several ADA-related holdings, an individual would be substantially limited if

his/her relations with others were characterized on a regular basis by "consistently high levels of

hostility (and/or) social withdrawal."

Verified Complaint for Damages and Injunctive Relief for Violations of the Americans With Disabilities Act of 1990 [42 U.S.C. §
12101, *et seq.*]; Violations of the Civil Rights Act of 1964 [42 U.S.C. §§ 1981, 1985, 1986 and 2000d, *et seq.*]; Violations of the
Affordable Care Act [42 U.S.C. § 18116]; Assault; Battery; False Imprisonment; Intentional Infliction of Emotional Distress;
Negligence; Civil Conspiracy; Negligent Supervision &/or Retention; Unfair Trade Practices; and Interference with Contract
Page 50 of 101

125.    ROE avers that he and/or his family shopped frequently at CVS retail community pharmacies before his diagnosis with PTSD, but has not shopped at any CVS/pharmacy location since the 2013 incidents as alleged herein out of fear that CVS and the defendants will discriminate against him. ROE avers that he has and will continue to shop at other pharmacies in locations served by CVS, but he avoids CVS out of fear of discrimination. ROE would shop at CVS again, provided he was assured that CVS had taken steps to stop its discriminatory treatment of disabled Marine veterans who request disability accommodation.

126.    No difference between agoraphobic men and women, as potential customers of the Defendants, has been offered as a rational basis for accommodating one and not the other. CVS/pharmacy's are places of public accommodation, not private clubs, and that its preferences to accommodate only certain of its patrons are no justification under the Equal Protection Clause. Such preferences, no matter how widely shared by Defendants' female employees and/or clientele, bear no rational relation to the suitability of male Marine veterans who suffer from service-connected PTSD and PTSD-related agoraphobia as customers worthy of accommodation of or by the CVS Defendants.

127.    Based on the facts stated within this Complaint, Defendants discriminated against ROE directly, or through contractual, licensing, or other arrangements, to a denial of the opportunity to ROE to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodations of an entity, in violation of the ADA.

128.    Based on the facts stated within this Complaint, Defendants discriminated against ROE as it is discriminatory to afford an individual, on the basis of a disability or disabilities of such individual, directly, or through contractual, licensing, or other arrangements with the opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or

Verified Complaint for Damages and Injunctive Relief for Violations of the Americans With Disabilities Act of 1990 [42 U.S.C. § 12101, et seq.]; Violations of the Civil Rights Act of 1964 [42 U.S.C. §§ 1981, 1985, 1986 and 2000d, et seq.]; Violations of the Affordable Care Act [42 U.S.C. § 18116]; Assault; Battery; False Imprisonment; Intentional Infliction of Emotional Distress; Negligence; Civil Conspiracy; Negligent Supervision &/or Retention; Unfair Trade Practices; and Interference with Contract
Page 51 of 101

accommodation that is not equal to that afforded to other individuals, in violation of 42 U.S.C. § 12182.

129.    Based on the facts stated within this Complaint, Defendants discriminated against ROE as it is discriminatory to provide an individual, on the basis of a disability or disabilities of such individual, directly, or through contractual, licensing, or other arrangements with a good, service, facility, privilege, advantage, or accommodation that is different or separate from that provided to other individuals.

130.    Based on the facts stated within this Complaint, Defendants discriminated against ROE as Defendants failed to afford to an individual with a disability accommodation in the most integrated setting appropriate to the needs of the individual, in violation of 42 U.S.C. § 12182.

131.    Based on the facts stated within this Complaint, Defendants discriminated against ROE as Defendants utilized standards or criteria or methods of administration that have the effect of discriminating on the basis of disability; or that perpetuate the discrimination of others who are subject to common administrative control, in violation of 42 U.S.C. § 12182.

132.    Based on the facts stated within this Complaint, Defendants discriminated against ROE as it is discriminatory to exclude or otherwise deny goods, services, facilities, privileges, advantages, accommodations, or other opportunities to an individual or entity because of the known disability of an individual with whom the individual is known to have a relationship or association, in violation of 42 U.S.C. 12182. *See Niece v. Fitzner*, 922 F. Supp 1208 (1996).

133.    Based on the facts stated within this Complaint, Defendants discriminated against ROE as Defendants engaged in the specific prohibitions as stated in 42 U.S.C. § 12182 and elsewhere in the ADA.

134.    Based on the facts stated within this Complaint, Defendants discriminated against ROE as Defendants failed to demonstrate that the removal of any barrier is not readily achievable,

Verified Complaint for Damages and Injunctive Relief for Violations of the Americans With Disabilities Act of 1990 [42 U.S.C. § 12101, *et seq.*]; Violations of the Civil Rights Act of 1964 [42 U.S.C. §§ 1981, 1985, 1986 and 2000d, *et seq.*]; Violations of the Affordable Care Act [42 U.S.C. § 18116]; Assault; Battery; False Imprisonment; Intentional Infliction of Emotional Distress; Negligence; Civil Conspiracy; Negligent Supervision &/or Retention; Unfair Trade Practices; and Interference with Contract
Page 52 of 101

and made such goods, services, facilities, privileges, advantages, or accommodations available through alternative methods in a segregated manner, in violation of 42 U.S.C. § 12182.

135.    ROE has good cause to believe and in fact believes that the Defendants will continue to operate an inaccessible facility and to enforce illegal policies and practices, which will result in future discrimination against ROE, in violation of the Americans with Disabilities Act.

136.    As part of a complete life, ROE wants to be able to travel and use public accommodations without restriction, which includes visiting Defendants' facilities in the future, but has been deterred from such use of the public accommodation because of Defendants' discriminatory policies, practices and procedures that prevent full and equal access to the public accommodation.  ROE believes that, and the evidence shows that, Defendants' illegal practices will continue and will result in future discrimination against ROE, until an injunction is issued under the Americans with Disabilities Act.

137.    The failure to permit a disabled person to participate in ordinary life activities, such as those afforded by Defendants' public accommodation, severely affects the quality of ROE's life and produces an irreparable and continuing injury that cannot be compensated or remedied solely by the award of money. Accordingly, among other remedies, ROE seeks an injunctive order requiring compliance with federal laws allowing access to Defendants' facilities by disabled Marine veterans who suffer from PTSD and other PTSD-related symptoms, including but not limited to, PTSD-associated agoraphobia, and to stop all violations of the civil rights laws which exist at the Defendants' properties, which will require modification of Defendants' policies, practices and procedures as alleged herein and as the Court may deem proper.

138.    ROE prays for judgment and relief as set forth herein.

Verified Complaint for Damages and Injunctive Relief for Violations of the Americans With Disabilities Act of 1990 [42 U.S.C. § 12101, et seq.]; Violations of the Civil Rights Act of 1964 [42 U.S.C. §§ 1981, 1985, 1986 and 2000d, et seq.]; Violations of the Affordable Care Act [42 U.S.C. § 18116]; Assault; Battery; False Imprisonment; Intentional Infliction of Emotional Distress; Negligence; Civil Conspiracy; Negligent Supervision &/or Retention; Unfair Trade Practices; and Interference with Contract
Page 53 of 101

## SECOND through FIFTH CAUSES OF ACTION

## DISCRIMINATION IN VIOLATION OF THE CIVIL RIGHTS ACT of 1964

## SECOND: 42 U.S.C. § 1981 (EQUAL RIGHTS)

139.    Plaintiff hereby incorporates by reference each of the allegations set forth in the preceding paragraphs as if realleged fully herein.

140.    Congress enacted the Civil Rights Act to ensure "that a dollar in the hands of a Negro will purchase the same thing as a dollar in the hands of a white . . . ." *Jones v. Alfred H. Mayer Co.*, 392 U.S. 409, 443 (1968). "The aim of [the Act] is to remove the impediment of discrimination from a minority citizen's ability to participate fully and equally in the marketplace." *Bobbitt by Bobbitt v. Rage, Inc.*, 19 F. Supp. 2d 512, 516 (W.D.N.C. 1998); *see Patterson v. McLean Credit Union*, 491 U.S. 164, 190 (1989).

141.    Through 42 U.S.C. § 1981, "Congress intended to prohibit 'all racial discrimination, private and public, in the sale of property'" and in the making and enforcement of contracts. *Runyon v. McCrary*, 427 U.S. 160, 170 (1976)(quoting *Jones v. Alfred H. Mayer Co.*, 392 U.S. 409, 437 (1968)). It is the aim of the statute "to remove the impediment of discrimination from a minority citizen's ability to participate fully and equally in the marketplace." *Brown v. American Honda Motor Co.*, 939 F.2d 946, 949 (11th Cir. 1991).

142.    ROE avers that he is a member of a racial minority, that defendants intended to discriminate against him on the basis of race, and the discrimination concerned at least one, if not more, of the activities enumerated in the statute.

143.    On information and belief, ROE avers that the defendants treated similarly situated individuals outside of his racial group differently.

144.    On information and belief, ROE avers that Defendants were motivated by racial animus when they refused to contract on equal terms with ROE on the basis of his race

Verified Complaint for Damages and Injunctive Relief for Violations of the Americans With Disabilities Act of 1990 [42 U.S.C. § 12101, *et seq.*]; Violations of the Civil Rights Act of 1964 [42 U.S.C. §§ 1981, 1985, 1986 and 2000d, *et seq.*]; Violations of the Affordable Care Act [42 U.S.C. § 18116]; Assault; Battery; False Imprisonment; Intentional Infliction of Emotional Distress; Negligence; Civil Conspiracy; Negligent Supervision &/or Retention; Unfair Trade Practices; and Interference with Contract
Page 54 of 101

145. On information and belief, ROE avers that by the actions described above, Defendants have denied and/or impaired ROE's right to make, perform, modify, terminate and/or enforce contracts and have denied ROE the enjoyment of all benefits, privileges, terms and conditions of the contractual relationship into which ROE might enter with the CVS Defendants.

146. On information and belief, ROE avers that those benefits, privileges, terms and conditions of which ROE was deprived or whose right to same was impaired by acts of discrimination, were enjoyed by white citizens of the United States, in violation of 42 U.S.C. § 1981.

147. On information and belief, ROE avers that the discrimination complained of is causally connected to his race, black.

148. Indirect evidence of discriminatory intent is circumstantial evidence from which racial motivation can be inferred.  *See Hampton v. Dillard Dep't Stores*, 247 F.3d 1091, 1109 (10th Cir. 2001), cert. denied, 534 U.S. 1131 (2002) (stating that evidence of discrimination need not be admitted); *Joseph v. N.Y. Yankees P'ship*, No. 00 CIV. 2275(SHS), 2000 WL 1559019, at *5 (S.D.N.Y. Oct. 19, 2000) (explaining that discriminatory intent can be inferred when plaintiff can show specific instances where individuals situated similarly "in all relevant aspects" were treated differently according to their race); *Washington v. Duty Free Shoppers, Ltd.*, 710 F. Supp. 1288, 1289 (N.D. Cal. 1988) (explaining that a confession of discrimination is not necessary for finding evidence of discrimination).

149. ROE avers that the facts as alleged herein present sufficient evidence that the CVS Defendants denied ROE entry while white customers were allowed to enter and receive the accommodation and service and that CVS denied ROE the right to "make and enforce contracts on the same basis as white citizens" when CVS refused to serve him but did accommodate and serve ROE's white female friend.

Verified Complaint for Damages and Injunctive Relief for Violations of the Americans With Disabilities Act of 1990 [42 U.S.C. § 12101, *et seq.*]; Violations of the Civil Rights Act of 1964 [42 U.S.C. §§ 1981, 1985, 1986 and 2000d, *et seq.*]; Violations of the Affordable Care Act [42 U.S.C. § 18116]; Assault; Battery; False Imprisonment; Intentional Infliction of Emotional Distress; Negligence; Civil Conspiracy; Negligent Supervision &/or Retention; Unfair Trade Practices; and Interference with Contract
Page 55 of 101

150.    ROE avers he has the option of proving that he was deprived of services while similarly situated persons outside the protected class were not. *Callwood v. Dave & Buster's*, 98 F. Supp. 2d 694, 707 (D. MD. 2000); see also *Murrell v. Ocean Mecca Motel*, 262 F.3d 253, 257 (4th Cir. 2001) (stating similar test for establishing a prima facie case of race discrimination in eviction from motel); *see Christian v. Wal-Mart Stores*, 252 F.3d 862, 873 (6th Cir. 2001) (This language: "which makes actionable the deprivation of service, as opposed to an outright refusal of service, better comprehends the realities of commercial establishment cases in which an aggrieved plaintiff may have been asked to leave the place of business prior to completing (his) purchase, refused service within the establishment, or refused outright access to the establishment. It is thus in harmony with the promise of § 1981(b), which guaranties all persons equal rights in "the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship.").

151.    ROE attempted to contract with the CVS Defendants but was actually and repeatedly prevented from doing so because ROE was denied reasonable accommodation into all CVS/pharmacy locations ROE attempted to gain entry, and therefore Plaintiff states a plausible cause of action under § 1981 because similarly situated Caucasian customers were allowed reasonable accommodation to enter and shop.  ROE avers that the CVS/pharmacy's refusal to allow him reasonable accommodation to enter the store is equivalent to a refusal to contract; it is a discriminatory refusal to deal, as the license to enter the store is necessary to make good on the store's implicit invitation to deal.  The CVS Defendants' refusal to accommodate ROE denied a male African-American the right to contract on the same terms and conditions as is enjoyed by white citizens.  Further, race-based harassment interferes with the right of a shopper of color to contract on the same terms as white customers. *See Brief of Amicus Curiae Lawyers' Committee*

Verified Complaint for Damages and Injunctive Relief for Violations of the Americans With Disabilities Act of 1990 [42 U.S.C. § 12101, *et seq.*]; Violations of the Civil Rights Act of 1964 [42 U.S.C. §§ 1981, 1985, 1986 and 2000d, *et seq.*]; Violations of the Affordable Care Act [42 U.S.C. § 18116]; Assault; Battery; False Imprisonment; Intentional Infliction of Emotional Distress; Negligence; Civil Conspiracy; Negligent Supervision &/or Retention; Unfair Trade Practices; and Interference with Contract
Page 56 of 101

*For Civil Rights Under Law,* at 5, *Hampton v. Dillard Dep't Stores*, 247 F.3d 1091 (10th Cir. 2001) (Nos. 98–3011, 98–3261) cert. denied, 534 U.S. 1131 (2002).

152.    ROE further believes he can demonstrate that any reasons Defendants' may offer that purport to show they excluded ROE for legitimate, non-discriminatory reasons are a pretext for discrimination, as ROE avers he can show that any such reasons proffered by Defendants' have no basis in fact, that the reasons are not the actual reasons, and that the stated reasons are insufficient to explain Defendants' action. *McDonnell Douglas Corp. v. Green*, 411 U.S. 793, 804 (1973); see *Christian v. Wal-Mart Stores,*, 252 F.3d at 879; *Johnson v. Univ. of Cincinnat*i, 215 F.3d 561, 572 (6th Cir. 2000).

153.    As a result of the violations of ROE's rights under 42 U.S.C. § 1981, ROE has been damaged and claims entitlement to any and all relief as may be afforded him to redress said wrongs.

154.    There is no exhaustion of state remedies requirement prior to ROE bringing this Complaint in federal court. *Plummer v. Chicago Journeyman Plumbers' Local Union No. 130*, 452 F.Supp. 1127 (1978), rev'd on other grounds 657 F.2d 890 (7th Cir. 1981).

155.    The District Court generally exercises jurisdiction in conformity with the laws of the United States; however, in cases where those laws are not adequate to furnish suitable remedies, state common law governs. 42 U.S.C. § 1988.

156.    ROE maintains that the defendants, and each and all of them, are directly liable to ROE under 42 U.S.C. § 1981 for the deliberate and intentional actions of the CVS defendants and their agents and/or partners and/or joint venturers and/or employees and/or representatives.

157.    ROE maintains alternately that the CVS Defendant or Defendants is or are liable to ROE under 42 U.S.C. § 1981 pursuant to the doctrine of respondeat superior.

Verified Complaint for Damages and Injunctive Relief for Violations of the Americans With Disabilities Act of 1990 [42 U.S.C. § 12101, *et seq.*]; Violations of the Civil Rights Act of 1964 [42 U.S.C. §§ 1981, 1985, 1986 and 2000d, *et seq.*]; Violations of the Affordable Care Act [42 U.S.C. § 18116]; Assault; Battery; False Imprisonment; Intentional Infliction of Emotional Distress; Negligence; Civil Conspiracy; Negligent Supervision &/or Retention; Unfair Trade Practices; and Interference with Contract
Page 57 of 101

158.    Punitive damages are available under 42 U.S.C. § 1981.2 "[A] jury may be permitted to assess punitive damages" in a civil rights case "when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves recklessness or callous indifference to the federally protected rights of others." *Smith v. Wade*, 461 U.S. 30, 56 (1983) (applying common law tort rules to action brought under 42 U.S.C. § 1983); *see also Kolstad v. American Dental Ass'n*, 527 U.S. 526, 535 (1999) (recognizing that Congress adopted the Wade standard in providing for punitive damages in Title VII and ADA cases); *Bisbal-Ramos v. City of Mayaguez*, 467 F.3d 16, 25 (1st Cir. 2006) (quoting Wade).

159.    ROE proffers that for the same reasons that punitive damages are necessary to deter the Defendants from engaging in discriminatory conduct in the future, this Court should fashion an appropriate injunction ordering the CVS Defendants to take affirmative steps to prevent similar occurrences.

160.    ROE avers that he has and will continue to shop at other pharmacies in locations served by CVS, but he avoids CVS out of fear of discrimination. ROE would shop at CVS again, if he was assured that CVS had taken steps to stop its discriminatory treatment of black customers, as alleged herein.

161.    On information and belief, Defendants engaged in intentional discrimination based on ROE's perceived race, color, ethnicity, or ancestry, and caused ROE to suffer deprivation of his right to make and enforce contracts, with deliberate and substantial disregard for ROE's rights.

162.    Defendants' actions violated 42 U.S.C. § 1981, *et seq.*  This Court cannot in good conscience remain silent while South Carolina citizens are subject to invidious racial discrimination.

163.    ROE prays for judgment and relief as set forth herein.

**THIRD: 42 U.S.C. § 1985 (CONSPIRACY TO INTERFERE WITH CIVIL RIGHTS)**

Verified Complaint for Damages and Injunctive Relief for Violations of the Americans With Disabilities Act of 1990 [42 U.S.C. § 12101, *et seq.*]; Violations of the Civil Rights Act of 1964 [42 U.S.C. §§ 1981, 1985, 1986 and 2000d, *et seq.*]; Violations of the Affordable Care Act [42 U.S.C. § 18116]; Assault; Battery; False Imprisonment; Intentional Infliction of Emotional Distress; Negligence; Civil Conspiracy; Negligent Supervision &/or Retention; Unfair Trade Practices; and Interference with Contract
Page 58 of 101

164.    Plaintiff hereby incorporates by reference each of the allegations set forth in the preceding paragraphs as if realleged fully herein.

165.    42 U.S.C. § 1985(3) provides citizens with a cause of action against private conspiracies to violate constitutional rights. No state action prerequisite exists for such lawsuits.

166.    ROE alleges conspiracy to interfere with his civil rights under 42 U.S.C. § 1985(3). Section 1985(3) provides, in pertinent part, that: "If two or more persons ... go ... on the premises of another, for the purpose of depriving ... any person ... of the equal protection of the laws, or of equal privileges and immunities under the laws; or for the purpose of preventing or hindering the constituted authorities ... from giving or securing to all persons... the equal protection of the laws[;] ... the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation . . . ." *Id.* It is well settled that "[t]o state a claim under §1985(3), there must be 'some racial, or perhaps otherwise class-based invidiously discriminatory animus behind the conspirators' action.'" *Gedrich v. Fairfax County Dep't of Family Servs.*, 282 F. Supp. 2d 439, 459 (E.D. Va. 2003)(quoting *Griffin v. Breckenridge*, 403 U.S. 88, 102, 91 S.Ct. 1790, 29 L. Ed. 2d 338 (1971)).

167.    Defendant conspirator(s) become the agent of the other conspirator(s), and any act done by one of the combination is regarded under the law as the act of both or all.  In other words, what one does, if there is this combination, becomes the act of both or all of them, no matter which individual may have done it.  This is true as to each member of the conspiracy, even those whose involvement was limited to a minor role in the unlawful transaction, and it makes no difference whether or not such individual shared in the profits of the actions. (Am. Jur. Pleading and Practice Forms, Conspiracy § 9).

168.    ROE herein alleges that the Defendants, and each of them, engaged in an illegal conspiracy to interfere with ROE's civil rights in violation of 42 U.S.C. § 1985.

Verified Complaint for Damages and Injunctive Relief for Violations of the Americans With Disabilities Act of 1990 [42 U.S.C. § 12101, *et seq.*]; Violations of the Civil Rights Act of 1964 [42 U.S.C. §§ 1981, 1985, 1986 and 2000d, *et seq.*]; Violations of the Affordable Care Act [42 U.S.C. § 18116]; Assault; Battery; False Imprisonment; Intentional Infliction of Emotional Distress; Negligence; Civil Conspiracy; Negligent Supervision &/or Retention; Unfair Trade Practices; and Interference with Contract
Page 59 of 101

169.    Specifically, the Defendants, and each of them, did, in violation of 42 U.S.C.§ 1985(3), conspire with another for the purpose of depriving, either directly or indirectly, ROE as a member of the African-American (black) class of persons, of the equal protection of the laws, and of equal privileges and immunities under the laws.

170.    As alleged herein, Defendants maliciously conspired with conspirators/co-conspirators with the intent to injure ROE.

171.    Defendants SOSA, KEELER, PENDERGRASS, CESSNA, GATES, and the unidentified white male driver of the gray truck each essentially admitted that the real reason for denying ROE reasonable accommodation or to make and enforce contracts was not only his "suspicious" and/or "unusual request" and disability, but specifically due to his race.

172.    Each act done in pursuance of the conspiracy by one of several conspirators is, in contemplation of law, an act for which each is jointly and severally liable, and this liability applies to damages accruing prior to the person's joining the conspiracy or thereafter and regardless of whether the person took a prominent or an inconspicuous part in the execution of the conspiracy. (Am. Jur. 2d, Conspiracy §§ 70, 71).

173.    A civil conspiracy is a combination of two or more persons by some concerted action to accomplish some criminal or unlawful purpose, or to accomplish some purpose not in itself criminal or unlawful by criminal or unlawful means. The conspiratorial agreement need not be in any particular form, and need not extend to all the details of the conspiratorial scheme, so long as its primary purpose is to cause injury to another/ROE. The gist of a civil conspiracy is not the unlawful agreement, but the damage resulting from that agreement and its execution. The cause of the action is not created by the conspiracy, but by the wrongful acts done by the Defendants to the injury of ROE. (Am. Jur. Pleading and Practice Forms, Conspiracy § 7).

Verified Complaint for Damages and Injunctive Relief for Violations of the Americans With Disabilities Act of 1990 [42 U.S.C. § 12101, et seq.]; Violations of the Civil Rights Act of 1964 [42 U.S.C. §§ 1981, 1985, 1986 and 2000d, et seq.]; Violations of the Affordable Care Act [42 U.S.C. § 18116]; Assault; Battery; False Imprisonment; Intentional Infliction of Emotional Distress; Negligence; Civil Conspiracy; Negligent Supervision &/or Retention; Unfair Trade Practices; and Interference with Contract
Page 60 of 101

174.    A conspiracy may be proved by circumstantial evidence.  This is because people who engage in such agreements may not voluntarily proclaim to others their purpose; therefore, a reasonable person/mind may draw on circumstantial evidence to determine whether or not a conspiracy did exist.

175.    A conspiracy may be established by inference from the nature of the acts complained of; the individual and collective interests of the alleged conspirators; the situation and relation of the parties at the time of the commission of the acts; the motives that produced them; and all of the surrounding circumstances preceding and attending the culmination of the common plan or design. (Am. Jur. Pleading and Practice Forms, Conspiracy § 8).

176.    The Defendants, each and every one of them, acquired, possessed, and maintained a general knowledge of the conspiracy's objectives to inflict wrongs against and/or injury on ROE as described in this Complaint.

177.    ROE avers the Defendants combined to engage in a scheme which was intended to violate the law and concealed and secreted same.

178.    ROE avers the Defendants combined to engage in a scheme which was intended to violate the rights of ROE.

179.    ROE avers the Defendants combined to engage in a scheme which was intended to violate the rights of the public-at-large.

180.    The facts, evidence and legal conclusions set forth in this instant Complaint supports that Defendants (which consist of two or more persons): (a) engaged in conspiracy(ies) leveled against ROE; (b) engaged in conspiracy(ies) to deter, intimidate, and threaten ROE from engaging in protected activities (i.e., making and enforcing contracts, making charges/filing lawsuits, testifying, assisting or participating in enforcement proceedings) and performing duties owed as a citizen to perform his duty to report matters of public policy and/or public interest; and

Verified Complaint for Damages and Injunctive Relief for Violations of the Americans With Disabilities Act of 1990 [42 U.S.C. § 12101, *et seq.*]; Violations of the Civil Rights Act of 1964 [42 U.S.C. §§ 1981, 1985, 1986 and 2000d, *et seq.*]; Violations of the Affordable Care Act [42 U.S.C. § 18116]; Assault; Battery; False Imprisonment; Intentional Infliction of Emotional Distress; Negligence; Civil Conspiracy; Negligent Supervision &/or Retention; Unfair Trade Practices; and Interference with Contract
Page 61 of 101

(c) engaged in conspiracy(ies) which resulted in injury/harm to ROE. *Malley-Duff & Assoc. v. Crown Life Ins. Co.*, 792 F.2D 341 (3rd Cir. 1986) judgment affirmed 483 U.S. 143 (1987); *Chahal v. Paine Webber*, 725 F.2d 20 (2nd Cir. 1984).

181.    Although it is true that a corporation cannot conspire with itself, a conspiracy may be established where individual defendants are named and those defendants acted outside the scope of their employment for personal reasons. *Swann v. City of Dallas*, 922 F.Supp. 1184 (N.D. Texas 1996)(citing *Garza v. City of Omaha*, 814 F.2d 553, 556 (8th Cir.1987)), *aff'd*, 131 F.3d 140 (5th Cir.1997).   The facts, evidence and legal conclusion contained in this instant Complaint will support that Defendants acted both within and outside the scope of their employment for personal reasons.   Moreover, said conspiracy(ies) was/were inspired and motivated by Defendants' engagement in systematic racial bias, discriminatory and retaliatory practices against ROE because of his race (African-American/black), knowledge of his engagement in protected activities, and systematic discriminatory practices.

182.    The facts, evidence and legal conclusion will support that the CVS Defendants, and each of them, were part of conspiracy(ies) against ROE that resulted in conspiracy(ies) of a pattern of unlawful behavior and/or systematic discriminatory practices – discrimination, retaliation, and harassment – as well as a conspiracy based on Defendants' knowledge of ROE's engagement in protected activities (i.e., discrimination for making charges/filing lawsuits, testifying, assisting, or participating in litigation/proceedings), thereby conspiring to deprive ROE rights secured and guaranteed under the Constitution and other laws of the United States.

183.    In doing the acts alleged, Defendants also acted in their official capacities in regards to their interest in "securing" their stores from a "nigger" "wearing a towel (and) trying to get a special accommodation" because "so many blacks think they are entitled to special treatment."

Verified Complaint for Damages and Injunctive Relief for Violations of the Americans With Disabilities Act of 1990 [42 U.S.C. § 12101, *et seq.*]; Violations of the Civil Rights Act of 1964 [42 U.S.C. §§ 1981, 1985, 1986 and 2000d, *et seq.*]; Violations of the Affordable Care Act [42 U.S.C. § 18116]; Assault; Battery; False Imprisonment; Intentional Infliction of Emotional Distress; Negligence; Civil Conspiracy; Negligent Supervision &/or Retention; Unfair Trade Practices; and Interference with Contract
Page 62 of 101

184.    For these reasons, the Defendants are liable for violation of 42 U.S.C. § 1985.

185.    Each Defendant conspirator is jointly and severally liable for all damages resulting from the conspiracy, and where that conspiracy is proven, any act done by any one of the two or more persons so conspiring, in furtherance of the common design and in accordance with the general plan, becomes the act of all, and each conspirator is responsible for such act.  It is not necessary, in order to establish the liability of a participant in an unlawful conspiracy, to show that such person was a party to its contrivance at its inception.  In other words, a conspiracy may start with a few participants and then add others as it progresses.  If so, the conspirator who becomes a part of the conspiracy at or near the end is just as responsible for the damage that results as the one who was in it at the beginning.  The actual time when any of them might have come into understanding makes no difference.  Therefore, when it is shown that the individual who came in at a later date knew of the unlawful design and willfully aided in its execution, such individual is chargeable with the consequences that flowed from the unlawful design.

186.    ROE prays for judgment and relief as set forth herein.

**FOURTH: 42 U.S.C. § 1986 (NEGLECT TO PREVENT DEPRIVATION OF RIGHTS)**

187.    Plaintiff hereby incorporates by reference each of the allegations set forth in the preceding paragraphs as if realleged fully herein.

188.    ROE avers that 42 U.S.C. § 1986 creates a cause of action for the failure to prevent a conspiracy within the meaning of 42 U.S.C. § 1985:

> Every person who, having knowledge that any of the wrongs conspired to be done, and mentioned in [42 U.S.C. § 1985], are about to be committed, and having power to prevent or aid in preventing the commission of the same, neglects or refuses to do so, if such wrongful act be committed, shall be liable to the party injured, or his legal representatives, for all damages caused by such wrongful act, which such person by reasonable diligence could have prevented.

Verified Complaint for Damages and Injunctive Relief for Violations of the Americans With Disabilities Act of 1990 [42 U.S.C. § 12101, *et seq.*]; Violations of the Civil Rights Act of 1964 [42 U.S.C. §§ 1981, 1985, 1986 and 2000d, *et seq.*]; Violations of the Affordable Care Act [42 U.S.C. § 18116]; Assault; Battery; False Imprisonment; Intentional Infliction of Emotional Distress; Negligence; Civil Conspiracy; Negligent Supervision &/or Retention; Unfair Trade Practices; and Interference with Contract
Page 63 of 101

An essential element of a claim under 42 U.S.C. § 1986 is the existence of a § 1985(3) claim. *Williams v. St. Joseph Hospital*, 629 F.2d 448, 451 – 452 (7th Cir. 1980).

189.     ROE avers that the CVS Defendants, did, in violation of 42 U.S.C. § 1986, with knowledge of the wrongs conspired to be done at the request and instruction of one or more of the CVS Defendants, were about to be committed, and having power to prevent or aid in preventing the commission of same, neglected or refused to do so, to wit: neglecting or refusing to prevent, with knowledge of a conspiracy to deprive, either directly or indirectly, ROE as a member of the African-American/black class of persons, of the equal protection of the laws, and of equal privileges and immunities under the laws.

190.     Defendants SOSA, KEELER, PENDERGRASS, CESSNA, GATES, and the unidentified white male driver of the gray truck each admitted, or at least implied by their statements, that "our whole district and other districts know some black guy wearing a towel was trying to get a special accommodation but none of them are going to help you" because "nigger(s). . . should focus on overcoming (disability) and come in the store during business hours once (ROE's) condition gets better and allows (ROE) to do that," else, ROE needs to "take (his) black ass on (his) way because (CVS Defendants will) call the police and the police are going to make you be around a lot of people."

191.     ROE avers the CVS Defendants, and each of them, had knowledge of the § 1985 conspiracy(ies), the power to protect ROE, and neglected or refused to protect ROE, and because of this the CVS Defendants, and each of them, are liable under § 1986. Further, at least one or more of the CVS Defendants were bystanders who may not themselves have been conspirators under § 1985, yet remain liable under § 1986.  After all, those with knowledge of the underlying conspiracy puts them in the optimal position to prevent it.  A negligent failure to protect by an actor with knowledge of a § 1985 conspiracy and power to protect its victims is actionable. *See*

Verified Complaint for Damages and Injunctive Relief for Violations of the Americans With Disabilities Act of 1990 [42 U.S.C. § 12101, *et seq.*]; Violations of the Civil Rights Act of 1964 [42 U.S.C. §§ 1981, 1985, 1986 and 2000d, *et seq.*]; Violations of the Affordable Care Act [42 U.S.C. § 18116]; Assault; Battery; False Imprisonment; Intentional Infliction of Emotional Distress; Negligence; Civil Conspiracy; Negligent Supervision &/or Retention; Unfair Trade Practices; and Interference with Contract Page 64 of 101

*Clark v. Clabaugh*, 20 F.3d 1290, 1298 (3d Cir. 1994) (finding that negligence is sufficient to maintain § 1986 claim).

192.    ROE avers that at least one or more of the CVS Defendants could have stopped the conspiracy he or she was part of to violate ROE's civil rights on at least one, if not more, occasion. ROE avers that the facts, evidence and legal conclusions alleged in this Complaint demonstrate that at least one or more of the CVS Defendants had actual knowledge of the § 1985 conspiracy, that at least one or more of the CVS Defendants had the power to prevent or aid in preventing the commission of the § 1985 violations, that at least one or more of the CVS Defendants neglected or refused to prevent the § 1985 conspiracy, and that one or more wrongful act(s) was committed by the conspirators.

193.    For these reasons, each Defendant is liable under 42 U.S.C. § 1986 for all damages that he or she could have prevented with reasonable diligence. *Clark v. Clabaugh*, 20 F.3d at 1298.

194.    ROE prays for judgment and relief as set forth herein.

**FIFTH: 42 U.S.C. § 2000d, *et seq*. (TITLE VI of the CIVIL RIGHTS ACT of 1964)**

195.    Plaintiff hereby incorporates by reference each of the allegations set forth in the preceding paragraphs as if realleged fully herein.

196.    Title VI of the Civil Rights Act of 1964 (42 U.S.C. § 2000d) prohibits discrimination in any program or activity that receives federal financial assistance.  As applicable to the underlying facts, the term "program or activity" and the term "program" mean all of the operations of . . .

> (3)(A) an entire corporation, partnership, or other private organization, or an entire sole proprietorship—
> (i) if assistance is extended to such corporation, partnership, private organization, or sole proprietorship as a whole; or

Verified Complaint for Damages and Injunctive Relief for Violations of the Americans With Disabilities Act of 1990 [42 U.S.C. § 12101, *et seq*.]; Violations of the Civil Rights Act of 1964 [42 U.S.C. §§ 1981, 1985, 1986 and 2000d, *et seq*.]; Violations of the Affordable Care Act [42 U.S.C. § 18116]; Assault; Battery; False Imprisonment; Intentional Infliction of Emotional Distress; Negligence; Civil Conspiracy; Negligent Supervision &/or Retention; Unfair Trade Practices; and Interference with Contract
Page 65 of 101

(ii) which is principally engaged in the business of providing education, health care, housing, social services, or parks and recreation; or

(3)(B) the entire plant or other comparable, geographically separate facility to which Federal financial assistance is extended, in the case of any other corporation, partnership, private organization, or sole proprietorship; or

(4) any other entity which is established by two or more of the entities described in paragraph (3);

any part of which is extended Federal financial assistance.

197.    ROE has an implied private right of action under Title VI against recipients of federal financial assistance who engage in such prohibited conduct. *Alexander v. Sandoval*, 532 U.S. 275, 279 (2001) ("Private individuals may sue to enforce [Title VI] and obtain both injunctive relief and damages."); *Cannon v. U. of Chicago*, 441 U.S. 677, 703 (1979) (same). Because aggrieved individuals may bring civil actions under Title VI against recipients of federal financial assistance who engage in prohibited discrimination or retaliation, ROE requests both injunctive relief and damages.

198.    Defendants CVS CAREMARK CORPORATION and/or SOUTH CAROLINA CVS PHARMACY, LLC, and/or CVS PHARMACY, INC., and/or each of the CVS/pharmacy locations identified herein are recipients of federal financial assistance.

199.    ROE avers that Defendants engaged in intentional discrimination based upon ROE's perceived race, color, gender or national origin.

200.    Defendants' actions violated Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d.

201.    ROE prays for judgment and relief as set forth herein.

202.    Accordingly, among other remedies, ROE seeks an injunctive order requiring compliance with state and federal laws allowing access to Defendants' facilities by disabled

Verified Complaint for Damages and Injunctive Relief for Violations of the Americans With Disabilities Act of 1990 [42 U.S.C. § 12101, *et seq.*]; Violations of the Civil Rights Act of 1964 [42 U.S.C. §§ 1981, 1985, 1986 and 2000d, *et seq.*]; Violations of the Affordable Care Act [42 U.S.C. § 18116]; Assault; Battery; False Imprisonment; Intentional Infliction of Emotional Distress; Negligence; Civil Conspiracy; Negligent Supervision &/or Retention; Unfair Trade Practices; and Interference with Contract
Page 66 of 101

African-Americans males, which will require modification of Defendants' policies, practices and procedures as alleged herein and as the court may deem proper.

203.    ROE also seeks any other order that will redress the discrimination which has occurred and to which ROE has been subjected, is being subjected to and will be subjected to in the future.

## SIXTH CAUSE OF ACTION

## DISCRIMINATION IN VIOLATION OF THE AFFORDABLE CARE ACT

## [42 U.S.C. § 18116]

204.    Plaintiff hereby incorporates by reference each of the allegations set forth in the preceding paragraphs as if realleged fully herein.

205.    The Patient Protection and Affordable Care Act's ("ACA") Section 1557 (codified at 42 U.S.C. § 18116) reflects a renewed commitment by Congress to combat health discrimination by any health program or activity that receives federal funding.   This landmark civil rights provision makes it illegal to discriminate against people because of their race, color, national origin, gender (this includes discrimination based on gender identity or the failure to conform to sex stereotypes), age, or disability in most health care settings. Title VI of the Civil Rights Act of 1964 and its regulations require recipients of federal funding to comply with nondiscrimination requirements based on race, color, or national origin.  Section 1557 has a broad scope and applies to a wide range of health programs and entities.  It protects individuals from discrimination in: any health program or activity of a recipient of federal financial assistance, such as hospitals, clinics, employers, retail community pharmacies or insurance companies that receive federal money. Section 1557 specifically extends its discrimination prohibition to entities that receive federal financial assistance in the form of contracts of insurance, credits, or subsidies, as

Verified Complaint for Damages and Injunctive Relief for Violations of the Americans With Disabilities Act of 1990 [42 U.S.C. § 12101, *et seq.*]; Violations of the Civil Rights Act of 1964 [42 U.S.C. §§ 1981, 1985, 1986 and 2000d, *et seq.*]; Violations of the Affordable Care Act [42 U.S.C. § 18116]; Assault; Battery; False Imprisonment; Intentional Infliction of Emotional Distress; Negligence; Civil Conspiracy; Negligent Supervision &/or Retention; Unfair Trade Practices; and Interference with Contract
Page 67 of 101

well as any program or activity administered by an executive agency, including federal health programs like Medicare, Medicaid, and CHiP.

206.    Under 42 U.S.C. § 1396r–8(k)(10)), "Retail Community Pharmacy" means an independent pharmacy, a chain pharmacy, a supermarket pharmacy, or a mass merchandiser pharmacy that is licensed as a pharmacy by the State and that dispenses medications to the general public at retail prices.

207.    42 U.S.C. § 18116, ADA Section 1557, provides as follow:

(a) . . . an individual shall not, on the ground prohibited under title VI of the Civil Rights Act of 1964 (42 U.S.C. 2000d et seq.) . . . be excluded from participation in, be denied the benefits of, or be subjected to discrimination under, any health program or activity, any part of which is receiving Federal financial assistance, including credits, subsidies, or contracts of insurance, or under any program or activity that is administered by an Executive Agency or any entity established under this title (or amendments). The enforcement mechanisms provided for and available under such title VI, title IX, section 504, or such Age Discrimination Act shall apply for purposes of violations of this subsection.

(b) Continued Application Of Laws.—Nothing in this title . . . shall be construed to invalidate or limit the rights, remedies, procedures, or legal standards available to individuals aggrieved under title VI of the Civil Rights Act of 1964 (42 U.S.C. 2000d et seq.) . . . or to supersede State laws that provide additional protections against discrimination on any basis described in subsection (a).

ACA § 1557, 42 U.S.C. § 18116 (2011)

208.    Title VI applies to all programs receiving Federal financial assistance, including private entities. Congress has defined covered programs to include "an entire corporation . . . if assistance is extended to such corporation . . . or which is principally engaged in the business of providing . . . health care . . . ." 42 U.S.C. § 2000d-4a (2006).   A program also includes "[t]he entire plant or other comparable, geographically separate facility to which Federal financial assistance is extended, in the case of any other corporation, partnership, private organization, or sole proprietorship." 45 C.F.R. § 80.13(g) (2010).

Verified Complaint for Damages and Injunctive Relief for Violations of the Americans With Disabilities Act of 1990 [42 U.S.C. § 12101, et seq.]; Violations of the Civil Rights Act of 1964 [42 U.S.C. §§ 1981, 1985, 1986 and 2000d, et seq.]; Violations of the Affordable Care Act [42 U.S.C. § 18116]; Assault; Battery; False Imprisonment; Intentional Infliction of Emotional Distress; Negligence; Civil Conspiracy; Negligent Supervision &/or Retention; Unfair Trade Practices; and Interference with Contract
Page 68 of 101

209.    Programs and recipients of Federal financial assistance are particularly prohibited from providing "any service, financial aid, or other benefit to an individual which is different, or is provided in a different manner, from that provided to others under the program." See 45 C.F.R. § 80.3(a)(ii) (2010). Federal financial assistance has been interpreted and enforced to cover a broad range of programs receiving federal funds.

210.    The courts have found that health care services providers currently covered by Title VI include retail community pharmacies as operated by the CVS Defendants that accept Federal financial assistance through Medicare Part A, Part D, or Medicaid payments. *See Bowen v. American Hospital Assn.*, 476 U.S. 610, 624 (1986) (affirming hospital was recipient of "financial assistance" through its participation in the Medicare and Medicaid programs); see also *Fobbs v. Holy Cross Health Sys. Corp.*, 29 F. 3d 1439, 1447 (9th Cir. 1994); *U.S. v. Harris Methodist Ft. Worth*, 970 F. 2d 94, 1447 (5th Cir. 1992) (finding that the anti-discrimination provisions of Title VI apply to hospital receiving federal funds); *Rackley v Bd. of Trustees*, 238 F Supp 512 (D.C. 1965) (state or private hospitals receiving federal funds bound by Title VI).

211.    Financial assistance does not have to result in financial gain or increment in assets to be considered covered by Title VI. *See Bob Jones Univ. v. Johnson*, 396 F. Supp. 597 (DC 1974), aff'd without op., 539 F.2d 514 (4th Cir. 1975).

212.    The United States Supreme Court has explicitly recognized the relevant language in § 1557 as creating a private right of action when used in other civil rights statutes. *Gonzaga Univ. v. Doe*, 536 U.S. 273, 283-84 (2002) ("Title VI of the Civil Rights Act of 1964 and Title IX of the Education Amendments of 1972 create individual rights because those statutes are phrased 'with an unmistakable focus on the benefited class.'" (citations omitted)). Compare § 1557 text (PPACA § 1557, 42 U.S.C. § 18116 (2011)), with Title VI and Title IX text (Congress used Title VI as the model in drafting § 1557's other listed statutes). *See* 42 U.S.C. § 2000d (2011) ("No person in the

Verified Complaint for Damages and Injunctive Relief for Violations of the Americans With Disabilities Act of 1990 [42 U.S.C. § 12101, *et seq.*]; Violations of the Civil Rights Act of 1964 [42 U.S.C. §§ 1981, 1985, 1986 and 2000d, *et seq.*]; Violations of the Affordable Care Act [42 U.S.C. § 18116]; Assault; Battery; False Imprisonment; Intentional Infliction of Emotional Distress; Negligence; Civil Conspiracy; Negligent Supervision &/or Retention; Unfair Trade Practices; and Interference with Contract
Page 69 of 101

United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance."). Title IX and the Age Discrimination Act substitute their own protected classes with otherwise identical language. Section 504 uses the same text with a few modifications for the disability context: "No otherwise qualified individual with a disability in the United States ...shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination." 29 U.S.C. § 794(a) (2011).

213.    When Congress has referred to prior civil rights statutes in bill text, courts have both inferred a private right of action and made available a previously implied private right of action under the new statute. *See, e.g., Barnes v. Gorman*, 536 U.S. 181, 185 (2002) (finding that both the Americans with Disabilities Act and § 504 have private rights of action by virtue of statutory allusions to Title VI).

214.    By cross-referencing these statutes and thus incorporating their enforcement mechanisms, Congress intended for the text itself to give rise to this right of action. *See Three Rivers Ctr. v. Housing Authority*, 382 F3d 412, 426 ("Although the remedy available to persons aggrieved by violations of the … Act ... is at root an implied one, the statute, by cross-referencing Title VI, which already had been interpreted as creating a private right of action, arguably contains an explicit provision creating a private right of action." (citations omitted)).

215.    By including Title IX among the statutes whose protected classes are also covered by § 1557, Congress also made discrimination on the basis of gender actionable against a variety of entities in health care.

216.    ROE avers the Defendants meet the qualifications for being a "health program or activity, any part of which is receiving Federal financial assistance" under Section 1557(a).

Verified Complaint for Damages and Injunctive Relief for Violations of the Americans With Disabilities Act of 1990 [42 U.S.C. § 12101, *et seq.*]; Violations of the Civil Rights Act of 1964 [42 U.S.C. §§ 1981, 1985, 1986 and 2000d, *et seq.*]; Violations of the Affordable Care Act [42 U.S.C. § 18116]; Assault; Battery; False Imprisonment; Intentional Infliction of Emotional Distress; Negligence; Civil Conspiracy; Negligent Supervision &/or Retention; Unfair Trade Practices; and Interference with Contract
Page 70 of 101

217.     ROE avers the Defendants have violated and continue to violate Section 1557(a) of the Affordable Care Act by intentionally causing ROE to "be excluded from participation in, be denied the benefits or, or be subjected to discrimination under any health program or activity, any part of which is receiving Federal financial assistance" based on disability, race and gender, which are all prohibited grounds of discrimination under Title IX.

218.     ROE has been aggrieved by this violation of Section 1557(a) in the denial of access to necessary medical care and/or services including, though not limited to, prescription pharmaceuticals.

219.     Declaratory and injunctive relief is required to define ROE's rights under Section 1557(a), to remedy the Defendants' violation of Section 1557(a), and to secure ongoing compliance with the antidiscrimination provisions of the Affordable Care Act.

220.     ROE has been harmed as a result of Defendants' conduct and is entitled to compensatory damages.

221.     ROE prays for judgment and relief as set forth herein.

### SEVENTH CAUSE OF ACTION

### ASSAULT

222.     Plaintiff hereby incorporates by reference each of the allegations set forth in the preceding paragraphs as if realleged fully herein.

223.     "An assault is an attempt or offer, with force or violence, to inflict bodily harm on another or engage in some offensive conduct. "[A]n assault occurs when a person has been placed in reasonable fear of bodily harm by the conduct of the defendant." The elements of assault are: (1) conduct of the defendant which places the plaintiff, (2) in reasonable fear of bodily harm.  The conduct must be of such nature and made under such circumstances as to affect the mind of a person of ordinary reason and firmness, so as to influence his conduct; or it must appear the

Verified Complaint for Damages and Injunctive Relief for Violations of the Americans With Disabilities Act of 1990 [42 U.S.C. § 12101, et seq.]; Violations of the Civil Rights Act of 1964 [42 U.S.C. §§ 1981, 1985, 1986 and 2000d, et seq.]; Violations of the Affordable Care Act [42 U.S.C. § 18116]; Assault; Battery; False Imprisonment; Intentional Infliction of Emotional Distress; Negligence; Civil Conspiracy; Negligent Supervision &/or Retention; Unfair Trade Practices; and Interference with Contract
Page 71 of 101

person against whom the threat is made was peculiarly susceptible to fear, and the person making the threat knew and took advantage of the fact he could not stand as much as an ordinary person. *Mellen v. Lane*, 377 S.C. 261, 276 (2008)(*citations omitted*).

224.    The Defendants may be held liable for anything which appears to have been a natural and probable consequence of their actions. *Id*, at 279.

225.    At least one or more Defendants intended to cause and did cause ROE to suffer apprehension of an immediate harmful contact.

226.    ROE did not consent to any Defendant's act(s).

227.    As a direct and proximate result of Defendants' conduct ROE suffered physical, mental and emotional injuries as described herein, including though not limited to mental anguish and physical pain.

228.    These injuries have caused ROE to suffer general damages in an amount to be determined by proof at trial.

229.    As a direct and proximate result of Defendants' conduct, ROE was required to obtain medical services and treatment in an amount to be determined by proof at trial and will, in the future, be compelled to incur additional obligations for medical and mental health treatment in an amount to be determined by proof at trial.

230.    Injury resulting from an assault by an employee or manager at the workplace and involving the performance of the employer's business is an injury arising out of and in the course of employment.

231.    PENDERGRASS and at least one or more of the JOHN DOE and JANE DOE defendants are liable to ROE for assault based on their actions as alleged herein including, though not limited to, PENDERGRASS' reaching to remove the sports towel worn by ROE.

Verified Complaint for Damages and Injunctive Relief for Violations of the Americans With Disabilities Act of 1990 [42 U.S.C. § 12101, *et seq.*]; Violations of the Civil Rights Act of 1964 [42 U.S.C. §§ 1981, 1985, 1986 and 2000d, *et seq.*]; Violations of the Affordable Care Act [42 U.S.C. § 18116]; Assault; Battery; False Imprisonment; Intentional Infliction of Emotional Distress; Negligence; Civil Conspiracy; Negligent Supervision &/or Retention; Unfair Trade Practices; and Interference with Contract
Page 72 of 101

232.    Under the doctrine of respondeat superior, Defendants CVS CAREMARK CORPORATION and/or SOUTH CAROLINA CVS PHARMACY, LLC, and/or CVS PHARMACY, INC., and/or the CVS/pharmacy employer of PENDERGRASS is liable to ROE for actual and punitive damages given PENDERGRASS' assault upon ROE as aforesaid

233.    ROE prays for judgment and relief as set forth herein.

## EIGHTH CAUSE OF ACTION

### BATTERY

234.    Plaintiff hereby incorporates by reference each of the allegations set forth in the preceding paragraphs as if realleged fully herein.

235.    "A battery is the actual infliction of any unlawful, unauthorized violence on the person of another, irrespective of its degree; it is unnecessary that the contact be by a blow, as any forcible contact is sufficient. Generally speaking, a battery is the unlawful touching or striking of another by the aggressor himself or by any substance put in motion by him, done with the intention of bringing about a harmful or offensive contact which is not legally consented to by the other, and not otherwise privileged. It is sometimes defined as any injury done to the person of another in a rude, insolent, or revengeful way.  Physical injury is not an element of battery. While there must be a touching, any forcible contact, irrespective of its degree, will suffice." *Mellen v. Lane*, 377 S.C. at 277 (*citations omitted*).

236.    The Defendants may be held liable for anything which appears to have been a natural and probable consequence of their actions. *Id.*, at 279.

237.    PENDERGRASS and at least one or more of the JOHN DOE and JANE DOE defendants are liable to ROE for battery based on their actions as alleged herein including, though not limited to, PENDERGRASS' grabbing and shaking ROE by the shoulder, and by the JOHN DOE unidentified white male driver of the gray truck when he physically touched ROE's face.

Verified Complaint for Damages and Injunctive Relief for Violations of the Americans With Disabilities Act of 1990 [42 U.S.C. § 12101, *et seq.*]; Violations of the Civil Rights Act of 1964 [42 U.S.C. §§ 1981, 1985, 1986 and 2000d, *et seq.*]; Violations of the Affordable Care Act [42 U.S.C. § 18116]; Assault; Battery; False Imprisonment; Intentional Infliction of Emotional Distress; Negligence; Civil Conspiracy; Negligent Supervision &/or Retention; Unfair Trade Practices; and Interference with Contract
Page 73 of 101

238.    At least one or more Defendants intended to cause and did cause ROE to suffer an immediate harmful contact.

239.    ROE did not consent to any Defendant's act(s).

240.    As a direct and proximate result of Defendants' conduct ROE suffered physical, mental and emotional injuries as described herein, including though not limited to mental anguish and physical pain.

241.    These injuries have caused ROE to suffer general damages in an amount to be determined by proof at trial.

242.    As a direct and proximate result of Defendants' conduct, ROE was required to obtain medical services and treatment in an amount to be determined by proof at trial and will, in the future, be compelled to incur additional obligations for medical and mental health treatment in an amount to be determined by proof at trial.

243.    Injury resulting from a battery by an employee or manager at the workplace and involving the performance of the employer's business is an injury arising out of and in the course of employment.

244.    Under the doctrine of respondeat superior, Defendants CVS CAREMARK CORPORATION and/or SOUTH CAROLINA CVS PHARMACY, LLC, and/or CVS PHARMACY, INC., and/or the CVS/pharmacy employer of PENDERGRASS is liable to ROE for actual and punitive damages given PENDERGRASS' battery upon ROE as aforesaid.

245.    ROE prays for judgment and relief as set forth herein.

## NINTH CAUSE OF ACTION

### FALSE IMPRISONMENT

246.    Plaintiff hereby incorporates by reference each of the allegations set forth in the preceding paragraphs as if realleged fully herein.

Verified Complaint for Damages and Injunctive Relief for Violations of the Americans With Disabilities Act of 1990 [42 U.S.C. § 12101, et seq.]; Violations of the Civil Rights Act of 1964 [42 U.S.C. §§ 1981, 1985, 1986 and 2000d, et seq.]; Violations of the Affordable Care Act [42 U.S.C. § 18116]; Assault; Battery; False Imprisonment; Intentional Infliction of Emotional Distress; Negligence; Civil Conspiracy; Negligent Supervision &/or Retention; Unfair Trade Practices; and Interference with Contract
Page 74 of 101

247.    The facts set forth above demonstrate that Plaintiff ROE was unlawfully restrained by PENDERGRASS in ROE's vehicle.

248.    By her actions, PENDERGRASS confined ROE in his vehicle and demonstrated aggression when ROE attempted to leave, forcing ROE to submit to the apprehension of PENDERGRASS' force.

249.    Defendants' violated ROES's personal liberty by acting in a manner which had the effect of confining ROE against ROE's will.  Defendants' accomplished this restraint through express and implied threats of physical force and by acting in a manner which had the effect of threatening harm to ROE.  ROE's false imprisonment ended when he was able to close the door to his vehicle and flee the scene of the altercation and hostilities inflicted on or against him by PENDERGRASS and the JOHN DOE and JANE DOE unidentified defendants who conspired to "toughen (ROE) up."

250.    As a proximate result of the conduct as alleged herein, ROE has suffered and continues to suffer bodily injury, extreme mental distress, humiliation and anguish, and other emotional and physical injuries, as well as economic losses, all to ROE's damage in amounts to be proven at trial.

251.    As a direct and proximate result of Defendants' conduct, ROE was required to obtain medical services and treatment in an amount to be determined by proof at trial and will, in the future, be compelled to incur additional obligations for medical and mental health treatment in an amount to be determined by proof at trial.

252.    Defendants committed the acts alleged herein maliciously, oppressively, with the wrongful intention of injuring ROE from an improper and evil motive, amounting to malice, and in conscious disregard of ROE's rights.  ROE thus is entitled to recover punitive damages from Defendants in amounts to be proven at trial.

Verified Complaint for Damages and Injunctive Relief for Violations of the Americans With Disabilities Act of 1990 [42 U.S.C. § 12101, *et seq.*]; Violations of the Civil Rights Act of 1964 [42 U.S.C. §§ 1981, 1985, 1986 and 2000d, *et seq.*]; Violations of the Affordable Care Act [42 U.S.C. § 18116]; Assault; Battery; False Imprisonment; Intentional Infliction of Emotional Distress; Negligence; Civil Conspiracy; Negligent Supervision &/or Retention; Unfair Trade Practices; and Interference with Contract
Page 75 of 101

253. Injury resulting from false imprisonment by an employee or manager at the workplace and involving the performance of the employer's business is an injury arising out of and in the course of employment.

254. PENDERGRASS and at least some of the JOHN DOE and JANE DOE defendants are liable to ROE for false imprisonment.

255. At the time of the incidents described above, PENDERGRASS was an agent/servant of CVS, acting within the scope of her employment.

256. Under the doctrine of respondeat superior, Defendants CVS CAREMARK CORPORATION and/or SOUTH CAROLINA CVS PHARMACY, LLC, and/or CVS PHARMACY, INC., and/or the CVS/pharmacy employer of PENDERGRASS is liable to ROE for actual and punitive damages given PENDERGRASS' and others' false imprisonment of ROE as aforesaid.

257. As a direct and proximate result of PENDERGRASS' unlawful retention of Plaintiff, ROE is entitled to recover damages.

258. ROE prays for judgment and relief as set forth herein.

## TENTH CAUSE OF ACTION

### INTENTIONAL INFLICTION of EMOTIONAL DISTRESS (OUTRAGE)

259. Plaintiff hereby incorporates by reference each of the allegations set forth in the preceding paragraphs as if realleged fully herein.

260. South Carolina courts have held that, in order to recover for the intentional infliction of emotional distress, "a plaintiff must establish that (1) the defendant intentionally or recklessly inflicted severe emotional distress or was certain or substantially certain that such distress would result from his conduct (2) the conduct was so 'extreme and outrageous' as to exceed 'all possible bounds of decency' and must be regarded as 'atrocious, and utterly intolerable

Verified Complaint for Damages and Injunctive Relief for Violations of the Americans With Disabilities Act of 1990 [42 U.S.C. § 12101, *et seq.*]; Violations of the Civil Rights Act of 1964 [42 U.S.C. §§ 1981, 1985, 1986 and 2000d, *et seq.*]; Violations of the Affordable Care Act [42 U.S.C. § 18116]; Assault; Battery; False Imprisonment; Intentional Infliction of Emotional Distress; Negligence; Civil Conspiracy; Negligent Supervision &/or Retention; Unfair Trade Practices; and Interference with Contract
Page 76 of 101

in a civilized community;' (3) the actions of the defendant caused the plaintiff's emotional

distress; and (4) the emotional distress suffered by the plaintiff was 'severe' so that 'no reasonable

man could be expected to endure it.' Although 'severe' emotional distress is usually manifested by

'shock, illness or other bodily harm,' such objective symptomatology is not an absolute

prerequisite for recovery of damages for intentional . . . infliction of emotional distress." *Ford v.*

*Hutson*, 276 S.C. 157; 276 S.E.2d 776 (1981).

261.    Discrimination against disabled minorities is anathema in South Carolina and

throughout the United States, and is unusually damaging and degrading to the dignity of all

Americans, especially those discriminated against, and especially when the discrimination is

against a Marine veteran of African-American descent suffering from service-connected

disabilities. A disabled veteran of any branch of the U.S. Military who suffers from PTSD and

PTSD-related symptoms is more vulnerable and helpless than other less-disabled persons, and the

discrimination here has been unusually destructive of Plaintiff's life, causing him grave damage.

Given the sad history of discrimination throughout South Carolina and the United States, any

discrimination now is by its very nature abhorrent and outrageous, and is conduct that is

intolerable and far beyond what is considered acceptable or decent in our society.

262.    In commission of the acts alleged in this Complaint, Defendants have:

    a.    Denied access to a disabled minority person to their public accommodation;

    b.    Subjected ROE to unequal discriminatory treatment on account of his minority,

        disability, and gender status, in violation of the Civil Rights Act of 1964, the

        Americans with Disabilities Act of 1990, and the Patient Protection and

        Affordable Care Act of 2010;

Verified Complaint for Damages and Injunctive Relief for Violations of the Americans With Disabilities Act of 1990 [42 U.S.C. § 12101, *et seq.*]; Violations of the Civil Rights Act of 1964 [42 U.S.C. §§ 1981, 1985, 1986 and 2000d, *et seq.*]; Violations of the Affordable Care Act [42 U.S.C. § 18116]; Assault; Battery; False Imprisonment; Intentional Infliction of Emotional Distress; Negligence; Civil Conspiracy; Negligent Supervision &/or Retention; Unfair Trade Practices; and Interference with Contract
Page 77 of 101

    c.   Refused to provide Plaintiff reasonable accommodation, advantages, facilities, privileges and/or services in Defendants' CVS/pharmacy retail community pharmacies;

    d.   Misled ROE by telling him there was never any way a CVS/pharmacy would ever accommodate him and/or his disability.

263.    Defendants have imposed eligibility criteria that screen out or tend to screen out a male African-American Marine veteran with service-connected disabilities from fully and equally enjoying any goods, services, facilities, privileged, advantages, or accommodations, and such criteria cannot be shown to be necessary for the provision of the goods, services, facilities, privileged, advantages, or accommodation being offered.

264.    Defendants, by and through their employees or agents, engaged in the shockingly outrageous conduct alleged herein intentionally and maliciously for the purpose of causing ROE to suffer humiliation, mental anguish, apprehension, and emotional distress.

265.    Defendants' conduct is the type that cannot be tolerated in a civilized society. Defendants used and/or ratified highly offensive and derogatory racial epithets directed specifically towards or at ROE, often within eyesight and hearing of those around him. The racial epithets were shared with others, including other employees, who joined in on the oppression.

266.    Defendants' conduct was outrageous and in reckless disregard for ROE's feelings, dignity, and/or fundamental rights as a human being.

267.    When ROE attempted to patronize the various CVS/pharmacy retail community pharmacy establishments, ROE believed that he was welcome because of CVS' "signature hospitality." The Defendants' and their agents knew their conduct was outrageous, extreme, and hurtful.

Verified Complaint for Damages and Injunctive Relief for Violations of the Americans With Disabilities Act of 1990 [42 U.S.C. § 12101, et seq.]; Violations of the Civil Rights Act of 1964 [42 U.S.C. §§ 1981, 1985, 1986 and 2000d, et seq.]; Violations of the Affordable Care Act [42 U.S.C. § 18116]; Assault; Battery; False Imprisonment; Intentional Infliction of Emotional Distress; Negligence; Civil Conspiracy; Negligent Supervision &/or Retention; Unfair Trade Practices; and Interference with Contract
Page 78 of 101

268.    Defendants have failed to take such steps as may be necessary to ensure that no individual of a protected racial or gender status with a disability is excluded, denied services, segregated or otherwise treated different than other individuals of a different race or gender or who have served, in any capacity, with any branch of the U.S. Military, unless the entity can demonstrate that taking such steps would fundamentally alter the nature of the good, service, facility, privilege, advantage, or accommodation being offered or would result in an undue burden.

269.    Defendants' actions, policies, practices and procedures as alleged herein are such that they shock the conscience and have no place in our society, and should be met with the full force of law, including punitive damages, as a deterrent to Defendants and other providers of public accommodations from engaging in these unlawful, malicious, oppressive and fraudulent activities.

270.    Defendants' unlawful, malicious, oppressive and fraudulent activities include acts as alleged herein, which are outright acts of discrimination against disabled African-American male persons when substantially similar persons who are not minorities are welcomed and not turned away, and were acts committed because Defendants considered Plaintiff ROE inferior and not wanted as a customer in Defendants' retail community pharmacies.

271.    As a direct and proximate result of the acts and omissions, as alleged herein, Plaintiff ROE suffered severe emotional distress and physical injuries that will be proven at the time of trial.

272.    As a direct and proximate result of Defendants' conduct, ROE was required to obtain medical services and treatment in an amount to be determined by proof at trial and will, in the future, be compelled to incur additional obligations for medical and mental health treatment in an amount to be determined by proof at trial

Verified Complaint for Damages and Injunctive Relief for Violations of the Americans With Disabilities Act of 1990 [42 U.S.C. § 12101, *et seq.*]; Violations of the Civil Rights Act of 1964 [42 U.S.C. §§ 1981, 1985, 1986 and 2000d, *et seq.*]; Violations of the Affordable Care Act [42 U.S.C. § 18116]; Assault; Battery; False Imprisonment; Intentional Infliction of Emotional Distress; Negligence; Civil Conspiracy; Negligent Supervision &/or Retention; Unfair Trade Practices; and Interference with Contract
Page 79 of 101

273.    Injury resulting from intentional infliction of emotional distress by an employee or manager at the workplace and involving the performance of the employer's business is an injury arising out of and in the course of employment.

274.    ROE alleges that no fewer Defendants than KEELER, PENDERGRASS and at least some of the JOHN DOE and JANE DOE defendants are liable to ROE for intentional infliction of emotional distress.

275.    Under the doctrine of respondeat superior, Defendants CVS CAREMARK CORPORATION and/or SOUTH CAROLINA CVS PHARMACY, LLC, and/or CVS PHARMACY, INC., and/or the CVS/pharmacy employer of KEELER and PENDERGRASS and those JANE DOE and/or JOHN DOE Defendants involved is or are liable to ROE for actual and punitive damages given KEELER's and PENDERGRASS', and possibly others', intentional infliction of emotional distress upon ROE as aforesaid.

276.    ROE prays for judgment and relief as set forth herein.

### ELEVENTH CAUSE OF ACTION

### CIVIL CONSPIRACY

277.    Plaintiff hereby incorporates by reference each of the allegations set forth in the preceding paragraphs as if realleged fully herein.

278.    The elements of a civil conspiracy in South Carolina are (1) the combination of two or more people, (2) for the purpose of injuring the plaintiff, (3) which causes special damages. *LaMotte v. Punch Line of Columbia*, 296 S.C. 66 (1988); *Cowburn v. Leventis*, 366 S.C. 20, 49 (Ct. App. 2005); *Ellis v. Davidson*, 358 S.C. 509 (Ct. App. 2004); see also *Peoples Federal Savings & Loan Ass'n of S. Carolina v. Resources Planning Corp.*, 358 S.C. 460, 470 (2004) ("A civil conspiracy is a combination of two or more parties joined for the purpose of injuring the plaintiff and thereby causing special damage.") (*citation omitted*). The "essential consideration"

Verified Complaint for Damages and Injunctive Relief for Violations of the Americans With Disabilities Act of 1990 [42 U.S.C. § 12101, *et seq.*]; Violations of the Civil Rights Act of 1964 [42 U.S.C. §§ 1981, 1985, 1986 and 2000d, *et seq.*]; Violations of the Affordable Care Act [42 U.S.C. § 18116]; Assault; Battery; False Imprisonment; Intentional Infliction of Emotional Distress; Negligence; Civil Conspiracy; Negligent Supervision &/or Retention; Unfair Trade Practices; and Interference with Contract
Page 80 of 101

in civil conspiracy "is not whether lawful or unlawful acts or means are employed to further the conspiracy, but whether the primary purpose or object of the combination is to injure the plaintiff." *Lee v. Chesterfield General Hosp.*, 289 S.C. 6, 13 (Ct. App. 1986).

279.    "In order to establish a conspiracy, evidence, direct or circumstantial, must be produced from which a party may reasonably infer the joint assent of the minds of two or more parties to the prosecution of the unlawful enterprise." *Island Car Wash v. Norris*, 292 S.C. 595, 601 (Ct. App. 1987); accord *Cowburn*, 366 S.C. at 49.  South Carolina Courts have observed: Conspiracy may be inferred from the very nature of the acts done, the relationship of the parties, the interests of the alleged conspirators, and other circumstances. *Island Car Wash v. Norris*, 292 S.C. 595, (Ct. App. 1987).  "Civil conspiracy is an act which is by its very nature covert and clandestine and usually not susceptible of proof by direct evidence. . . ." *Id.* at 601.

280.    "The agents of a corporation are legally capable, as individuals, of conspiracy among themselves or with third parties." *Lee v. Chesterfield General Hosp.*, 289 S.C. at 14.

281.    "An act is within the scope of a servant's employment where [it is] reasonably necessary to accomplish the purpose of his employment and in furtherance of the master's business." *Armstrong v. Food Lion, Inc.*, 371 S.C. 271, 276 (2006).

282.    "Because civil conspiracy is 'by its very nature covert and clandestine,' it is usually not provable by direct evidence." *Moore v. Weinberg*, 373 S.C. 209, 228 (Ct. App. 2007) (quoting *Island Car Wash v. Norris*, 292 S.C. 595, 601 (Ct. App. 1987)).

283.    ROE avers that, on information and belief, the Defendants within each district and/or region entered into an agreement and/or understanding and otherwise conspired with other named and yet unnamed Defendants to tortiously interfere with ROE's rights under federal law.

Verified Complaint for Damages and Injunctive Relief for Violations of the Americans With Disabilities Act of 1990 [42 U.S.C. § 12101, *et seq.*]; Violations of the Civil Rights Act of 1964 [42 U.S.C. §§ 1981, 1985, 1986 and 2000d, *et seq.*]; Violations of the Affordable Care Act [42 U.S.C. § 18116]; Assault; Battery; False Imprisonment; Intentional Infliction of Emotional Distress; Negligence; Civil Conspiracy; Negligent Supervision &/or Retention; Unfair Trade Practices; and Interference with Contract
Page 81 of 101

284.    In furtherance of the conspiracy, multiple CVS/pharmacy personnel admitted to ROE that ROE would never receive any accommodation at or by a CVS/pharmacy anywhere within the State of South Carolina.

285.    ROE avers that, upon information and belief, Defendants combined and conspired wrongfully to discriminate against ROE for the purpose of injuring ROE.

286.    Upon information and belief, Defendants combined and conspired wrongfully to inflict emotional distress upon ROE for the purpose of injuring ROE.

287.    As a direct and proximate result of Defendants' tortious acts committed in furtherance of the above-referenced conspiracy, ROE has suffered actual damages and is entitled to the relief sought herein.

288.    As a direct and proximate result of Defendants' conduct, ROE was required to obtain medical services and treatment in an amount to be determined by proof at trial and will, in the future, be compelled to incur additional obligations for medical and mental health treatment in an amount to be determined by proof at trial

289.    ROE avers Defendants are liable to ROE for actual and punitive damages given their civil conspiracy.

290.    Under the doctrine of respondeat superior, Defendants CVS CAREMARK CORPORATION and/or SOUTH CAROLINA CVS PHARMACY, LLC, CVS PHARMACY, INC., and/or the CVS/pharmacy employer of the conspiring Defendants and those JANE DOE and/or JOHN DOE Defendants involved is or are liable to ROE for actual and punitive damages given their employees', and possibly others', infliction of damages upon ROE as aforesaid.

291.    ROE prays for judgment and relief as set forth herein.

Verified Complaint for Damages and Injunctive Relief for Violations of the Americans With Disabilities Act of 1990 [42 U.S.C. § 12101, et seq.]; Violations of the Civil Rights Act of 1964 [42 U.S.C. §§ 1981, 1985, 1986 and 2000d, et seq.]; Violations of the Affordable Care Act [42 U.S.C. § 18116]; Assault; Battery; False Imprisonment; Intentional Infliction of Emotional Distress; Negligence; Civil Conspiracy; Negligent Supervision &/or Retention; Unfair Trade Practices; and Interference with Contract
Page 82 of 101

## TWELFTH CAUSE OF ACTION

### NEGLIGENCE

292.    Plaintiff hereby incorporates by reference each of the allegations set forth in the preceding paragraphs as if realleged fully herein.

293.    In choosing to operate retail community pharmacies open to the public, Defendants undertook the duty to exercise reasonable care to operate and maintain the safety of the public who shopped in Defendants' CVS/pharmacy retail community pharmacies.

294.    A cause of action for negligence requires ROE establish (1) the CVS Defendants owed a duty of care to ROE; (2) at least one or more of the CVS Defendants' breached that duty by a negligent act or omission; and (3) the CVS Defendants' breach was the actual and proximate cause of ROE's injury(ies); and (4) ROE suffered an injury or damages resulting from the CVS Defendants' breach. *See, e.g.*, *Bullard v. Ehrhardt*, 283 S.C. 557 (1984); *Winburn v. Insurance Co. of North America*, 287 S.C. 435 (Ct.App.1985).

295.    "The owner of property owes to an invitee or business visitor the duty of exercising reasonable or ordinary care for his safety, and is liable for injuries resulting from the breach of such duty." *Sims v. Giles*, 343 S.C. 708, 718 (Ct. App. 2001). Furthermore, "[t]he landowner has a duty to warn an invitee only of latent or hidden dangers of "which the landowner has knowledge or should have knowledge."

296.    South Carolina recognizes four general classifications of persons who come on premises." *Id.*, at 715. The classifications are: "adult trespassers, invitees, licensees, and children." *Id.* Importantly, "different standards of care apply depending on whether the visitor is considered an "invitee," i.e., an invited (express or implied) business guest; a "licensee," i.e., a person not invited, but whose presence is suffered; a "trespasser," i.e., a person whose presence is neither

Verified Complaint for Damages and Injunctive Relief for Violations of the Americans With Disabilities Act of 1990 [42 U.S.C. § 12101, *et seq.*]; Violations of the Civil Rights Act of 1964 [42 U.S.C. §§ 1981, 1985, 1986 and 2000d, *et seq.*]; Violations of the Affordable Care Act [42 U.S.C. § 18116]; Assault; Battery; False Imprisonment; Intentional Infliction of Emotional Distress; Negligence; Civil Conspiracy; Negligent Supervision &/or Retention; Unfair Trade Practices; and Interference with Contract
Page 83 of 101

invited nor suffered; or a child." In these liability cases, "the invitee is offered the utmost duty of care."

297.    South Carolina courts classify Plaintiff ROE as a business visitor, giving him invitee status. "An invitee is a person who enters onto the property of another at the express or implied invitation of the property owner." *Sims v. Giles*, 343 S.C. at 716. "Invitees are limited to those persons who enter or remain on land upon an invitation which carries with it an implied representation, assurance, or understanding that reasonable care has been used to prepare the premises, and make them safe for their reception." *Id.*, at 716. "The visitor is considered an invitee especially when he is upon a matter of mutual interest or advantage to the property owner." That is, "a person is an invitee on the land of another if he enters by express or implied invitation and his entry is connected with the owner's business." *Id*. This means that "a business visitor is an invitee whose purpose for being on the property is directly or indirectly connected with business dealings with the owner," and generally includes shoppers visiting Defendants' retail community pharmacies.

298.    "The doctrine of respondeat superior provides that the employer, as the employee's master, is called to answer for the tortious acts of his servant, the employee, when those acts occur in the course and scope of the employee's employment." *James v. Kelly Trucking*, 377 SC. 628, 631 (2008)(citing *Sams v. Arthur*, 135 So. 123, 128-131 (1926)). "Such liability is not predicated on the negligence of the employer, but upon the acts of the employee, whether those acts occurred while the employee was going about the employer's business, and the agency principles that characterize the employer-employee relationship." *Id*. "Just as an employee can act to cause another's injury in a tortious manner, so can an employer be independently liable in tort. *Id*. Such liability is not predicated on the negligence of the employer, but upon the acts of the employee, whether those acts occurred while the employee was going about the employer's business, and the

Verified Complaint for Damages and Injunctive Relief for Violations of the Americans With Disabilities Act of 1990 [42 U.S.C. § 12101, *et seq.*]; Violations of the Civil Rights Act of 1964 [42 U.S.C. §§ 1981, 1985, 1986 and 2000d, *et seq.*]; Violations of the Affordable Care Act [42 U.S.C. § 18116]; Assault; Battery; False Imprisonment; Intentional Infliction of Emotional Distress; Negligence; Civil Conspiracy; Negligent Supervision &/or Retention; Unfair Trade Practices; and Interference with Contract
Page 84 of 101

agency principles that characterize the employer-employee relationship. *Id.*; *see also Clark v. South Carolina Dep't of Pub. Safety*, 362 S.C. 377 (2005) (upholding verdict on claim of negligent supervision where there was evidence of employer's gross negligence despite jury's failure to find employee's breach of a duty); *Clark v. Cantrell*, 339 S.C. 369, 378 (2000) (purposes of punitive damages are to punish wrongdoer and deter similar reckless, willful, wanton, or malicious conduct in the future).

299.    At all times as alleged herein, the individual defendants were acting both individually and within the course and scope of their employment with CVS.

300.    Under the doctrine of respondeat superior, CVS is liable in actual and punitive damages to ROE for its employees', agents', and representatives' negligence, recklessness, gross negligence, willfulness, and wantonness as aforesaid.

301.    ROE avers the Defendants were negligent, reckless, grossly negligent, willful, and wanton, and malicious, and breach their duty with respect to ROE by:

    a.    Failing to exercise due care under the circumstances;

    b.    Failing to sufficiently monitor ROE's interaction with CVS/pharmacy personnel;

    c.    Failing to properly train CVS/pharmacy staff to ensure the safety of ROE;

    d.    Failing to institute and/or enforce adequate policy and procedure to protect ROE from abuse by KEELER, PENDERGRASS and other JOHN DOE and/or JANE DOE defendants;

    e.    Failing to protect ROE's rights to security and right to personal liberty; and

    f.    Any other particulars which may be shown at trial.

302.    As a direct and proximate result of the negligence, recklessness, gross negligence, willfulness, and wantonness as aforesaid, ROE sustained injuries and damages including, without

Verified Complaint for Damages and Injunctive Relief for Violations of the Americans With Disabilities Act of 1990 [42 U.S.C. § 12101, *et seq.*]; Violations of the Civil Rights Act of 1964 [42 U.S.C. §§ 1981, 1985, 1986 and 2000d, *et seq.*]; Violations of the Affordable Care Act [42 U.S.C. § 18116]; Assault; Battery; False Imprisonment; Intentional Infliction of Emotional Distress; Negligence; Civil Conspiracy; Negligent Supervision &/or Retention; Unfair Trade Practices; and Interference with Contract
Page 85 of 101

limitation, embarrassment, humiliation, loss of his liberty, pain and suffering, inconvenience, frustration, mental anguish, and attorney's fees.

303.    Defendants are liable to ROE for actual and punitive damages given their negligence, recklessness, gross negligence, willfulness, and wantonness.

304.    Under the doctrine of respondeat superior, Defendants CVS CAREMARK CORPORATION and/or SOUTH CAROLINA CVS PHARMACY, LLC, CVS PHARMACY, INC., and/or the CVS/pharmacy employer of the named Defendants and those JANE DOE and/or JOHN DOE Defendants involved is or are liable to ROE for actual and punitive damages given their employees', and possibly others', infliction of damages upon ROE as aforesaid.

305.    ROE prays for judgment and relief as set forth herein.

### THIRTEENTH CAUSE OF ACTION

### NEGLIGENT SUPERVISION and/or RETENTION

306.    Plaintiff hereby incorporates by reference each of the allegations set forth in the preceding paragraphs as if realleged fully herein.

307.    At the time ROE sought reasonable accommodation from CVS personnel, each and every individual Defendant was acting both individually and within the course and scope of his or her employment with CVS.

308.    In choosing to operate CVS/pharmacy retail community pharmacies in South Carolina, CVS undertook the duty to exercise reasonable care in hiring, retaining and supervising presidents, vice presidents, regional directors, regional managers, district managers, store managers, and all other employees, agents or representatives of CVS.

309.    South Carolina recognizes the torts of negligent supervision and negligent retention, independent of allegations of negligent supervision. *See Degenhart v. Knights of Columbus*, 309 S.C. 114, 116-17 (1992) (recognizing the tort of negligent supervision in South

Verified Complaint for Damages and Injunctive Relief for Violations of the Americans With Disabilities Act of 1990 [42 U.S.C. § 12101, *et seq.*]; Violations of the Civil Rights Act of 1964 [42 U.S.C. §§ 1981, 1985, 1986 and 2000d, *et seq.*]; Violations of the Affordable Care Act [42 U.S.C. § 18116]; Assault; Battery; False Imprisonment; Intentional Infliction of Emotional Distress; Negligence; Civil Conspiracy; Negligent Supervision &/or Retention; Unfair Trade Practices; and Interference with Contract
Page 86 of 101

Carolina law); *Moore by Moore v. Berkeley County School Dist.*, 326 S.C. 584, 590 (Ct. App. 1997) (examining negligent supervision case law since *Degenhart*). South Carolina, indeed, recognizes the tort of negligent retention in the context of a negligent supervision action.

310.    In circumstances where an employer knew or should have known that its employment of a specific person created an undue risk of harm to the public, a plaintiff may claim that the employer was itself negligent in hiring, supervising, or training the employee, or that the employer acted negligently in entrusting its employee with a tool that created an unreasonable risk of harm to the public." *James v. Kelly Trucking*, 377 SC. at 631.

311.    South Carolina state courts apply the principles of *Degenhart* to claims of negligent supervision. An employer may be liable for negligent supervision if the employee intentionally harms another when the employee: (1) is upon the premises of the employer, or is using a chattel of the employer, (2) the employer knows or has reason to know that he has the ability to control his employee, and (3) the employer knows or should know of the necessity and opportunity for exercising such control. *Degenhart v. Knights of Columbus*, 309 S.C. at 115-17.

312.    While the standard according to the Restatement section 317 comment c, is whether the employer knew the offending employee was "in the habit of misconducting [himself] in a manner dangerous to others," South Carolina courts do not view the "habit of misconducting" language in the Restatement as mandating multiple prior acts of misconduct for a negligent retention action to remain viable in South Carolina. Instead, South Carolina courts hold that a single isolated incident of prior misconduct (of which the employer knew or should have known) may support a negligent retention claim, provided the prior misconduct has a sufficient nexus to the ultimate harm. *Doe v. ATC, Inc.*, 367 S.C. 199, 207 (2005).

Verified Complaint for Damages and Injunctive Relief for Violations of the Americans With Disabilities Act of 1990 [42 U.S.C. § 12101, *et seq.*]; Violations of the Civil Rights Act of 1964 [42 U.S.C. §§ 1981, 1985, 1986 and 2000d, *et seq.*]; Violations of the Affordable Care Act [42 U.S.C. § 18116]; Assault; Battery; False Imprisonment; Intentional Infliction of Emotional Distress; Negligence; Civil Conspiracy; Negligent Supervision &/or Retention; Unfair Trade Practices; and Interference with Contract
Page 87 of 101

313.     Accordingly, many courts have recognized that a plaintiff must demonstrate some propensity, proclivity, or course of conduct sufficient to put the employer on notice of the possible danger to third parties.

314.     The doctrine of respondeat superior provides that the employer, as the employee's master, is called to answer for the tortious acts of his servant, the employee, when those acts occur in the course and scope of the employee's employment. Such liability is not predicated on the negligence of the employer, but upon the acts of the employee, whether those acts occurred while the employee was going about the employer's business, and the agency principles that characterize the employer-employee relationship. *See James v. Kelly Trucking*, 377 S.C. at 631; *see Clark v. South Carolina Dep't of Pub. Safety*, 362 S.C. 377, 608 S.E.2d 573 (2005) (upholding verdict on claim of negligent supervision where there was evidence of employer's gross negligence despite jury's failure to find employee's breach of a duty); *Clark v. Cantrell*, 339 S.C. 369, 378, 529 S.E.2d 528, 533 (2000) (purposes of punitive damages are to punish wrongdoer and deter similar reckless, willful, wanton, or malicious conduct in the future).

315.     Each Defendant had the authority to supervise, prohibit, control, and/or regulate the other Defendants so as to prevent these acts and omissions from occurring.

316.     ROE avers the CVS Defendants acted negligently, recklessly, grossly negligent, maliciously, willfully, and wantonly, and breached this duty with respect to ROE by:

   a.   Failing to exercise due care under the circumstances;

   b.   Failing to provide adequate supervision its employees – primarily those with whom ROE interacted and those who promulgated and/or otherwise determined "CVS policy" cited by the various Defendants as alleged herein – properly;

Verified Complaint for Damages and Injunctive Relief for Violations of the Americans With Disabilities Act of 1990 [42 U.S.C. § 12101, *et seq.*]; Violations of the Civil Rights Act of 1964 [42 U.S.C. §§ 1981, 1985, 1986 and 2000d, *et seq.*]; Violations of the Affordable Care Act [42 U.S.C. § 18116]; Assault; Battery; False Imprisonment; Intentional Infliction of Emotional Distress; Negligence; Civil Conspiracy; Negligent Supervision &/or Retention; Unfair Trade Practices; and Interference with Contract
Page 88 of 101

c.  Creating an environment in which CVS employees, agents, and/or representatives were permitted to prey on the vulnerability of Marine veterans who suffering from service-connected PTSD and other disabilities;

d.  Mishandling its interactions with ROE with respect to the events of alleged herein; and

e.  Any other particulars which may be shown at trial.

317.    ROE avers that each Defendant knew or reasonably should have known that unless they intervened to protect ROE and properly supervise, prohibit, control and/or regulate the conduct of the other Defendants, those Defendants would perceive their acts and omissions as being ratified and condoned.

318.    ROE avers that each Defendant failed to exercise due care by failing to supervise, prohibit, control, or regulate the remaining Defendants and/or by failing to protect ROE. As a direct and proximate result of the negligence, recklessness, gross negligence, willfulness, and wantonness as aforesaid, Plaintiff ROE has suffered and continued to suffer injuries and damages including, without limitation, embarrassment, humiliation, loss of his liberty, pain and suffering, inconvenience, frustration, mental anguish, and attorney's fees, all in an amount to be determined at trial.

319.    Each Defendant failed to exercise due care by failing to supervise, prohibit, control, or regulate the remaining Defendants and/or by failing to protect ROE.

320.    Defendants are liable to ROE for actual and punitive damages given their negligence, recklessness, gross negligence, willfulness, and wantonness.

321.    Under the doctrine of respondeat superior, Defendants CVS CAREMARK CORPORATION and/or SOUTH CAROLINA CVS PHARMACY, LLC, CVS PHARMACY, INC., and/or the CVS/pharmacy employer of the named Defendants and those JANE DOE and/or

Verified Complaint for Damages and Injunctive Relief for Violations of the Americans With Disabilities Act of 1990 [42 U.S.C. § 12101, *et seq.*]; Violations of the Civil Rights Act of 1964 [42 U.S.C. §§ 1981, 1985, 1986 and 2000d, *et seq.*]; Violations of the Affordable Care Act [42 U.S.C. § 18116]; Assault; Battery; False Imprisonment; Intentional Infliction of Emotional Distress; Negligence; Civil Conspiracy; Negligent Supervision &/or Retention; Unfair Trade Practices; and Interference with Contract
Page 89 of 101

JOHN DOE Defendants involved is or are liable to ROE for actual and punitive damages given their employees', and possibly others', infliction of damages upon ROE as aforesaid.

322.    ROE prays for judgment and relief as set forth herein.

## FOURTEENTH CAUSE OF ACTION

### INTERFERENCE WITH CONTRACT and/or

### PROSPECTIVE CONTRACTUAL RELATIONS

323.    Plaintiff hereby incorporates by reference each of the allegations set forth in the preceding paragraphs as if realleged fully herein.

324.    The elements of the cause of action are (1) the intentional interference with the plaintiff's potential contractual relations, (2) for an improper purpose or by improper methods, and (3) causing injury to the plaintiff. *Brown v. Stewart*, 348 S.C. 33, 55 (Ct.App.2001); *Love v. Gamble*, 316 S.C. 203, 214 (Ct.App.1994); *Collins Music Co. v. Terry*, 400 S.E.2d 783 (S.C. Ct. App. 1991). As an alternative to establishing an improper purpose, ROE may prove the Defendants' method of interference was improper under the circumstances. *Crandall Corp. v. Navistar Int'l Transp. Corp.*, 302 S.C. 265, 266 (1990).

325.    Prior to the incidents as alleged herein, ROE had, either directly or through his family member or members acting as agent(s) on his behalf, previously purchased medical and health care equipment, supplements and/or supplies, as well has had prescriptions for pharmaceuticals filled at or by one or more CVS/pharmacy retail community pharmacy(ies).

326.    ROE informed multiple Defendants that ROE needed to have new prescriptions for pharmaceuticals filled and that he desired to purchase other items available at each of the CVS/pharmacy retail community pharmacy locations.

327.    ROE had a reasonable expectation of entering into mutually advantageous business relations with the Defendants, about which the Defendants knew or should have known that ROE

Verified Complaint for Damages and Injunctive Relief for Violations of the Americans With Disabilities Act of 1990 [42 U.S.C. § 12101, *et seq.*]; Violations of the Civil Rights Act of 1964 [42 U.S.C. §§ 1981, 1985, 1986 and 2000d, *et seq.*]; Violations of the Affordable Care Act [42 U.S.C. § 18116]; Assault; Battery; False Imprisonment; Intentional Infliction of Emotional Distress; Negligence; Civil Conspiracy; Negligent Supervision &/or Retention; Unfair Trade Practices; and Interference with Contract
Page 90 of 101

intended to contract. ROE maintains this cause of action for intentional interference with prospective contractual relations due to the loss of an identifiable contractual expectation. *See, e.g., Crandall Corp. v. Navistar Int'l Transp.*, 302 S.C. at 267-68 (alleged interference with a verbal parts and supply contract); *Love v. Gamble*, 316 S.C. at 205-07 (alleged interference with pickle supply contract); *Williams v. Riedman*, 339 S.C. 251 (Ct.App.2000) (asserted as a counterclaim by employer in a wrongful termination case where the former employee allegedly solicited the employer's current clients); *Edens & Avant Inv. Props., Inc. v. Amerada Hess Corp.*, 318 S.C. 134 (Ct.App.1995) (alleging interference with an option contract; nevertheless, the action was dismissed because the particular plaintiff had no right to recover damages).

328.    ROE avers that *Crandall* and other legal authority discussing this tort usually require the aggrieved party to have been unsuccessful in acquiring an expected contract due to a third party's (here, the individual Defendants) intentional and wrongful actions. *Egrets Pointe Townhouses Prop. Owners Ass'n v. Fairfield Cmtys., Inc.*, 870 F.Supp. 110, 116 (1994).

*329.    ROE's reasonable expectation need not be based on an enforceable contract. United Educ. Distribs., LLC v. Educ. Testing Serv.*, 350 S.C. 7, 16 (2002)(citing *Landry v. Hornstein*, 462 So.2d 844, 846 (Fla. Dist.Ct.App. 1985) for the holding that the reasonable expectation need not be based on an enforceable contract if the jury finds that an understanding between the parties would have been completed had a defendant not interfered.).

330.    Defendants intentionally and with reckless disregard for the rights of Plaintiff ROE prevented ROE from entering a prospective or potential contract with CVS for medical and health care, supplies, supplements and/or prescription pharmaceuticals.

331.    Under the doctrine of respondeat superior, Defendants CVS CAREMARK CORPORATION and/or SOUTH CAROLINA CVS PHARMACY, LLC, CVS PHARMACY, INC., and/or the CVS/pharmacy employer of the named Defendants and those JANE DOE and/or

Verified Complaint for Damages and Injunctive Relief for Violations of the Americans With Disabilities Act of 1990 [42 U.S.C. § 12101, *et seq.*]; Violations of the Civil Rights Act of 1964 [42 U.S.C. §§ 1981, 1985, 1986 and 2000d, *et seq.*]; Violations of the Affordable Care Act [42 U.S.C. § 18116]; Assault; Battery; False Imprisonment; Intentional Infliction of Emotional Distress; Negligence; Civil Conspiracy; Negligent Supervision &/or Retention; Unfair Trade Practices; and Interference with Contract
Page 91 of 101

JOHN DOE Defendants involved is or are liable to ROE for actual and punitive damages given their employees', and possibly others', infliction of damages upon ROE as aforesaid.

332.     ROE prays for judgment and relief as set forth herein.

## FIFTEENTH CAUSE OF ACTION

### UNFAIR TRADE PRACTICES

333.     Plaintiff hereby incorporates by reference each of the allegations set forth in the preceding paragraphs as if realleged fully herein.

334.     An action for damages may be brought under South Carolina's Unfair Trade Practices Act (UTPA) for "unfair methods of competition and unfair or deceptive acts or practices" in the conduct of trade or commerce. S.C. Code Ann. § 39-5-20(a) (2012).  Unfair trade practices are practices which are "offensive to public policy or which are immoral, unethical, or oppressive." *Bahringer v. ADT Sec. Services*, 942 F. Supp. 2d 585, 593-4 (D. SC, 2013) (internal citations omitted).   The words "trade" and "commerce" are synonymous, and trade is defined as both the business of buying and selling. *Baker v. Chavis*, 410 S.E.2d 600, 603 (1991).

335.     A business practice is unfair if it causes, or is likely to cause, substantial consumer injury that a consumer could not reasonably avoid and that is not outweighed by any countervailing benefits to consumers.

336.     ROE avers that Defendants engaged in practices that are offensive to public policy and unfair when Defendants discriminated against ROE in violation of the laws of the United States and South Carolina.

337.     The UTPA renders illegal any unfair act or practice in trade or commerce affecting South Carolina.

Verified Complaint for Damages and Injunctive Relief for Violations of the Americans With Disabilities Act of 1990 [42 U.S.C. § 12101, *et seq.*]; Violations of the Civil Rights Act of 1964 [42 U.S.C. §§ 1981, 1985, 1986 and 2000d, *et seq.*]; Violations of the Affordable Care Act [42 U.S.C. § 18116]; Assault; Battery; False Imprisonment; Intentional Infliction of Emotional Distress; Negligence; Civil Conspiracy; Negligent Supervision &/or Retention; Unfair Trade Practices; and Interference with Contract
Page 92 of 101

338.    Defendants' misrepresentations, false statements, purposeful disparagement, and racially, disability, and/or gender motivated denials of ROE's engaging in commerce with the CVS Defendants constitute unfair trade practices.

339.    Defendants' unfair characterizations are capable of repetition and have been committed on numerous occasions, thus the unfair acts and practices have a significant public impact in South Carolina.

340.    ROE avers that he suffered actual, ascertainable damages as a result of the Defendants' use of the unfair trade practice.

341.    ROE avers that the unlawful trade practices engaged in by the Defendants have an adverse impact on the public interest.  ROE further avers that the unfair practices engaged in by the CVS Defendants have an impact upon the public interest due to the ability of the CVS Defendants to repeat the same or similar actions taken against ROE not only again upon ROE, but upon other disabled male African-American Marine veterans. *Haley Nursery Co. v. Forrest*, 381 S.E.2d 906, 908 (S.C.1989); *Noack Enters. v. Country Corner Interiors of Hilton Head Island*, 351 S.E.2d 347, 350-51 (S.C. 1986).

342.    ROE avers that the allegations as raised herein provide sufficient justification for this Court's finding that the unfair practices have occurred in the past and therefore are likely to continue in the future absent deterrence, and that, based upon the statements by several of the Defendants named herein, CVS' policies and procedures create a potential for repetition of the unfair acts. *Wright v. Craft*, 640 S.E.2d 486, 502 (S.C. 2006).

343.    While relief under the UTPA is "not available to redress a private wrong where the public interest is unaffected," here, however, the public interest is directly at issue based upon the allegations ROE raises in this Complaint. *Columbia E. Assoc. v. Bi-Lo, Inc.*, 386 S.E.2d 259, 263 (S.C.1989).

Verified Complaint for Damages and Injunctive Relief for Violations of the Americans With Disabilities Act of 1990 [42 U.S.C. § 12101, *et seq.*]; Violations of the Civil Rights Act of 1964 [42 U.S.C. §§ 1981, 1985, 1986 and 2000d, *et seq.*]; Violations of the Affordable Care Act [42 U.S.C. § 18116]; Assault; Battery; False Imprisonment; Intentional Infliction of Emotional Distress; Negligence; Civil Conspiracy; Negligent Supervision &/or Retention; Unfair Trade Practices; and Interference with Contract
Page 93 of 101

344.     Corporate officers are subject to individual liability under the UTPA. For the UTPA's purposes, a "person" is defined to include "natural persons, corporations, trusts, partnerships, incorporated or unincorporated associations and any other legal entity." S.C. Code Ann. § 39-5-10(a).  This definition encompasses controlling persons in a corporation. *State ex rel. McLeod v. C & L Corp., Inc.*, 313 S.E.2d 334 (S.C. 1984).   A controlling person is defined as "one who makes formulates and directs corporate policy or who is deeply involved in the important affairs of the corporation." *Id.*, at 341.   Under this definition, an upper echelon officer, such as the C.E.O., or a secretary, is subject to individual liability under the UTPA. *See State ex rel. Medlock v. Nest Egg Soc'y Today*, 384 S.E.2d 381 (S.C. 1986).   Furthermore, unlike common law, a principal can be held liable under the Act for the misrepresentations of his agent regardless of whether the principal had actual knowledge. *State ex rel. McLeod v. C & L Corp*, 313 S.E.2d at 339 (citation omitted)(holding that the UPTA "should not be construed to increase the plaintiff's burden of proving liability. Its purpose is to give additional protection to the victims of unfair trade practices, not to make a case harder to prove than it would be under common law principles.").

345.     Where the unfair act or practice was willful or knowing, this Court shall award three times the actual damages sustained.  S.C. Code Ann. § 39-5-140(a) (2012).  Under the UTPA, "willful" does not have the same meaning as in common law.  "Willful" under the UTPA is found where a party "should have known" that his or her conduct violates the UTPA. *State ex rel. Medlock v. Nest Egg Soc'y Today*, 384 S.E.2d at 383.  "The standard is not one of actual knowledge, but of constructive knowledge. If, in the exercise of due diligence, persons of ordinary prudence engaging in trade or commerce could have ascertained that their conduct violates the Act, then such conduct is 'willful' within the meaning of the statute." *Id.*

Verified Complaint for Damages and Injunctive Relief for Violations of the Americans With Disabilities Act of 1990 [42 U.S.C. § 12101, *et seq.*]; Violations of the Civil Rights Act of 1964 [42 U.S.C. §§ 1981, 1985, 1986 and 2000d, *et seq.*]; Violations of the Affordable Care Act [42 U.S.C. § 18116]; Assault; Battery; False Imprisonment; Intentional Infliction of Emotional Distress; Negligence; Civil Conspiracy; Negligent Supervision &/or Retention; Unfair Trade Practices; and Interference with Contract
Page 94 of 101

346.     Additionally, interference with contractual relations also supports a UTPA claim. Where the conduct in issue amounts to an intentional interference, and meets the UTPA requirements of trade or commerce and public impact, ROE shall succeed on this cause of action. *Camp v. Springs Mortgage Corp.*, 414 S.E.2d 784 (S.C. 1991).

347.     ROE avers that Defendants engaged in unfair methods of competition and unfair and unlawful deceptive acts or practices in the conduct of their business, said conduct constituting a pattern or practice of unlawful conduct capable of repetition which has an adverse impact on the public interest and is offensive to public policy, immoral, unethical and oppressive.

348.     As set forth in detail above, Defendants have engaged in unlawful, unfair or fraudulent business practices in violation of the UTPA as well as acts of unfair competition in violation of statutory and common law.

349.     Defendants' unfair business practices affect public interest because, among other things, they were committed in the course of Defendants' businesses, the activities were part of a pattern or generalized course of conduct, the acts were repeated by the Defendants and a real or substantial potential for repetition by the Defendants exists.

350.     Defendants' conduct was and is intentional and in deliberate disregard of the ROE's rights, and ROE has suffered financial and other harm caused by Defendants' intentional commission of unfair trade practices, including but not limited to statutory treble damages and attorney's fees.

351.     Under South Carolina law, entities that participate in an unfair trade practice are jointly and severally liable.

352.     Unless restrained and enjoined by this Court, Defendants will persist in their activities, causing irreparable harm and injury to ROE for which there is no adequate remedy at law.

Verified Complaint for Damages and Injunctive Relief for Violations of the Americans With Disabilities Act of 1990 [42 U.S.C. § 12101, *et seq.*]; Violations of the Civil Rights Act of 1964 [42 U.S.C. §§ 1981, 1985, 1986 and 2000d, *et seq.*]; Violations of the Affordable Care Act [42 U.S.C. § 18116]; Assault; Battery; False Imprisonment; Intentional Infliction of Emotional Distress; Negligence; Civil Conspiracy; Negligent Supervision &/or Retention; Unfair Trade Practices; and Interference with Contract
Page 95 of 101

353. As a direct and proximate consequence of the unfair and deceptive acts and practices taken by the Defendants against ROE, ROE has suffered actual, consequential, and general losses in an amount to be proven at trial.

354. The Defendant's unfair acts and practices were committed willfully and with full knowledge, and ROE is entitled to trebling of his actual damages award and the reasonable attorney's fees incurred in the preparation and prosecution of this action pursuant to SC. Code Ann. § 39-5-140.

355. ROE prays for judgment and relief as set forth herein.

## SIXTEENTH CAUSE OF ACTION

## DECLARATORY RELIEF

356. ROE hereby incorporates by reference each of the allegations set forth in the preceding paragraphs as if realleged fully herein.

357. An actual controversy now exists in that ROE is informed and believes and thereon alleges that Defendants are in violation of the laws of the United States including, but not limited to, Title III of the Americans with Disabilities Act and Accessibility Regulations, the Civil Rights Act of 1964, and the Patient Protection and Affordable Care Act.

358. A declaratory judgment is necessary in that ROE contends and Defendants deny that Defendants are required to modify their policies, practices and procedures at Defendants' public accommodation, that ROE suffered discrimination as a result of Defendants' failure to modify practices, policies and procedures and/or that Plaintiff is entitled to injunctive relief under federal laws.

359. ROE prays for judgment and relief as set forth herein.

Verified Complaint for Damages and Injunctive Relief for Violations of the Americans With Disabilities Act of 1990 [42 U.S.C. § 12101, et seq.]; Violations of the Civil Rights Act of 1964 [42 U.S.C. §§ 1981, 1985, 1986 and 2000d, et seq.]; Violations of the Affordable Care Act [42 U.S.C. § 18116]; Assault; Battery; False Imprisonment; Intentional Infliction of Emotional Distress; Negligence; Civil Conspiracy; Negligent Supervision &/or Retention; Unfair Trade Practices; and Interference with Contract
Page 96 of 101

## SEVENTEENTH CAUSE OF ACTION

### INJUNCTIVE RELIEF

360.    ROE hereby incorporates by reference each of the allegations set forth in the preceding paragraphs as if realleged fully herein.

361.    ROE will suffer irreparable harm unless Defendants are ordered to modify policies, practices and procedures regarding the admission of people with disabilities to conform with the rights and privileges provided by the statutes and regulations referenced herein, above. ROE has no adequate remedy at law to redress the discriminatory conduct of Defendants.

362.    ROE therefore seeks injunctive relief to redress the injuries suffered.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff ROE respectively prays for judgment on the above-alleged causes of action against Defendants as follows:

1. An order enjoining Defendants from violating disabled access laws of the United States;

2. That the Court declare the respective rights and duties of Plaintiff and Defendants as to the modification of Defendants' policies, practices and procedures regarding the reasonable accommodation of disabled African-American male United States Marine Corps veterans who suffer from service-connected PTSD and PTSD-related symptoms including, though not limited to, PTSD-associated agoraphobia;

3. Enter a declaratory judgment finding that Defendants' actions described above constitute discrimination on the basis of race, color, national origin, ethnicity, or ancestry, and violate 42 U.S.C. §§ 1981 and 2000d;

4. Declare that Defendants' conduct in denying ROE access to health care, health services, and/or prescription pharmaceuticals because of his disability, race and gender status violates non-discrimination provisions of the Affordable Care Act;

Verified Complaint for Damages and Injunctive Relief for Violations of the Americans With Disabilities Act of 1990 [42 U.S.C. § 12101, *et seq.*]; Violations of the Civil Rights Act of 1964 [42 U.S.C. §§ 1981, 1985, 1986 and 2000d, *et seq.*]; Violations of the Affordable Care Act [42 U.S.C. § 18116]; Assault; Battery; False Imprisonment; Intentional Infliction of Emotional Distress; Negligence; Civil Conspiracy; Negligent Supervision &/or Retention; Unfair Trade Practices; and Interference with Contract
Page 97 of 101

5. Enter a permanent injunction directing Defendants CVS CAREMARK CORPORATION, SOUTH CAROLINA CVS PHARMACY, LLC, and CVS PHARMACY, INC., to take all affirmative steps necessary to remedy the effects of illegal, discriminatory conduct described herein and to prevent similar occurrences in the future;

6. An order awarding Plaintiff actual and/or statutory damages for violation of civil rights and for restitution for each and every offense and for each and every day Plaintiff was denied access to Defendants' facilities;

7. Pursuant to 42 U.S.C. § 1981, award compensatory damages to Plaintiff in an amount determined by the jury that would fully compensate ROE for the injuries, emotional harm, mental anguish, embarrassment, humiliation, and degradation caused by Defendants' misconduct alleged in this Complaint;

8. Pursuant to 42 U.S.C. § 1981, award punitive damages to Plaintiff in an amount determined by the jury, but no less than three times the amount of actual damages, that would punish Defendants for the intentional, willful, wanton, and reckless misconduct alleged in this Complaint and that would effectively deter Defendants from future discriminatory behavior;

9. Statutory disbursements, costs, expert fees, and attorney's fees authorized under 42 U.S.C. § 1988(b), and such further and other relief as the Court deems just and proper;

10. Pursuant to 42 U.S.C. § 18116, award compensatory damages to Plaintiff in an amount determined by the jury that would fully compensate ROE for the injuries, emotional harm, mental anguish, embarrassment, humiliation, and degradation caused by Defendants' misconduct alleged in this Complaint;

11. Pursuant to 42 U.S.C. § 18116, award punitive damages to Plaintiff in an amount determined by the jury, but no less than three times the amount of actual damages, that would punish

Verified Complaint for Damages and Injunctive Relief for Violations of the Americans With Disabilities Act of 1990 [42 U.S.C. § 12101, et seq.]; Violations of the Civil Rights Act of 1964 [42 U.S.C. §§ 1981, 1985, 1986 and 2000d, et seq.]; Violations of the Affordable Care Act [42 U.S.C. § 18116]; Assault; Battery; False Imprisonment; Intentional Infliction of Emotional Distress; Negligence; Civil Conspiracy; Negligent Supervision &/or Retention; Unfair Trade Practices; and Interference with Contract
Page 98 of 101

1    Defendants for the intentional, willful, wanton, and reckless misconduct alleged in this

2    Complaint and that would effectively deter Defendants from future discriminatory behavior;

3  12. Award Plaintiff damages in an amount to be determined at trial to compensate him for being

4    deprived of his right to shop and make or enforce contracts as a customer of a retail pharmacy

5    regardless of his perceived race, color, national origin, ethnicity, or ancestry, including

6    damages for fear, humiliation, embarrassment, mental pain, suffering, inconvenience, and

7    financial injury;

8

9  13. Award Plaintiff damages in an amount to be determined at trial to compensate him for the torts

10    of assault;

11  14. Award Plaintiff damages in an amount to be determined at trial to compensate him for the torts

12    of battery;

13  15. Award Plaintiff damages in an amount to be determined at trial to compensate him for the tort

14    of false imprisonment;

15  16. Award Plaintiff damages in an amount to be determined at trial to compensate him for the tort

16    of civil conspiracy;

17  17. Award Plaintiff damages in an amount to be determined at trial to compensate him for the tort

18    of intentional infliction of emotional distress;

19  18. Award Plaintiff damages in an amount to be determined at trial to compensate him for the tort

20    of negligence;

21

22  19. Award Plaintiff damages in an amount to be determined at trial to compensate him for the tort

23    of negligent supervision and/or negligent retention;

24  20. Award Plaintiff damages in an amount to be determined at trial to compensate him for the tort

25    of interference with contract and/or prospective contractual relations;

26

27

28
Verified Complaint for Damages and Injunctive Relief for Violations of the Americans With Disabilities Act of 1990 [42 U.S.C. § 12101, *et seq.*]; Violations of the Civil Rights Act of 1964 [42 U.S.C. §§ 1981, 1985, 1986 and 2000d, *et seq.*]; Violations of the Affordable Care Act [42 U.S.C. § 18116]; Assault; Battery; False Imprisonment; Intentional Infliction of Emotional Distress; Negligence; Civil Conspiracy; Negligent Supervision &/or Retention; Unfair Trade Practices; and Interference with Contract
Page 99 of 101

21. Award Plaintiff damages in an amount to be determined at trial to compensate him for the Defendants' engaging in unfair trade practices;

22. Award Plaintiff statutory punitive damages in an amount equal to no less than three times Plaintiff's damages, that would punish Defendants for their malicious, willful, wanton, callous, and reckless conduct and effectively deter Defendants from engaging in similar conduct, including, though not limited to, unfair trade practices, in the future;

23. Award Plaintiff prejudgment and post-judgment interest;

24. For an order requiring Defendants to show cause, if any he/she/it has, why he/she/it should not be enjoined as hereinafter set forth, during the pendency of this action;

25. For a temporary restraining order, a preliminary injunction, and a permanent injunction, all enjoining Defendants, each of them, and their agents, servants, and employees, and all persons acting under, in concert with, or for them;

26. Pursuant to 42 U.S.C. § 1981, *et seq*, 42 U.S.C. § 1988(b), 42 U.S.C. § 12101, *et seq*., and 42 U.S.C. § 18116, and/or as otherwise allowable by statute or law, award Plaintiff his reasonable attorneys' fees and costs; and

27. Order all other and further relief as the Court may deem equitable, just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiff demands a trial by jury for all issues triable by jury.

## VERIFICATION

I, JAMES ROE, am the Plaintiff in the above entitled action and proceeding. I have read the foregoing VERIFIED COMPLAINT FOR DAMAGES AND DECLARATORY and INJUNCTIVE RELIEF for: VIOLATIONS OF THE AMERICANS WITH DISABILITIES ACT of 1990 [42 U.S.C. § 12101, *et seq*.]; DISCRIMINATION IN VIOLATION OF THE CIVIL RIGHTS ACT of 1964 [42 U.S.C. § 1981 (equal rights); § 1985 (conspiracy to interfere with civil

Verified Complaint for Damages and Injunctive Relief for Violations of the Americans With Disabilities Act of 1990 [42 U.S.C. § 12101, *et seq*.]; Violations of the Civil Rights Act of 1964 [42 U.S.C. §§ 1981, 1985, 1986 and 2000d, *et seq*.]; Violations of the Affordable Care Act [42 U.S.C. § 18116]; Assault; Battery; False Imprisonment; Intentional Infliction of Emotional Distress; Negligence; Civil Conspiracy; Negligent Supervision &/or Retention; Unfair Trade Practices; and Interference with Contract
Page 100 of 101

1  rights); § 1986 (neglect to prevent deprivation of rights); 42 U.S.C. § 2000d, *et seq.*];

2  DISCRIMINATION IN VIOLATION OF THE AFFORDABLE CARE ACT [42 U.S.C. §

3  18116]; ASSAULT; BATTERY; FALSE IMPRISONMENT; INTENTIONAL INFLICTION OF

4  EMOTIONAL DISTRESS; CIVIL CONSPIRACY; NEGLIGENCE; NEGLIGENT

5  SUPERVISION &/or RETENTION; INTERFERENCE WITH CONTRACT &/or

6  PROSPECTIVE CONTRACTUAL RELATIONS; and UNFAIR TRADE PRACTICES, and

7  know its contents. The facts stated therein are true and within my personal knowledge, except as to

8  matters therein stated on information and belief, and as to those matters I believe them to be true,

9

10  and if called upon to testify I would competently testify as to the matters stated herein.

11  I declare under penalty of perjury under the laws of the United States of America that the

12  foregoing is true and correct.

13  Executed on August 28, 2014.

14

15  *James Roe*
   James Roe

16

17  DATED: August 28, 2014                    Respectfully submitted,

18                                             *[signature]*
                                               James T. Irvin, Jr.

19                                             IRVIN LAW FIRM
                                               1101 3rd Avenue South

20                                             Myrtle Beach, SC 29577
                                               (843) 445-6200

21                                             irvinlawfirm@aol.com

22                                             Of Counsel:
                                               David C. Johnston

23                                                    California Bar # 263735
                                                    Oregon Bar # 140957

24                                             JOHNSTON LAW OFFICE
                                               P.O. Box 51

25                                             Gold Beach, OR 97444-0051

26                                             (541) 373-8705
                                               917esq@critical-path.net

27

28

Verified Complaint for Damages and Injunctive Relief for Violations of the Americans With Disabilities Act of 1990 [42 U.S.C. § 12101, *et seq.*]; Violations of the Civil Rights Act of 1964 [42 U.S.C. §§ 1981, 1985, 1986 and 2000d, *et seq.*]; Violations of the Affordable Care Act [42 U.S.C. § 18116]; Assault; Battery; False Imprisonment; Intentional Infliction of Emotional Distress; Negligence; Civil Conspiracy; Negligent Supervision &/or Retention; Unfair Trade Practices; and Interference with Contract
Page 101 of 101