IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| JIMMIE CALLUM, JR., ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 4:14-cv-03481-BHH |
| v. ) | |
| ) | |
| SOUTH CAROLINA CVS ) | |
| PHARMACY, LLC, et al., ) | |
| ) | |
| Defendants. ) | |
| ) | |

## BRIEF IN SUPPORT OF MOTION FOR PROTECTIVE ORDER

Pursuant to this Court's inherent powers, Defendant South Carolina CVS Pharmacy, LLC ("CVS" or "Defendant") respectfully submits this Brief in Support of its Motion for an order enjoining Plaintiff from further harassing or intimidating defense witnesses and potential witnesses in this case, and sanctioning Plaintiff for his misconduct, and respectfully shows as follows:

## FACTS

### A. Background of Plaintiff's Alleged Mental Illness, Admitted Threats of Violence and Initially Concealed but now Admitted Access to a Gun.

In this action, Plaintiff alleges that he has Post-Traumatic Stress Disorder (PTSD) and "other, occasionally severe, symptoms associated with PTSD, including extreme agoraphobia." (Verified First Amended Compl. (hereinafter "Compl.") ¶ 47.) He contends that his condition is so severe that he rarely goes out in public, and that he always wears a towel draped over his head "as a psychological coping mechanism." (Compl. ¶ 48; Plaintiff's June 10, 2016 Dep. (hereinafter "Pl.'s Second Dep.") 89, excerpts attached as Exhibit "A".) The cornerstone of the allegations in this action is Plaintiff's claim that his mental disorder is so severe that he cannot

go into public places. (Compl. ¶ 55.) As a basis for most of his claims in this action, he claims he sought "therapy" for his mental disorder, and that Defendants wrongfully denied him this therapy when they refused to keep various CVS locations open after hours so he could come in and "shop" with the doors locked behind him. (Compl. ¶ 55.)

In discovery in this action, Defendants have determined as follows:

1. In April of 2014, [Redacted]

.[1]

2. Over the course of the last several years, [Redacted]

3. Defendants discovered that in December 2012, Plaintiff obtained a license for a concealed weapon from the State of South Carolina Law Enforcement Division. (Pl.'s Second Dep. 87.)

---

[1] Pursuant to this Court's February 11, 2016 Confidentiality Order, Paragraph 6 [Docket No. 64], portions of and attachments to this brief that relate to or reflect conversations between Plaintiff and his healthcare providers regarding Plaintiff's medical condition and Plaintiff's medical records have been redacted, and the unredacted version will be submitted to the Court for *in camera* review.

4. [Redacted]

[Red] Plaintiff has recently admitted he owns and possesses a Glock handgun and has owned this gun since approximately December of 2012. (Pl.'s Second Dep. 89.)

5. Plaintiff has indicated that although he claims he cannot go out in public because of his mental illness, he frequently travels throughout the State of South Carolina in his truck, on occasions traveling to Charleston, Columbia, and Myrtle Beach. (Plaintiff's January 14, 2016 Dep. (hereinafter "Pl.'s First Dep.") excerpts attached hereto as Exhibit "C" 60, 68; Pl.'s Second Dep. 57-73, 106; Compl. ¶¶ 61, 62, 79.)

**B.     Plaintiff Learns of Defendants' Knowledge regarding Fletcher Armstrong in April/May, 2016.**

As noted, in or around March 2016, counsel for Defendants became aware that Plaintiff was licensed to carry a concealed weapon. (Pl.'s Second Dep. 89.) Specifically, on March 23, 2016, Defendants subpoenaed the South Carolina Law Enforcement Division (SLED) regarding Plaintiff's participation in SLED's Concealed Weapon Permit Program, and Plaintiff was put on notice of this subpoena before it was served on SLED. The documents provided by SLED in response to the subpoena reflected that an individual named Fletcher R. Armstrong III located in Loris, South Carolina provided training to Plaintiff on or about December 14, 2012 related to his effort to obtain a concealed weapon license. This subpoena response was mailed to Plaintiff's counsel on April 26, 2016, and on May 9, 2016, at hearing before the Court, counsel for Defendants disclosed to counsel for Plaintiff that Defendants knew Plaintiff had a concealed

---

[2] [Redacted]

weapons permit. Accordingly, at least by May 9, 2016, Plaintiff became aware that Defendants knew of Fletcher R. Armstrong.

### C. Plaintiff contacts Fletcher R. Armstrong in Late May or Early June 2016.

Shortly after the May hearing in which Defense counsel notified Plaintiff's counsel about Plaintiff's concealed weapons permit, Mr. Armstrong received a hang up call on his cell phone from 843-509-XXXX.[3] (Armstrong Decl. ¶ 10, attached hereto as Exhibit "D".) 843-509-XXXX is Plaintiff's cell phone number. (Pl. Second Dep. 38.) Mr. Armstrong called the number back and did not get a response. (Armstrong Decl. ¶ 10.) Mr. Armstrong texted that he was sorry he missed the call. (*Id.*) He received a text back stating "who is this," and he responded that he was the person that the number had called and hung up on. (*Id.*) He received no immediate response. (*Id.*)

### D. CVS Learns of Fletcher R. Armstrong's Interactions with Plaintiff.

On or about June 1, 2016, counsel for Defendants called Mr. Armstrong to inquire about Plaintiff's weapons training. (Armstrong Decl. ¶ 9.) Counsel explained that he was calling on behalf of CVS, which had been sued by Plaintiff. Mr. Armstrong recalled Plaintiff and recalled that he had provided Plaintiff weapons training at Mr. Armstrong's residence in Loris, South Carolina, where he has an outdoor shooting range. (*Id.* at ¶¶ 4, 9.) Mr. Armstrong spent several hours training Plaintiff that day. (*Id.* at ¶ 6.) Mr. Armstrong reports that at no time did Plaintiff wear a towel over his head. (*Id.* at ¶ 7.) For a portion of the training, because it was cold outside, Mr. Armstrong took Plaintiff to a small store located on Highway 9 that has a restaurant in it. Mr. Armstrong and Plaintiff sat in the restaurant portion of the store, and Mr. Armstrong

---

[3] Portions of Plaintiff's cell phone number have been redacted in order to protect his privacy. CVS can provide the full telephone number should the Court request it.

4

provided him weapons training. (*Id.* at ¶ 7.) There were other individuals present in the restaurant, and Plaintiff did not wear a towel over his head, nor did he complain about entering the restaurant or indicate that he did not want to go in the restaurant at any time. (*Id.*)

### E.     On June 10, 2016, Plaintiff Learns of Defendants' Knowledge of Fletcher R. Armstrong's Interactions with Plaintiff.

On June 10, 2016, at Plaintiff's deposition, counsel for Defendants told Plaintiff that counsel for Defendants had spoken with Mr. Armstrong, and that Mr. Armstrong had indicated that Plaintiff did not wear a towel on his head, and that Plaintiff had eaten with him in a public place. (Pl. Second Dep. 87-89.)

### F.     On or about June 15, 2016, Mr. Armstrong's House and Truck are Vandalized.

On or about June 15, 2016, Mr. Armstrong noticed that his mailbox had been knocked off its post. (Armstrong Decl. ¶ 11.) He also noticed that the front quarter panel of his truck was damaged, and it looked like someone had hit it with an object. (*Id.*) He further noticed that a number of his targets had been taken from his range and tossed back in the woods. (*Id.*) Mr. Armstrong has lived in the same area since 2004, and nothing like this has ever happened before this incident. (*Id.*) He lives in a remote area, and it is very unusual for someone to enter his property. (*Id.* at ¶ 11.)[4]

### G.     On June 17, 2016, Plaintiff Makes Angry Call to Mr. Armstrong about Mr. Armstrong's Disclosure of Facts to Defendants.

On June 17, 2016, Mr. Armstrong received two calls from Plaintiff's cell number, 843-509-XXXX, about a half hour apart. (*Id.* at ¶ 13.) The calls went to voice mail, but no message

---

[4]     Other than the circumstances surrounding this vandalism and the timing of same, CVS does not have specific evidence that Plaintiff committed this vandalism. CVS is continuing its investigation in this regard.

was left.  (*Id*.)  Mr. Armstrong called back, and a man answered and said, "Why are you lying on me?"  (*Id*.)  From this, Mr. Armstrong perceived the man was upset or angry, and he responded, something to the effect of, "What are you talking about?"  (*Id*.)  The man responded, "I don't understand why you would say that.  You know I wear a towel on my head."  (*Id*.)  From that statement, based on Mr. Armstrong's conversation with counsel for Defendants, Mr. Armstrong knew the man on the call had to be Plaintiff.  (*Id*.)  Mr. Armstrong said, "I don't remember that, and if you did wear a towel, that would stand out."  (*Id*.)  The man responded, "What is that supposed to mean?"  (*Id*.)  Mr. Armstrong said, "Well, it would have stood out to me."  (*Id*.)  The man responded with a mumbled "That's messed up."  (*Id*.)  Mr. Armstrong then responded with "Mr. Callum, if you have questions about your training or need to contact me, please have your lawyer contact me."  (*Id*.)  Then the conversation ended.  (*Id*.)

The call coupled with the fact that his house had been vandalized two days prior, made Mr. Armstrong very uncomfortable.  (*Id*. at ¶ 14.)  As noted, Mr. Armstrong lives in a remote area by himself, and he viewed the call as threatening.  (*Id*.)  Mr. Armstrong made a report to the Horry County Police about the call and the damage to his property, and on that same date informed SLED.  (*Id*.)

## ARGUMENT AND CITATION OF AUTHORITY

CVS seeks the Court's intervention in what CVS believes to be a dangerous combination [Redacted]             , possession of means and ability to carry out [Redacted], and an example of threatening and intimidating behavior by Plaintiff.  In *Crowley v. Spivey*, 329 S.E.2d 774, 285 S.C. 397 (1985), the South Carolina Court of Appeals ruled that the parents of a woman suffering from mental illness who had recently purchased a gun had a common law duty to supervise the woman's visitation with her children, whom she tragically shot with the gun she

6

had purchased. Here, CVS sees a similarly troubling pattern.[5] CVS seeks the Court's intervention to take steps to ensure that Plaintiff does not attempt to harm or continue to attempt to intimidate Mr. Armstrong. Mr. Armstrong's testimony undermines Plaintiff's key allegations in this action, as well as the basis for Plaintiff obtaining disability benefits from the Social Security Administration and the Veteran's Administration. Accordingly, Plaintiff has ample motive to attempt to intimidate Mr. Armstrong regarding his testimony. Further, as noted, despite Plaintiff's claims that he rarely goes out in public, he also has testified that he frequently travels by his truck throughout the State of South Carolina, and has conceded that he has previously been to Mr. Armstrong's residence in Loris, South Carolina, which is approximately 90 miles from Plaintiff's residence in Jamestown, South Carolina. CVS stresses that it is not seeking to prevent Plaintiff's counsel from contacting Mr. Armstrong or anyone else connected

---

[5]     *See Enforcement Procedures for Investigating or Inspecting Workplace Violence Incidents*, Occupational Safety and Health Administration, CPL 02-01-052 (Sept. 8, 2011) *available at* https://www.osha.gov/OshDoc/Directive_pdf/CPL_02-01-052.pdf ("Evidence of actual instances where employees were threatened with physical harm" can serve as a basis for a citation for a violation of the OSH Act's general duty clause); *Domestic and Workplace Violence Guidelines*, South Carolina Division of State Human Resources *available at* http://www.admin.sc.gov/humanresources/agency-information/policy-and-programs/workplace-and-domestic-violence-guidelines#Threat Management Response (last visited July 5, 2016)("Many extreme incidents of violence are preceded by lesser offenses such as insubordination, challenges to authority and harassing comments. Employees should be encouraged to watch for potential warning signs by an individual such as the following: Past history of destructive, violent or threatening behavior . . . ."); *Workplace Violence Prevention and Intervention,* American National Standard ASIS/SHRM WVPI.1-2011, Section 8.1 (Sept. 2, 2011) *available at* https://www.shrm.org/hrstandards/documents/wvpi%20std.pdf ("Inappropriate behaviors and communications by a perpetrator usually will precede a violent incident." Warning signs of potential violence include "[a history of threats or violent acts . . . , [t]hreats, bullying, or other threatening behavior. . ., [h]omicidal or suicidal thoughts or ideas. . . .") *See generally Bell v. Itawamba Cty. Sch. Bd.*, 799 F.3d 379, 399 (5th Cir. 2015) ("[N]umerous, recent examples of school violence exist in which students have signaled potential violence through speech, writings, or actions, and then carried out violence against school communities, after school administrators and parents failed to properly identify warning signs.")

LEGAL02/36499108v5

with this action. Instead, CVS seeks a court order preventing *Plaintiff* himself from contacting or approaching Mr. Armstrong, any of Defendants' employees or any of Defendants' witnesses.

Under federal law, it is illegal to knowingly use intimidation toward another person with the intent to influence, delay, or prevent the testimony of any person. 18 U.S.C. § 1512(b). Such actions are subject to fines and imprisonment for up to 20 years. *Id.* Similarly, it is unlawful in South Carolina for a person by threat or force to intimidate or impede a witness or potential witness in the discharge of his duty as such, or to impede or attempt to obstruct or impede the administration of justice in any court. S.C. Code Ann. § 16-9-340. A person who violates this law is guilty of a felony. *Id.*

Further, the Court "must and does have an inherent power to impose order, respect, decorum, silence, and compliance with lawful mandates. This power is organic, without need of a statute or rule for its definition, and it is necessary to the exercise of all other powers." *United States v. Shaffer Equip. Co.*, 11 F.3d 450, 461 (4th Cir. 1993) (citing *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991)). Under the Court's inherent power, it may issue orders, punish for contempt, vacate judgments obtained by fraud, conduct investigations as necessary to exercise the power, assess attorney's fees, and dismiss actions, among other things. *Id.* at 462. This inherent authority extends to a full range of litigation abuses, and may be exercised against a party who "has acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *Durham Sch. Servs., L.P. v. Gen. Drivers*, No. 2:14-CV-1241-DCN, 2016 WL 1095498, at *4 (D.S.C. Mar. 21, 2016) (citing *Thomas v. Ford Motor Co.*, 244 F. App'x 535, 538 (4th Cir. 2007)); *see also Riley v. City of N.Y.*, No. 10-CV-2513, 2015 WL 541346 (E.D.N.Y 2015) (exercising inherent authority to impose sanctions for witness tampering including monetary sanctions, notifying the jury of plaintiff's witness tampering, and permitting the jury to draw an adverse

inference against plaintiff based on the witness tampering); *Drake v. Ham*, No. 3:06-1611-MJP-JRM, 2007 WL 2302575, at *2 (D. S.C. Aug. 9, 2007) ("'Rule 11 has not robbed the district courts of their inherent power to impose sanctions for abuse of the judicial system.'") (quoting *Methode Elecs. v. Adams Techs.*, 371 F.3d 923, 927 (7th Cir. 2004));  *Brown v. Farmville Cinema Operations, LLC*, No. 3:13-CV-858, 2014 WL 2766122 (E.D. Va. June 18, 2014) (court has inherent power to control and preserve the integrity of its judicial proceedings); *Teledyne Techs., Inc. v. Shekar*, No. 15-cv-1392, 2015 WL 5438648, at *2 (N.D. Ill. June 17, 2012) ("Courts regularly issue orders intended to protect nonparty witnesses from harassment and tampering at the hands of a litigant")

In addition to posing a threat of violence, by intimidating Defendants' witness in this case, Plaintiff has and is committing illegal acts and is acting vexatiously and in bad faith.  His conduct is disrupting this litigation.  Plaintiff knowingly and purposefully contacted Mr. Armstrong, engaged in communications with him that were intended to be threatening and were perceived by Mr. Armstrong as threatening.  Plaintiff (i) alleges he has a severe psychological condition, (ii) [Redacted] , (iii) has been trained to use a handgun and has a license for a concealed weapon, and (iv) currently owns and is in possession of a Glock handgun.  When viewed in consideration of Plaintiff's mental condition, [Redacted] and access to a weapon, Plaintiff's misconduct related to Mr. Armstrong is clearly threatening.  To ensure the safety of Mr. Armstrong, and to prevent further misconduct by Plaintiff, CVS requests that this Court exercise its inherent powers to enjoin Plaintiff from further contact with Mr. Armstrong and sanction Plaintiff for the conduct set forth herein.  *See In re Air Crash at Charlotte, North Carolina*, 982 F. Supp. 1092, 1100 (D. S.C. 1997) (monetary sanctions issued against counsel for violation of

9

sequestration order "are appropriate to punish and deter such conduct under both the contempt and inherent powers of this court").

## CONCLUSION

In light of the foregoing, CVS respectfully requests that the Court enter an order as follows:

(1) A protective order enjoining Plaintiff from (a) communicating or attempting to communicate with in any way, including via in person, phone, text, email, or other electronic communication, with Mr. Armstrong; (b) approaching within one mile of Mr. Armstrong, Mr. Armstrong's residence, or Mr. Armstrong's place of employment; and (c) assaulting or attempting to assault Mr. Armstrong, or inflicting any harm or damage on Mr. Armstrong's person or property.

(2) A protective order enjoining Plaintiff from (a) communicating or attempting to communicate with in any way, including via in person, phone, text, email, or other electronic communication, with any other of Defendants' witnesses or any of Defendants or Defendants' employees; and (b) assaulting or attempting to assault any other of Defendants' witnesses or any of Defendants or Defendants' employees, or inflicting any harm or damage on their person or property.

(3) An order directing Plaintiff to pay attorneys' fees and costs associated with the instant motion, and instructing the jury, at the time of trial, that Plaintiff has engaged in such wrongful conduct.

Respectfully submitted this 18th day of July, 2016.

/s/ C. Pierce Campbell
Arthur E. Justice, Jr.
S.C. Federal Bar No. 2261
ajustice@turnerpadget.com
C. Pierce Campbell
S.C. Federal Bar No. 9443
pcampbell@turnerpadget.com
TURNER PADGET
319 South Irby Street
Florence, South Carolina 29501
Tel. No. (843) 662-9008

Admitted *Pro Hac Vice*:
Charles H. Morgan
Georgia Bar. No. 522040
charlie.morgan@alston.com
Christopher A. Riley
Georgia Bar No. 605634
chris.riley@alston.com
Brett E. Coburn
Georgia Bar No. 171094
brett.coburn@alston.com
ALSTON & BIRD LLP
1201 West Peachtree Street
Atlanta, Georgia  30309-3424
Tel. No. (404) 881-7000

Attorneys for Defendants
